# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.M., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>COUNTY OF MERCED, et al.,<br><br>        Defendants. | Case No.  1:20-cv-00409-NONE-SAB<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND IMPOSING SANCTIONS IN THE FORM OF REASONABLE ATTORNEYS' FEES<br><br>(ECF No. 39, 40, 41, 42, 43) |

## I.

## INTRODUCTION

Currently before the Court is the Plaintiffs' motion to compel responses to requests for production.  (ECF No. 39.)[1]  Having considered the joint statement regarding the discovery dispute, the exhibits attached thereto, the supplemental declarations filed, the arguments presented at the July 28, 2021 hearing, as well as the Court's file, the Court issues the following order granting the motion to compel discovery responses and imposing sanctions in the form of reasonable attorneys' fees expended in bringing the motion to compel.

/ / /

/ / /

---

[1]  All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

**II.**

**BACKGROUND**

**A.     Factual Background and Allegations**

This lawsuit arises from the death by suicide of Rene Snider ("Ms. Snider") in the Merced County Jail on March 23, 2019.  (Joint Statement Re: Discovery ("JS") at 5, ECF No. 40.)  Ms. Snider, who had been out on bail for approximately two years while criminal charges remained pending, entered the Merced County Jail after being found incompetent to stand trial and remanded for restoration of competency.  (Id.)  Plaintiffs allege that Ms. Snider was at a significantly increased risk of suicide, due to her mental illness, prior history of suicide attempts, the abrupt cessation of her mental health medications, and the fact that the court itself found her to be a danger to herself and others in its decision to remand her into custody.  (Id.)  Defendants in this matter include Wellpath and California Forensic Medical Group, the third-party service providers who provide mental and medical health care services at the Merced County Jail; the County of Merced; and various employees and agents of each.  (Id.)

Plaintiffs allege that Defendants knew, or recklessly disregarded, the fact that Ms. Snider was at an increased risk of suicide and that Defendants did not adequately screen Ms. Snider for being a suicide risk, even though she advised them of prior suicide attempts during an initial screening.  (Id.)  Plaintiffs allege Defendants knew, or recklessly disregarded, the fact that Ms. Snider had been found incompetent and ordered into custody specifically because of the risks her mental health concerns posed; that Defendants knew Ms. Snider was taking mental health medications, but withdrew those medications upon her admission to the facility; and additionally, the Defendants failed to adequately monitor Ms. Snider once she was housed in the jail, thereby violating their own policies on the frequency of cell checks.  (Id. at 5-6.)  Ms. Snider died on March 23, 2019, her suicide having been discovered at approximately 6:00 p.m., after she had hanged herself from a bed sheet tied to a bunk bed ladder.  (JS at 6.)

The first amended complaint ("FAC") alleges both state and federal claims related to Ms. Snider's death in the custody of Defendants, both against the individual employees and officers, and against the entity Defendants.  (Id.)  Plaintiffs are Ms. Snider's minor children, and her

1   mother and father, who bring claims both on their own behalf and on behalf of her estate.  (Id.)

2         Plaintiffs proffer the lawsuit involves substantial economic damages.  (Id.)  Specifically,

3   Ms. Snider, who was only 39 years old, was a member of the Pechanga Indian Tribe and

4   received substantial annual income through her membership in the tribe.  (Id.)  These payments,

5   which generally were between $200,000 and $300,000 per year, would have continued

6   throughout her life.  (Id.)  Plaintiffs additionally are seeking damages for pain, suffering, mental

7   distress, and the loss of both a daughter and a mother, as well as punitive damages.  (Id.)

8              **B.    Relevant Procedural Background**

9         Plaintiffs D.M., L.M., Denise Sawyer, and Doug Snider ("Plaintiffs"), filed this action on

10  March 19, 2020.  A first amended complaint was filed on April 13, 2020.  (ECF No. 11.)  The

11  action proceeds against Defendants the County of Merced, Wellpath, LLC ("Wellpath"),

12  California Forensic Medical Group Inc. ("CFMG"), Amanpreet Atwal, Alicia Dunwoody,

13  Gianfranco Burdi, Keriann Quinn-Fitzpatrick, Dylan Fulcher, Shawn Autrey, and Adriana Kifan.

14        The scheduling order was issued on September 29, 2020, setting among other deadlines, a

15  nonexpert discovery deadline of September 21, 2020.  (ECF No. 35.)  Plaintiffs filed this motion

16  to compel on June 23, 2021.  (ECF No. 39.)  On June 21, 2021, the parties filed a joint statement

17  regarding the discovery disagreement and motion to compel.  (ECF No. 39.)  On July 23, 2021,

18  supplemental declarations in opposition to the motion to compel were filed.  (ECF Nos. 41, 42.)

19  A hearing on the motion to compel was heard on July 28, 2021.  (ECF No. 43.)  Christopher

20  Lisieski appeared in person on behalf of Plaintiffs, and Jemma Parker Saunders appeared on

21  behalf of Defendants Wellpath, CFMG, Amanpreet Atwal, Alicia Dunwoody, Gianfranco Burdi,

22  Keriann Quinn-Fitzpatrick, Dylan Fulcher, and Shawn Autrey.  (Id.)

23                              **III.**

24                        **LEGAL STANDARD**

25        **A.    Motion to Compel Discovery**

26        Rule 26 provides that a party "may obtain discovery regarding any nonprivileged matter

27  that is relevant to any party's claim or defense and proportional to the needs of the case,

28  considering the importance of the issues at stake in the action, the amount in controversy, the

1   parties' relative access to relevant information, the parties' resources, the importance of the

2   discovery in resolving the issues, and whether the burden or expense of the proposed discovery

3   outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information need not be admissible in

4   evidence to be discoverable.  Id.  "Evidence is relevant if: (a) it has any tendency to make a fact

5   more or less probable than it would be without the evidence; and (b) the fact is of consequence in

6   determining the action."  Fed. R. Evid. 401.

7          Rule 34 of the Federal Rule of Civil Procedure provides that a party may serve upon any

8   other party a request for production of any tangible thing within the party's possession, custody,

9   and control that is within the scope of Rule 26.  Fed. R. Civ. P. 34(a)(1)(B).  The party receiving

10  the request has thirty days in which to respond.  Fed. R. Civ. P. 34(b)(2).  A party may move for

11  an order compelling production where the opposing party fails to produce documents as

12  requested under Rule 34.  Fed. R. Civ. P. 37(a)(3(B)(iv).

13         Motions to compel are governed by Federal Rule of Civil Procedure 37, which states, in

14  pertinent part:

15             **(a) Motion for an Order Compelling Disclosure or Discovery.**
               **(1) *In General*.** On notice to other parties and all affected persons,
16             a party may move for an order compelling disclosure or discovery.
               The motion must include a certification that the movant has in
17             good faith conferred or attempted to confer with the person or
               party failing to make disclosure or discovery in an effort to obtain
18             it without court action.

19  Fed. R. Civ. P. 37.  Rule 37 states that "an evasive or incomplete disclosure, answer, or response

20  must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).

21         If a motion to compel discovery is granted, Rule 37(a)(5)(A) requires a court to order the

22  "party or deponent whose conduct necessitated the motion, the party or attorney advising that

23  conduct, or both to pay the movant's reasonable expenses incurred in making the motion,

24  including attorney's fees" unless: "(i) the movant filed the motion before attempting in good

25  faith to obtain the disclosure or discovery without court action; (ii) the opposing party's

26  nondisclosure, response, or objection was substantially justified; or (iii) other circumstances

27  make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A).  If the motion is denied, the

28  court must "require the movant, the attorney filing the motion, or both to pay the party or

1   deponent who opposed the motion its reasonable expenses incurred in opposing the motion,

2   including attorney's fees," however the court "must not order this payment if the motion was

3   substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P.

4   37(a)(5)(B).  Where the motion is granted in part and denied in part, the court "may, after giving

5   an opportunity to be heard, apportion the reasonable expenses for the motion."  Fed. R. Civ. P.

6   37(a)(5)(C).

7                                          **IV.**

8                                    **DISCUSSION**

9          The motion to compel only pertains to discovery sought from Defendants Wellpath and

10  CFMG (hereinafter "Defendants" for purposes of this motion).  (JS at 2.)  Plaintiffs seek an order

11  compelling Wellpath and CFMG to conduct electronic searches of their records and produce

12  documents responsive to two Requests for Production of Documents ("RFP(s)") propounded

13  under Federal Rule of Civil Procedure 34 more than eight (8) months ago, as well as sanctions in

14  the form of attorneys' fees.  (Id.)  Plaintiffs proffer that despite extensive meet and confer efforts,

15  and specifically an agreement made four (4) months ago as to what should be produced pursuant

16  to the RFPs in question, no supplemental documents were in fact produced until June of 2021.

17  (Id.)  Upon review of the supplemental documents, Plaintiffs determined the production was

18  insufficient.  Specifically, Plaintiffs emphasize that Defendants produced only two pages of

19  financial records despite both being large for-profit companies, and neither production included

20  emails or other electronic documents.  (Id.)  When confronted with this fact, Plaintiffs contend

21  that Defendants' counsel advised Plaintiffs that no search of emails or other electronic records

22  occurred.  (Id.)

23  **A.      The General Course of Meet and Confer and Discovery Responses**

24         The RFPs were first served on October 21, 2020.  (JS 2; Decl. Christopher A. Lisieski

25  Supp. JS Disc. Dispute ("Lisieski Decl."), ECF No. 40-3, Ex. A.)   After Plaintiffs granted

26  Defendants an extension, responses were served on December 7, 2020.  (Lisieski Decl. ¶ 3, Ex.

27  B.)  On January 6, 2021, Plaintiffs' sent a meet and confer letter to Defendants, specifically

28  addressing Plaintiffs' position that Defendants' objections to RFPs Nos. 20 and 21 were not a

proper basis to refuse to respond.  (Lisieski Decl. ¶ 4, Ex. C.)  On January 19, 2021, Defendants responded they would produce documents responsive to RFP No. 21, as long as they were subject to a protective order.  (Lisieski Decl. ¶ 5, Ex. D.)  Plaintiffs argue Defendants continued to refuse to produce documents to RFP No. 20, asserting they were not relevant.[2]

Plaintiffs responded by letter on February 2, 2021, arguing relevance is not the standard for discoverable documents, and greater discovery was warranted given the needs of this case were greater than past cases.  (Lisieski Decl. ¶ 6, Ex. E.)  Defendants responded on February 9, 2021, and agreed to produce data in relation to a narrowed RFP 20 that covered only the prior ten (10) years, and only for California facilities.  (Lisieski Decl. ¶ 7, Ex. F.)  The parties agreed to a stipulated protective order that the Court entered on February 25, 2021.  (ECF No. 38.)

On April 1, 2021, Plaintiffs contacted Defendants to inquire about the supplemental documents to be produced, due to over a month passing since entry of the protective order.  (Lisieski Decl. ¶ 8, Ex. G.)  Plaintiffs contacted Defendants again on April 8, 2021.  (Lisieski Decl. ¶ 10, Ex. H.)   No substantive response was received by Plaintiffs to each of these communications.  (JS at 3; Lisieski Decl. ¶ 11.)  Plaintiff contacted Defendants again on April 23, 2021.  (Lisieski Decl. ¶12.)  Defendants responded on April 27, 2021, stating that a client contact employed by Wellpath had left the company, which caused the delay in conducting searches and producing documents.  Defendants also advised Plaintiffs they had no documents

---

[2]  The Court has reviewed Defendants' initial response letter dated January 19, 2021.  As to RFP No. 20, Defendants stated:

> The issue with production of the documents sought beyond the Merced County Jail is precisely that the policies and practices simply are not "one size fits all" or universal.  The contracts CFMG enters with each individual county are specific to that county, and specific to that county's requested services.  For example, in some facilities, CFMG does not provide any mental health whatsoever . . . In addition, and by way of another example, staffing patterns are completely different in different facilities, depending on the county's requests and jail population.  So, not only are the policies not universal, but their implementation is different and comparison of one facility with another is impossible and generates irrelevant information.  The "macro-level" data sought by plaintiffs in connection with Merced County should be possible to produce and I can certainly begin with that production.

(ECF No. 40-4 at 54.)  As to RFP No. 21, Defendants stated: "Subject to the entry of a protective order, responsive documents can be produced."  (Id.)

1   responsive to RFP No. 21, which Plaintiffs proffer equates to a statement that this for-profit

2   company did not retain any financial records related to its work at the Merced County Jail.  (JS at

3   3; Lisieski Decl. ¶ 13, Ex. J.)  Having doubts about the veracity of this, Plaintiffs inquired what

4   search terms Defendants had used to determine that they did not maintain financial records.  (JS

5   at 3; Lisieski Decl. ¶ 14, Ex. K.)

6        On May 10, 2021, following further communications from Plaintiffs, Defendants averred

7   they had "served updated and verified responses at least a week ago if not longer," and that they

8   would re-serve the discovery.  (J.S. at 3;Lisieski Decl. ¶ 15; Ex. L.)  Plaintiffs followed up on

9   these assertions on May 19, 2021 and May 26, 2021, but received no responses, and proffer that

10   no supplemental discovery was received by Plaintiffs in May 2021.  (Lisieski Decl. ¶ 16, Ex. M.)

11        On June 3, 2021, Plaintiffs received supplemented responses to RFPs Nos. 20 and 21,

12   more than three months after the entry of the protective order.  (J.S. at 4; Lisieski Decl. ¶ 17,

13   Exs. N, O.)  These responses were verified in June 2021, indicating that Defendants had not, in

14   fact, served the supplemental responses in early May 2021, as stated.  (Id.)  Plaintiffs argue these

15   supplemental responses were obviously incomplete.  For example, in response to RFP No. 20,

16   which asked for all documents related to macro-level analyses or audits of in-custody deaths in

17   the prior 10 years in Wellpath-run facilities in California, Defendants produced 23 pages of

18   documents.  (JS at 4; Lisieski Decl. ¶ 18.)   The responses contained no e-mails or direct

19   messaging, no notes, no text messages, no correspondence or letters, no memoranda, and no

20   other associated documents of any kind.  (Id.)  In response to RFP No. 21, Defendants produced

21   only two (2) pages of financial documents, again with no e-mails, direct messaging, notes, text

22   messages, correspondence, letters, memoranda, or other documents were produced.  (Id.)

23        On June 23, 2021, Plaintiffs sent Defendants another letter detailing these concerns,

24   noting the responses appeared incomplete, and stating that since these RFPs had been served

25   more than eight months prior, no further extensions for production could be given.  (JS at 4;

26   Lisieski Decl. ¶ 19, Ex. P.)  Plaintiffs advised Defendants that they would be filing this motion

27   simultaneously with the letter, but that time and resources spent litigating motion practice on this

28   discovery issue could still be avoided if a full production was produced prior to the date for

1  submitting the Joint Statement.  (Id.)

2        Defendants' counsel requested a telephonic discussion on to occur on June 24, 2021, as

3  noted in Defense counsel's email dated June 23, 2021.  (Lisieski Decl. ¶ 20, Ex. Q.)  Plaintiffs'

4  counsel spoke to Defendants' counsel by telephone the next day, June 24, 2021, and Defendants'

5  counsel advised that Defendants had not, in fact, searched for emails or any other electronic

6  documents responsive to these discovery requests, and that any document searches for other

7  documents were ineffective and did not use any type of systematic searching.  (J.S. at 4; Lisieski

8  Decl. ¶ 20.)  For the first time, Defendants advised Plaintiffs that, while they agreed to produce

9  documents, they were having trouble formulating searches to gather responsive documents.  (Id.)

10  Plaintiffs' counsel agreed to formulate lists of potential search terms, and sent the same to

11  Defendants via letter on June 30, 2021.  (JS at 4; Lisieski Decl. ¶ 21, Ex. S.)  Plaintiffs' counsel

12  noted in several e-mails and letters that Plaintiffs could not formulate precise search terms that

13  would work for Defendants' computer information systems without further knowledge about

14  what those systems were, how they functioned, and how they could be searched.  (JS at 4-5;

15  Lisieski Decl. ¶ 21, Exs. T, U.)

16        Plaintiffs proffer that no meaningful exchange of information concerning Defendants'

17  electronic records or search capabilities has been provided to Plaintiffs, nor have any further

18  documents been produced since Defendants' counsel acknowledged that Defendants had "never

19  even attempted to fulfill their discovery obligations in good faith."  (JS at 5.)  In sum Plaintiffs

20  argue that the parties have met and conferred extensively concerning RFPs Nos. 20 and 21; that

21  truthfully, little remains in dispute as Defendants have agreed to produce documents to these

22  RFPs months ago, yet Defendants have not done so, and in fact, submit that Defendants never

23  even attempted to meaningfully fulfill their discovery obligations or conduct the relevant

24  searches necessary to actually produce these documents until after this motion was filed.  (JS at

25  5.)

26        **B.   The Specific Requests for Production in Dispute**

27        Having set forth the general course of meet and confer since the requests were originally

28  propounded, the Court now turns to the specific requests for production as set forth in the

1  parties' Joint Statement.  RFP No. 20 to Defendant Wellpath states as follows:

2              Please produce all DOCUMENTS REGARDING, REFERRING
               OR RELATING TO or showing reports, data, schedules, or
3              analyses of in-custody deaths in facilities for which YOU, CFMG,
               or any related or predecessor entity was contracted to provide
4              medical and mental healthcare.

5  (Lisieski Decl., Ex. A, ECF No. 40-4 at 9.)   RFP No. 20 to Defendant CFMG is practically

6  identical[3]:

7              Please produce all DOCUMENTS REGARDING, REFERRING
               OR RELATING TO or showing reports, data, schedules, or
8              analyses of in-custody deaths in facilities for which YOU,
               Wellpath, or any related or predecessor entity was contracted to
9              provide medical and mental healthcare.

10  (Lisieski Decl., Ex. A, ECF No. 40-4 at 19-20.)  The term "DOCUMENTS" was further defined

11  as follows:

12             The term "DOCUMENT" or "DOCUMENTS" shall include,
               without limitation, the following (together with any copies thereof
13             to the extent they differ in any respect from the original, or from
               another copy): letters, memoranda, disks, e-mail messages, text
14             messages, tapes and/or video recordings, invoices, agreements,
               licenses, diagrams, handwritten notes, periodicals, other
15             publications, pamphlets, reports, records, studies, instruction
               sheets, working papers, charts, papers, graphs, indices, data sheets,
16             data processing cards, tapes, labels, containers, including originals
               or copies of the above whether printed, recorded, filmed, written
17             by hand, maintained in electronic form, or reproduced by any other
               process, and any other data compilations from which information
18             can be obtained.

19  (Lisieski Decl., Ex. A, ECF No. 40-4 at 5, 15.)

20       Defendants initially objected that RFP No. 20 was overbroad, burdensome, and

21  oppressive, violated State and federal privacy rights under the State and U.S. Constitutions, and

22  "impermissibly seeks private health information in violation of State and Federal Statutes,

23  including, but not limited to, HIPAA and the CMIA."  (Lisieski Dec., Ex. B, ECF No. 40-4 at 31,

24  42.)   Without waiving such objections the Defendants produced "bates number CFMG-RS

25  _____
    [3]  While the RFPs are identical except for specifying between CFMG and Wellpath after the word "YOU," the Court
26  notes that as served, these were distinct RFPs to each entity, however, only the precise text of RFP Nos. 20 and 21
    as served on Wellpath were provided in the Joint Statement.  Plaintiffs do advise the Court in the Joint Statement
27  that "[b]ecause Defendants have advised that, for all intents and purposes, Wellpath and CFMG are the same entity
    in terms of record-keeping, employees, and other functions, and that any responses to discovery will be exactly the
28  same for the two entities, they will not be further distinguished in this motion and will be referred to collectively as
    'Wellpath.' "  (JS at 6 n.1.)

                                          9

1   000679 reflecting data of Merced County deaths, with private health information redacted."

2   (Lisieski Dec., Ex. B, ECF No. 40-4 at 31, 42.)

3        Thereafter, the parties agreed to narrow the scope through meet and confer, specifically,

4   to include only documents from the prior ten (10) years.  (Lisieski Decl. ¶ 6, Ex. E.)  Plaintiffs

5   also clarified the scope of the request as follows:

6          To be clear, this document request is focused on macro-level
           analyses and data: summary reports or after-action reports of
7          deaths (particularly suicides), compilations of data showing in-
           custody deaths (particularly in-custody suicides), and memoranda,
8          notes, e-mails, and other documents which discuss or analyze that
           generalized data and information.  Plaintiffs are not requesting
9          every document related to every in-custody death in every CFMG
           facility, which is why the request seeks "reports, data, schedules,
10         or analyses of in-custody deaths."

11  (Lisieski Decl., Exs. C, E.)  The parties further agreed to limit RFP No. 20 to only California-

12  based facilities for which CFMG/Wellpath provide services.  (Lisieski Decl. ¶ 7, Ex. F.)

13       On June 3, 2021, Defendants served a supplemental production to RFP No. 20, producing

14  Bates stamp numbers CFMG-RS 000737-760, a total of twenty-three (23) pages of documents,

15  appearing to consist only of printed Excel sheets, and containing no memoranda, e-mails, notes,

16  text messages, correspondence, Word files, or other documents.  (Lisieski Decl. ¶ 18.)  The

17  responses to RFP No. 20 for both Wellpath and CFMG were verified by the Regional Vice

18  President of Operations for Wellpath on June 4, 2021.  (Lisieski Decl. ¶ 17, Exs. N, O, ECF No.

19  40-4 at 93, 99.)

20       As noted above, Plaintiffs dispatched a letter on June 23, 2021, advising Defendants they

21  would be filing the motion to compel, the parties spoke by telephone on June 24, 2021, and

22  Defendants expressed they conducted no email searches, and were having difficulty in

23  formulating search terms.  (JS 7-8; Lisieski Decl. ¶¶ 19-20, Exs. P, Q.)  The parties continued to

24  meet and confer about search terms, however no supplemental documents were produced before

25  the filing of the Joint Statement.  (J.S. 8.)

26       Plaintiffs argue that there is little in dispute about the actual RFP No. 20 following agreed

27  to narrowing of the scope, and Defendants purport to have conducted the searches in June of

28  2021.  (JS 8.)

RFP No. 21 to Defendant Wellpath states as follows:

> Please produce all DOCUMENTS REGARDING, REFERRING OR RELATING TO or showing any budgets, financial analyses, projections of revenue, costs, or profits, audits, or other financial documents related to the provision of medical and mental healthcare by YOU, CFMG, or any related or predecessor entity at the MERCED COUNTY JAIL.

(Lisieski Decl., Ex. A, ECF No. 40-4 at 9.)  RFP No. 21 to Defendant CFMG states as follows:

> Please produce all DOCUMENTS REGARDING, REFERRING OR RELATING TO or showing any budgets, financial analyses, projections of revenue, costs, or profits, audits, or other financial documents related to the provision of medical and mental healthcare by YOU, CFMG, or any related or predecessor entity at the MERCED COUNTY JAIL.

(Lisieski Decl., Ex. A, ECF No. 40-4 at 20.)  RFP No. 21 was subject to the same definition of "DOCUMENTS" as described above.  (Lisieski Decl., Ex. A, ECF No. 40-4 at 5, 15.)

Defendants initially objected to RFP No. 21 on December 7, 2020, stating the request was burdensome and oppressive and that financial documents were "protected by the State and Federal Constitutions."  (Lisieski Dec., Ex. B, ECF No. 40-4 at 32, 43.)  Defendants initially produced Bates numbers CFMG-RS 000680-CFMG-RS 000736 "reflecting the contract for services (and amendments) between the responding party and Merced County."  (Id.)  On January 6, 2021, Plaintiffs responded by rejecting the merit of the objections, but "reiterated" they had no objection to a stipulated protective order.  (J.S. at 11; Lisieski Decl. ¶ 4, Ex. C.)  On January 19, 2021, Defendants responded that "[s]ubject to the entry of a protective order, responsive documents can be produced."  (Lisieski Decl. ¶ 5, Ex. D.)  Despite the protective order being entered on February 25, 2021 (ECF No. 38), no discovery responses were received for RFP No. 21 until June 2021, despite repeated requests from Plaintiffs' counsel.  (Lisieski Decl. ¶¶ 9-16, Exs. G-M.)

When the supplemental production was provided in June of 2021, Defendants only provided two pages of documents, and Plaintiffs contacted Defendants pointing out that the production contained no emails, text messages, correspondence, notes, memoranda, or any other documents, and noted they were skeptical that a large company would have such limited number

of responsive financial documents about services in Merced County.  (Lisieski Decl. ¶¶ 17-19, Exs. N, O, P.)  On June 24, 2021, Plaintiffs state that Defendants conceded in a telephone call that they had not conducted searches for emails or other electronic documents.  (Lisieski Decl. ¶ 20, Ex. R.)

Similar to RFP No. 20, Plaintiffs submit there is little dispute about what should be produced in response to RFP No. 21, and Defendants already agreed to produce responsive documents after a protective order was entered.  (JS at 12; Lisieski Decl. ¶ 5, Ex. D.)  Plaintiffs argue the June 2021 production is clearly incomplete given the company's work with the County of Merced for more than a decade.  (JS at 12.)  Plaintiffs again emphasize that Defendants admitted they failed to search electronic records prior to the bringing of this motion, and only conducted searches of their ESI after the filing of this motion.  (JS at 12.)

In June of 2021, Defendants represented they had completed searches and supplied the only relevant documents, which consisted only of two pages.  Specifically, Defendants stated in the June 3, 2021 response, after restating the original objections, that "following entry of the protective order and additional investigation, and after a diligent search and reasonable inquiry, please see the additional documentation produced herewith at bates numbers CFMG-RS 000761 – CFMG-RS 000762."  (Lisieski Decl. ¶ 17, Exs. N, O, ECF No. 40-4 at 92, 98.)  The responses to RFP No. 21 for both Wellpath and CFMG were verified by the Regional Vice President of Operations for Wellpath on June 4, 2021.  (Lisieski Decl. ¶ 17, Exs. N, O, ECF No. 40-4 at 93, 99.)  While RFP No. 21 expressly required production of electronic records, Defendants admitted they had not conducted searches of email or other electronic records, and thus Plaintiffs argue Defendants have not produced responsive documents, have failed to adequately search for records despite verifying under oath they had done so, and that if not compelled to produce by a date certain, Defendants will continue to avoid their obligations and further delay this litigation.  (JS at 13.)

C.    **Defendants' Response in the Joint Statement**

Defendants respond that they do not dispute the sequence and general substance of the factual information set forth in Plaintiffs' portion of the Joint Statement, with some clarification.

(JS at 15.)  Defendants acknowledge a delay in the supplemental production of documents or in providing verifications of no responsive documents, however, argue an imposition of sanctions is unwarranted given the prematurity of the motion to compel and the meeting and conferring and production that is ongoing and being conducted in good faith.

### 1.   RFP No. 20

Defendants agree the request was narrowed or clarified to macro-analyses, and limited to California-based facilities, as the Court noted above.  Defendants contend they conducted searches, including of ESI, and produced all responsive documents.  (JS at 16.)  Defendants sate "admittedly there was some confusion as to the contents of the ESI search, but in fact, as verified by Wellpath and in the accompanying declaration, the **only** remaining search to be conducted is a search of custodial emails, with agreed upon search terms."  (JS at 16 (emphasis in original).)  Defendants proffer that Plaintiffs only sent their final search terms on July 1, 2021, and thus it has not been eight months since the ESI request were made, but rather less than one month.  (JS at 16.)  Defendants proffer they are nonetheless diligently conducting the search among all possible custodians as of the date of the filing.  Defendants submit that the results of the search by Wellpath will be provided to counsel by July 28, 2021, the date of the hearing on this motion, and that counsel will review and complete the production by July 30, 2021.  (JS at 16.)

### 2.   RFP No. 21

Defendants state that after "admitted delay" following meet and confer, Defendants did produce all responsive documents to RFP No. 21, "albeit scant."  (JS at 15.)  Defendants proffer that an ESI search was indeed conducted, as verified by a declaration provided by Wellpath,[4] and in fact, there are no documents responsive to RFP No. 21.  (JS at 15.)  Defendants contend this is true because Wellpath's financial documents "are not separated by individual entities, such as the Merced Jail, the Monterey Jail, etcetera, but are in fact comingled and collective throughout the company."  (Id.)  Defendants contend the documents produced were the result of Wellpath's "best efforts to parse out Merced County from the remainder of the vast operation it conducts,

---

[4] While Defendants' portion of the Joint Statement refers to accompanying declarations, no such declarations were attached to the Joint Statement, but rather, supplemental declarations were filed two day after the filing of the Joint Statement.  (ECF Nos. 41, 42.)

despite having no obligation to do so," and there are "simply no additional documents, electronic or otherwise, to produce," as verified by Wellpath's Vice President, and while Plaintiffs have doubts of this response, without any further evidence of Wellpath actually withholding documentation, such doubts cannot form the basis for compelling responses.  Defendants argue the responses were verified, and again represent to the Court that no further documentation exists beyond what was already produced in supplemental responses.  (Id.)

           3.     Defendants' Late Filed Declarations

        Defendants emphasize that Plaintiffs have served 230[5] separate requests for production of documents on Defense counsel's various clients in this action.  (Decl. Jemma Parker Saunders Resp. Pls.' Mot. Compel ("Saunders Decl.") ¶ 2, ECF No. 41.)  Counsel emphasizes that the objections to RFP 20 and 21 of overbreadth, confidentiality and the need for a protective order were not boilerplate, and were necessary given the language of the requests.  (Saunders Decl. ¶ 3.)  Following meeting and conferring to narrow RFP No. 20 and entering a stipulated protective order, Defense counsel submits she endeavored to obtain production of all responsive documents including ESI, but unfortunately, the documentation sought by Plaintiffs was not readily available, and there was an admitted delay in production, though counsel attempted to stay in contact and was candid in the shortcomings in service of the supplemental response.  (Saunders Decl. ¶¶ 4, 5, Ex. B.)[6]

---

[5]  The Court notes that the Joint Statement refers to 330 requests (JS at 16) whereas Defense counsel's declaration refers to 230.  (Saunders Decl. ¶ 2.)

[6]  Specifically, on April 27, 2021, Ms. Saunders explained some of the reasons for the delay from Wellpath:

> Wellpath recently lost its litigation/claims manager, whom I relied on (heavily) for discovery coordination. In his wake there were many outstanding discovery requests, including yours. So far, there is no replacement, but I am trying to figure this out with whomever the new person will be. I did have responses to RFP Number 21 confirmed, specifically, that after a diligent search and inquiry, the contract which was already produced was the only document responsive to the request. However, the verification was left unsigned by the departing personnel so- I am happy to send those responses but they are currently unverified.
>
> As to Request 20, I am in a vacuum of information. It was my understanding that responsive documents were being compiled based on our narrowing of the request, but that does not seem to be the case. I can assure you, I am doing my

Counsel proffers the supplemental responses served on June 4, 2021,[7] included all ESI except for emails.  (Saunders Decl. ¶ 6.)  On July 23, 2021, a second supplemental response was served on behalf of Defendants which included "unintentionally omitted documents in response to Request [No.] 21."  (Saunders Decl. ¶ 7.)  The omitted documents were received by counsel's office to be served on June 4, 2021, but due to an IT oversight by counsel's office, they were not attached to the first supplemental response, and the issue was only brought to counsel's attention on July 22, 2021.  (Id.)  Ms. Saunders immediately ordered production of the newly-located documents.  (Id., Ex. D.)

Counsel submits that Wellpath has now produced all documentation, electronic or otherwise that is responsive to RFPs Nos. 20 and 21, with the exception of emails.  (Saunders Decl. ¶ 8.)  As to the emails, on July 1, 2021, Ms. Saunders received what she believed were the final versions of Plaintiffs' requested electronic search terms and provided such to Wellpath, Thereafter, appropriate custodians have been identified, and the final search for RFPs Nos. 20 and 21 is underway as of the date of filing of the declarations.  (Id. at ¶ 9.)  Ms. Saunders expects the search results no later than July 28, 2021, and to complete review and serve by July 30, 2021, less than a month after receipt of the search terms.  (Saunders Decl. ¶ 9.)

A paralegal with Defendant Wellpath provided a declaration, who worked on this action providing outside counsel on discovery responses.  (Decl. Tracie Root Resp. Pls.' Mot. Compel ("Root Decl.") ¶¶ 1-2, ECF No. 42.)  On June 2, 2021, the paralegal provided counsel with all documents responsive to RFP No. 20, with the exception of email.  (Root Decl. ¶ 3.)

/ / /

/ / /

/ / /

---

best to figure this out. Come what may I will get an affirmative production date by the end of the week. I sincerely apologize for the inexcusable delay, and your patience is greatly appreciated.

(Saunders Decl., Ex. B, ECF No. 41-2 at 2.)

[7]  Plaintiffs refer to a service date of responses on June 3, 2021, and a date of June 4, 2021 as the date the verifications were received.  Defendants appear to only refer to June 4, 2021.  Any difference is not material to the conclusions reached herein.

1    Specifically, the paralegal proffers:

2          On June 2, 2021 I provided counsel . . . with all documents
           responsive to [RFP No. 20] with the exception of any responsive e-
3          mail . . . In doing so, I performed a thorough and diligent search
           which consisted of emailing and calling HSA and AA at Merced
4          County Jail, emailing corporate CQI department, emailing
           corporate clinical, emailing the CMGC corporate operations, and
5          emailing corporate nursing initiatives.  The Operations Specialist
           at CA CMGC Corporate Ops Admin is on PTO until July 30,
6          2021. I was redirected to WPW Ops Specialist at Corporate
           Operations, who is in the process of reviewing her documents and
7          reaching out to other sites.

8          I performed a thorough search of electronic and "hardcopy"
           documents responsive to Request 20.  Based on my review of
9          Bertling Law Group's Supplemental Response to Request for
           Production of Documents Set One, all documentation I provided to
10         Bertling Law Group relative to this request was produced.

11         The one exception for my production search relative to number 20
           was e-mail, as I did not have the exact search terms and search
12         custodians until July 21, 2021.  This e-mail search is currently
           ongoing and I expect to provide the complete results to Bertling
13         Law Group on (or likely before) July 28, 2021.

14   (Root Decl. ¶¶ 3-5.)

15         As for RFP No. 21, the paralegal affirms that on behalf of Wellpath, they provided

16   counsel with all documentation, electronic or otherwise, responsive to this request, with the

17   exception of any responsive e-mail, and restates the same general statement as to the RFP No. 21

18   that the Court reproduced above as to RFP No. 20.  (Root Decl. ¶¶ 6-7.)

19         **D.     The Court Shall Grant Plaintiffs' Motion to Compel**

20         "[A]n evasive or **incomplete disclosure**, answer, or response must be treated as a failure

21   to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4) (emphasis added).  The Court finds the

22   incomplete disclosures, whether such failure was not intentional or not in bad faith, was a failure

23   nonetheless.  Id.; Burnett v. United States, No. EDCV151707CASKKX, 2016 WL 3392263, at

24   *6 (C.D. Cal. June 14, 2016) ("Plaintiff has a duty to undertake a diligent search and reasonable

25   inquiry in order to adequately respond to requests for production."); Ransom v. Marquez, No.

26   1:10-CV-00397-AWI-GS, 2015 WL 2380860, at *5 (E.D. Cal. May 18, 2015) ("In responding to

27   discovery requests, a reasonable inquiry must be made, and if no responsive documents or

28   tangible things exist, Fed.R.Civ.P. 26(g)(1), the responding party should so state with sufficient

16

specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence.").  Given the extensive time between the initial service of the requests, the course of meet and confer, and the further delay before the incomplete supplemental responses, the Court does not find the failure reasonable or excusable.

Defendants argued at the hearing that emails were searched in a "general sense" but not with specific designated search terms until provided on July 1, 2021.  The Court understands Defendants' position that the email search terms were provided on July 1, 2021, but given the definition of "documents" contained in the original requests, emails should have been provided, and given the sparse amount of documents provided, the Court is not convinced a truly thorough or diligent search of emails were completed even in a "general sense," prior to a search with more specific terms could be or was completed.  When pressed at the hearing, Defendants mainly concede meet and confer on the emails probably should have been completed earlier in the meet and confer process, but argue email search terms were not brought to Defense counsel's attention.  Plaintiff respond that email search terms were not part of the original meet and confer discussions because Plaintiffs were not made aware there were issues with email search terms that needed to be addressed, and the first time the issue was raised was after the insufficient productions.  Defendants argue the onus falls on Plaintiffs to provide search terms because of the overbreadth objection, and because the requests were discussed and narrowed through meet and confer.  The Court rejects this argument.  It may have been reasonable to object on overbreadth and meet and confer on email search terms early on in the meet and confer process, but not now, after supplemental productions, and only after the filing of the motion to compel.  The Court finds that through the months of meet and confer, the onus on providing the search terms seems more appropriately to have fallen on Defendants, particularly given the admitted delay in overall production, and the "scant" amount of documents found and produced.

Turning to the specific requests, as for RFP No. 20, the Court shall order further responses, to be provided by Defendants, and specifically to produce all responsive emails within two (2) weeks of entry of this order.  Defendants maintain that all responsive documents aside from emails have been produced, including other forms of ESI, and Plaintiffs did not seem to

largely dispute this, at least as to RFP No. 20, at least as far as the responses have been verified and deficiencies may have to be explored at deposition.  Despite this, the Court recommends counsel consider another search or verification of documents aside from email, as the Court will consider the below facts if deficiencies identified in deposition need to be addressed by the Court in the future.  The initial production to RFP No. 20 only contained one (1) page.  The supplemental production only contained twenty (23) pages.  As Plaintiffs highlight in the Joint Statement that even excepting emails, the supplemental production did not contain memoranda, notes, text messages, correspondence, Word files, or other documents, and rather only contained printed Excel sheets.  (JS at 7.)  The declaration of Wellpath's paralegal as to RFP No. 20 seems to imply that the extent of the diligence shown in the search was limited to issuing some emails and phone communications to other departments or entities that may have responsive documents, and attesting to a thorough search of hard copy and electronic records.  (Root Decl. ¶ 3.)  Even therein it appears one contact is not available until July 30, 2021, and thus will require additional follow-up or supplementation even though the initial contact appears to have been prior to June 2, 2021.  (Id.)  This one aspect demonstrates why the months of delay has continued to impact the production of responsive documents, even aside from email production.

Accordingly, for all of the above reasons, Plaintiffs' motion to compel further production of all responsive documents to RFP No. 20 shall be granted.

AS for RFP No. 21, the initial production contained the contract for services and amendments between the responding party and Merced County.  The first supplemental production contained only two (2) pages.  At the hearing, Defendant emphasized that as stated in the late-filed declaration of Defense counsel, some additional documents have now been provided that were unintentionally omitted due to an IT oversight.  The Court notes this refers to the second supplemental response served on July 23, 2021, which also only contained an additional two (2) pages of documents.  (ECF No. 41-4 at 4.)  Defendant agrees this does not sound like a lot, but argues this has been certified and verified by the Defendants as all documents responsive to the requests, and Defendants stand on the position that there is nothing else to produce, aside from what will be found through an email search using the search terms in

1   hand since July 1, 2021.

2          Like Plaintiffs, the Court is perplexed as to why only two pages could be responsive as

3   provided in the supplemental production.   Plaintiffs argue that even aside from emails,

4   Defendants appear to concede in the Joint Statement that they have not produced all responsive

5   documents under Plaintiffs' understanding of the terms of the request (JS at 15), but rather those

6   that only concern Merced county, but not documents that have information about Merced in

7   conjunction with additional areas of California.   Plaintiffs maintain such aggregate data is

8   responsive if it *relates* to Merced County.   Defense Counsel stated at the hearing that the

9   statement in the Joint Statement is what she was told by the client, but then stated she did not

10  proffer such explanation in the late-filed declaration because there are site-specific financial

11  documents, and that is what they produced after the Joint Statement.   It appears this is the two (2)

12  additional pages that were produced in the second supplemental responses.   Defendants admit

13  any company has comingled funds, but produced only site-specific documentation.

14         The Court largely agrees the production seems too limited, however, as discussed at the

15  hearing, full resolution of this issue may have to wait until after depositions are completed.   The

16  Court again implores counsel to consider another thorough search and consideration of the term

17  *referring or relating* to Merced County, as the Court will be inclined to consider the "scant"

18  production here and course of production if deficiencies identified in deposition need to be

19  addressed by the Court in the future.   The Court is skeptical, but if this is what the Defendants

20  have verified, the Court will have to perhaps wait, as Plaintiffs seem to agree with, to a later time

21  to address deficiencies that come to light.

22         **E.      Attorneys' Fees Shall be Awarded as a Sanction against Defendants**

23         Plaintiffs submit that Defendants' failure to conduct electronic searches is in no way

24  justified, let alone substantially so.   Further, Plaintiffs highlight that where discovery requiring

25  electronic searches is involved, client-led searches are not reasonable where the client does not

26  have sufficient experience with e-discovery.   See Optrics Inc. v. Barracuda Networks Inc., No.

27  17-CV-04977-RS (TSH), 2021 WL 411349, at *7 (N.D. Cal. Feb. 4, 2021) ("A client-led search

28  like the one here, where Optrics had no experience with electronic discovery, was not

1  reasonable."); <u>Abadia-Peixoto v. U.S. Dep't of Homeland Sec.</u>, No. CV 11-04001 RS (KAW),

2  2013 WL 4511925, at *2 (N.D. Cal. Aug. 23, 2013) ("In the era of e-discovery, attorneys must

3  take 'responsibility for ensuring that their clients conduct a comprehensive and appropriate

4  document search.' ") (quoting <u>Qualcomm Inc. v. Broadcom Corp.</u>, No. 05CV 1958-B (B L M),

5  2008 WL 66932, at *9 (S.D. Cal. Jan. 7, 2008)).

6      Defendants proffer that none of the delay has been in bad faith, Defendants never

7  declined to produce documentation, and in fact fully responded to multiple sets of requests for

8  production and interrogatories.  Defendants p[particularly emphasize that there are only two (2)

9  requests at issue with this motion, out of hundreds of requests to Wellpath and its agents, and

10  presumably these two requests will no longer be at issue as of July 28 or July 30, 2021.  (JS at

11  16.)  Given this, Defendants respect no sanctions be imposed given while there was some delay

12  in production of the supplemental responses,, there was no bad faith, and counsel and Wellpath

13  are diligently working, but the documentation was not readily available to either, and internal

14  transitions resulted in "agreeably frustrating delays."  (JS at 17.)

15      The Court finds sanctions in the form of attorneys' fees incurred to file the motion the

16  motion to compel are warranted.  As stated above, the entire course of meet and confer and the

17  incomplete production omitting proper searches of emails after admitted delay, is a failure to

18  produce discovery.  Fed. R. Civ. P. 37(a)(4); <u>Burnett</u>, 2016 WL 3392263, at *6; <u>Ransom</u>, 2015

19  WL 2380860, at *5; <u>Optrics Inc.</u>, WL 411349, at *7; <u>Abadia-Peixoto</u>, 2013 WL 4511925, at *2).

20  Despite verifications in the initial responses of a thorough and diligent search, the Court finds the

21  search of emails in a "general sense," was not thorough and diligent, and the RFPs expressly

22  requested production of emails.  Plaintiffs arguments that the onus was on Defendants to provide

23  search terms through the months of meet and confer are not availing.  <u>See</u> <u>Markey v. Lapolla</u>

24  <u>Indus., Inc.</u>, No. CV 12-4622 JS AKT, 2015 WL 5027522, at *20 (E.D.N.Y. Aug. 25, 2015)

25  ("The Court finds that MAR's inquiry was similarly lacking with respect to its certification of

26  Plaintiffs' responses to Lapolla's request for production. In particular, the evidence compiled at

27  the hearing shows that Attorney Sirotkin and Attorney Ratner failed to adequately oversee

28  Plaintiff's document production, including the culling of relevant ESI.  While, of course, it is true

that counsel need not supervise every step of the document production process and may rely on their clients in some respects, counsel is responsible for coordinating her client's discovery efforts[,] both in terms of the client's duty to locate relevant information and the client's duty to preserve and timely produce that information.") (internal quotation marks and citation omitted), report and recommendation adopted, No. 12-CV-4622(JS)(AKT), 2016 WL 324968 (E.D.N.Y. Jan. 26, 2016).

The fact that more documents came to light that were responsive after the filing of the motion to compel, and that no searches of emails occurred until after the filing of the motion, informs the Court the motion to compel was necessary, and given the entirety of the course of meet and confer, Plaintiffs were not premature in bringing such motion despite Defendants' arguments to the contrary.  However, given the tenor of the meet and confer, the explanations provided by Defense counsel Ms. Saunders, her reliance on the client, and the fact that if Defendants had in fact received emails within the June supplemental production, no motion would have likely been filed, the Court will not grant attorneys' fees for services provided before the June 2021 supplemental production.  The Court also considers the breadth of discovery overall in this action, including the fact emphasized by Defense counsel that Plaintiffs have served hundreds of requests for production of documents on Defense counsel's various clients, and only two remain at issue through this course of meet and confer.  Accordingly, based on the Court's review of the totality the circumstances, the Court finds Defendants "failure was substantially justified or other circumstances make an award of expenses unjust," Fed. R. Civ. P. 37(b)(2)(C), only until the date of receipt of the June 3, 2021 supplemental responses.

1.    The Amount of Attorneys' Fees

Having determined that an award of some reasonable expenses is warranted, the Court now turns to calculate appropriate and reasonable attorneys' fees.

Plaintiffs seek sanctions in the amount of $8,202.00.  (JS at 10; Lisieski Decl. ¶ 22, Ex. V; Decl. Jay Christofferson Supp. JS Disc. Dispute ("Christofferson Decl."), ECF No. 40-2.) Lisieski spent time valued at $6,439.50 since December of 2020, and anticipates no more than one hour to prepare and attend the hearing held on July 28, 2021, at a rate of $265.00 per hour.

(Id.)  Christofferson proffers spending attorney time valued at $1,762.50.  (Christofferson Decl. ¶ 2.)  Christofferson does not provide his standard billing rate but it appears to be $375.00 per hour.  (Lisieski Decl. ¶ 22, Ex. V.)  Christofferson and Lisieski do not provide the extent of their legal experience in support of the requested billing rates, but Christofferson proffers he is a shareholder at his law firm, and Lisieski proffers he is an associate.  The Court takes judicial notice of the fact that a search of the California Bar Association database shows that Christofferson has been an admitted attorney in California since 1999, and that Lisieski has been an admitted attorney in California since 2018.

"[U]nder federal fee shifting statutes the lodestar approach is the guiding light in determining a reasonable fee."  Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010) (internal punctuation and citations omitted); see also Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc., No. 17CV1943-LAB-LL, 2019 WL 3769191 (S.D. Cal. Aug. 9, 2019) (applying lodestar to calculate reasonable attorneys' fees under Rule 37)(b)(2)(C) for failure to comply with discovery order).  The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts.  First a court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed.  A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary.  Second, a court may adjust the lodestar upward or downward using a multiplier based on factors not subsumed in the initial calculation of the lodestar.  The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high.

Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041,1045 (9th Cir. 2000) (internal citations and punctuation omitted).

Under the lodestar method, the court will first determine the appropriate hourly rate for the work performed, and that amount is then multiplied by the number of hours properly expended in performing the work.  Antoninetti, 643 F.3d at 1176.  The district court has the discretion to make adjustments to the number of hours claimed or to the lodestar, but is required to provide a clear but concise reason for the fee award.  Gates v. Deukmejian, 987 F.2d 1392,

1398 (9th Cir. 1992).  The lodestar amount is to be determined based upon the prevailing market

rate in the relevant community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).

### a.      Reasonable Hourly Rate

The lodestar amount is to be determined based upon the prevailing market rate in the

relevant community, Blum, 465 U.S. at 896 (1984), which in this matter is the Fresno Division

of the Eastern District of California.  "To inform and assist the court in the exercise of its

discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the

attorney's own affidavits—that the requested rates are in line with those prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience and

reputation."  Blum, 465 U.S. at 895 n.11.  "Though affidavits provide satisfactory evidence of

the prevailing market rate, they are not conclusive . . . [and] Courts should rely on their own

familiarity with the market . . . bas[ing] their rates on the standards of the legal community in

which the court sits."  California Ass'n of Rural Health Clinics v. Douglas, No. 2:10-CV-00759-

TLN, 2014 WL 5797154, at *3, n.7 (E.D. Cal. Nov. 6, 2014).

Plaintiffs' counsel provided no caselaw or other support for the requested hourly rates of

$265.00 per hour for Lisieski, and $375.00 per hour for Christofferson.  The Court relies on its

own knowledge of customary legal local rates and experience with the legal market in setting a

reasonable hourly rate.  Ingram v. Oroudjian, 647 F.3d 925, 926 (9th Cir. 2011).  Defendants also

made no specific arguments concerning the reasonableness of the rates requested.  See Id. ("As

Defendants fail to submit any evidence challenging the accuracy and reasonableness of Plaintiffs'

attorneys' fees, Defendants waive their objections to the motion.  See Local Rule 230(c).")

(citations omitted).  In Douglas, the court continued to perform an analysis of whether the fees and

hours were reasonable, despite expressly finding the defendants had waived any such objections.

In the Fresno Division of the Eastern District of California, across a variety of types of

litigation generally, attorneys with experience of twenty or more years of experience are awarded

$325.00 to $400.00 per hour, attorneys with ten to twenty years of experience are awarded

$250.00 to $350.00 per hour, attorneys with five to ten years of experience are awarded $225.00

to $300.00 per hour, and less than $200.00 per hour for attorneys with less than five years of

experience.  See In re Taco Bell Wage & Hour Actions, 222 F.Supp.3d 813, 839 (E.D. Cal. 2016) (noting attorneys in Fresno Division with twenty or more years of experience are awarded $350.00 to $400.00 per hour, and attorneys with less than fifteen years of experience are awarded $250.00 to $350.00 per hour); Garcia v. FCA US LLC, No. 1:16-CV-0730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per hour to attorney with nearly thirty years of experience; $300.00 per hour to attorney with nearly fifteen years of experience; $250.00 per hour to attorney with ten years of experience; $225.00 per hour to attorneys attorney with five years of experience; and $175.00 per hour to attorney with less than five years of experience); Mike Murphy's Enterprises, Inc. v. Fineline Indus., Inc., No. 1:18-CV-0488-AWI-EPG, 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (awarding attorney with over twenty years of experience the $325.00 per hour requested, the $300.00 per hour requested by attorney with nearly twenty years of experience, and attorney with seven years of experience the requested $250.00 per hour); TBK Bank, SSB v. Singh, No. 1:17-CV-00868-LJO-BAM, 2018 WL 1064357, at *8 (E.D. Cal. Feb. 23, 2018), report and recommendation adopted, No. 117CV00868LJOBAM, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding attorneys with over thirty-five years of experience $400.00 per hour, attorney with twenty years of experience $350.00 per hour; and attorney with ten years of experience $300.00 per hour); Phillips 66 Co. v. California Pride, Inc., No. 1:16-CV-01102-LJO-SKO, 2017 WL 2875736, at *16 (E.D. Cal. July 6, 2017), report and recommendation adopted, No. 1:16-CV-01102-LJO-SKO, 2017 WL 3382974 (E.D. Cal. Aug. 7, 2017) (awarding attorney with twenty-years of experience $400.00 per hour); Roach v. Tate Publ'g & Enterprises, No. 1:15-CV-00917-SAB, 2017 WL 5070264, at *10 (E.D. Cal. Nov. 3, 2017) (awarding attorney with sixteen years of experience $325.00 per hour in copyright action); Sanchez w. Frito-Lay, Inc., No. 1:14-cv-00797-AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015) (in a wage and hour class action finding reasonable rate of $350.00 per hour for attorneys with more than twenty years of experience and $275.00 per hour for attorney with fourteen years of experience).  Recently, the undersigned approved attorneys' fees in an FLSA action that totaled approximately thirty-one percent (31%) of the common fund, and in performing a lodestar cross-check, found the corresponding rates of

$450.00 per hour for a partner with nineteen years of experience, $400.00 per hour for a senior associate attorney with an unspecified amount of years of experience, and a rate of $325.00 per hour for an associate with eight years of experience, to be reasonable.  Englert v. City of Merced, No. 118CV01239NONESAB, 2020 WL 2215749, at *13 (E.D. Cal. May 7, 2020).

Accordingly, based on the Court's own familiarity with the relevant legal market, the Court finds a reasonable rate for the services of Lisieski, with less than five (5) years of experience, is $200.00 per hour, less than billed, and that a reasonable rate for the services of Christofferson, with over twenty (20) years of experience, is $375.00 per hour, which is the amount billed by counsel.

### b. Reasonable number of hours

As stated above, the Court finds that only time incurred after the deficient supplemental responses were received in June 2021 shall be awarded.  Including one hour for appearing at the hearing, the Court finds that Lisieski reasonably expended 15.6 hours on the motion to compel and associated work since receiving the supplemental responses.  (See Ex. V.) The Court finds Christofferson has expended 1.3 hours since receiving the supplemental responses.

### c. Reasonable Attorneys' Fee Award

The Court finds that: (1) counsel Lisieski reasonably expended 15.6 hours at a reasonable rate of $200.00 per hour, for a total of $3,120.00; and (2) counsel Christofferson reasonably expended 1.3 hours in this action at a reasonable rate of $375.00 per hour, for a total of $487.50. Accordingly, the Court finds that Plaintiffs are entitled to attorneys' fees in the amount of $3,607.50.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, Plaintiffs' motion to compel (ECF No. 39) is GRANTED. Accordingly, IT IS HEREBY ORDERED that:

1.  Defendants Wellpath, LLC, and California Forensic Medical Group, Inc., shall serve further responses and provide documents responsive to Plaintiffs' Requests for Production numbers 20 and 21, within **fourteen (14) days** of entry of this

order;

3.      Plaintiff's request for sanctions in the form of attorneys' fees is GRANTED IN
        PART; and

4.      Defendants Wellpath, LLC, California Forensic Medical Group, Inc., and counsel
        Bertling Law Group, shall, jointly and severally,[8] be obligated to pay $3,607.50 in
        attorneys' fees to Plaintiffs, to be produced to the offices of Wanger Jones Helsley
        PC, no later than **fourteen (14) days** from the date of this order.

IT IS SO ORDERED.

Dated:   __**July 30, 2021**__                    _____

                                                UNITED STATES MAGISTRATE JUDGE

---

[8]  If the Defendants or counsel disagree with this manner of imposing the award of attorneys' fees, they may file a request for clarification or alteration regarding who is responsible or required to pay the attorneys' fees within three (3) days of entry of this order.  However, such request shall not request alteration of the amount of fees awarded.