# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.M., et al., | Case No.  1:20-cv-00409-NONE-SAB |
| Plaintiffs, | ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS |
| v. | (ECF Nos. 44, 45, 48, 49) |
| COUNTY OF MERCED, et al., | |
| Defendants. | |

**I.**

**INTRODUCTION**

Currently before the Court is the Plaintiffs' motion for sanctions.  (ECF No. 45.)[1]  The Court previously found this matter suitable for decision without oral argument pursuant to Local Rule 230(g).  Having considered the moving papers, the Defendants' opposition, Plaintiffs' reply, the declarations and exhibits attached, as well as the Court's file, the Court issues the following order denying the Plaintiffs' motion for sanctions.

/ / /

/ / /

/ / /

---

[1]  All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1

## II.

## BACKGROUND

### A.      Factual Background and Allegations

This lawsuit arises from the death by suicide of Rene Snider ("Ms. Snider") in the Merced County Jail on March 23, 2019.  (Joint Statement Mot. Compel ("JS") at 5, ECF No. 40.)[2]  Ms. Snider, who had been out on bail for approximately two years while criminal charges remained pending, entered the Merced County Jail after being found incompetent to stand trial and remanded for restoration of competency.  (Id.)  Plaintiffs allege that Ms. Snider was at a significantly increased risk of suicide, due to her mental illness, prior history of suicide attempts, the abrupt cessation of her mental health medications, and the fact that the court itself found her to be a danger to herself and others in its decision to remand her into custody.  (Id.)  Defendants in this matter include Wellpath and California Forensic Medical Group, the third-party service providers who provide mental and medical health care services at the Merced County Jail; the County of Merced; and various employees and agents of each.  (Id.)

Plaintiffs allege that Defendants knew, or recklessly disregarded, the fact that Ms. Snider was at an increased risk of suicide and that Defendants did not adequately screen Ms. Snider for being a suicide risk, even though she advised them of prior suicide attempts during an initial screening.  (Id.)  Plaintiffs allege Defendants knew, or recklessly disregarded, the fact that Ms. Snider had been found incompetent and ordered into custody specifically because of the risks her mental health concerns posed; that Defendants knew Ms. Snider was taking mental health medications, but withdrew those medications upon her admission to the facility; and additionally, the Defendants failed to adequately monitor Ms. Snider once she was housed in the jail, thereby violating their own policies on the frequency of cell checks.  (Id. at 5-6.)  Ms. Snider died on March 23, 2019, her suicide having been discovered at approximately 6:00 p.m., after she had hanged herself from a bed sheet tied to a bunk bed ladder.  (JS at 6.)

The first amended complaint ("FAC") alleges both state and federal claims related to Ms.

---

[2]  The Court utilizes the background information from the joint statement filed in relation to the underlying motion to compel, which the Court previously adjudicated ordering Defendants to produce documents, and which is the order claimed to have been violated resulting in the instant motion for sanctions before the Court.

1  Snider's death in the custody of Defendants, both against the individual employees and officers,

2  and against the entity Defendants.  (Id.)  Plaintiffs are Ms. Snider's minor children, and her

3  mother and father, who bring claims both on their own behalf and on behalf of her estate.  (Id.)

4      Plaintiffs proffer the lawsuit involves substantial economic damages.  (Id.)  Specifically,

5  Ms. Snider, who was only 39 years old, was a member of the Pechanga Indian Tribe and

6  received substantial annual income through her membership in the tribe.  (Id.)  These payments,

7  which generally were between $200,000 and $300,000 per year, would have continued

8  throughout her life.  (Id.)  Plaintiffs additionally are seeking damages for pain, suffering, mental

9  distress, and the loss of both a daughter and a mother, as well as punitive damages.  (Id.)

10      **B.    Relevant Procedural Background**

11      Plaintiffs D.M., L.M., Denise Sawyer, and Doug Snider ("Plaintiffs"), filed this action on

12  March 19, 2020.  A first amended complaint was filed on April 13, 2020.  (ECF No. 11.)  The

13  action proceeds against Defendants the County of Merced, Wellpath, LLC ("Wellpath"),

14  California Forensic Medical Group Inc. ("CFMG"), Amanpreet Atwal, Alicia Dunwoody,

15  Gianfranco Burdi, Keriann Quinn-Fitzpatrick, Dylan Fulcher, Shawn Autrey, and Adriana Kifan.

16      The scheduling order was issued on September 29, 2020, setting among other deadlines, a

17  nonexpert discovery deadline of September 21, 2020.  (ECF No. 35.)

18      On July 30, 2021, the Court granted Plaintiffs' motion to compel, and ordered

19  Defendants' Wellpath and CFMG[3] to further produce documents responsive to Plaintiffs'

20  requests for production numbers 20 and 21, on or before August 13, 2021.  (ECF No. 44 at 25-

21  26.)  The Court also granted Plaintiffs' request for sanctions in the form of attorneys' fees.  (Id.

22  at 26. )

23      On August 18, 2021, Plaintiffs filed the motion for sanctions that is currently before the

24  Court.  (ECF No. 45.)  Plaintiffs seek sanctions for the alleged failure of Defendants to comply

25  with the Court's July 30, 2021 order requiring Defendants to produce documents by August 13,

26  2021.  (Id.)

27

28

[3] The motion to compel only pertained, and this motion for sanctions only pertains to Defendants Wellpath and CFMG.  Hereinafter the Court refers to Wellpath and CFMG generally as "Defendants" for purposes of this motion.

On August 30, 2021, the Court granted the parties' stipulated request to amend the scheduling order, and extended the discovery deadlines by approximately seven (7) months. (ECF No. 47.)  In the stipulated request, Plaintiffs' counsel proffered that the parties were still meeting and conferring on the document production that is the subject of this motion for sanctions, and proffered that the volume of the production was one reason for the need to extend the discovery deadlines.  (ECF No. 46 at 3.)

On September 1, 2021, counsel for Defendants filed a declaration in opposition to the motion for sanctions.  (ECF No. 48.)  On September 3, 2021, Plaintiffs filed a reply in support of the motion for sanctions.  (ECF No. 49.)  On September 7, 2021, the Court vacated the hearing on Plaintiff's motion, finding the matter suitable for decision without oral argument pursuant to Local Rule 230(g).  (ECF No. 50.)

**III.**

**LEGAL STANDARD**

"The discovery process in theory should be cooperative and largely unsupervised by the district court.  But when required disclosures aren't made or cooperation breaks down, Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosures or discovery."  Sali v. Corona Reg'l Med. Ctr., 884 F.3d 1218, 1219 (9th Cir. 2018).  "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if: "(i) a deponent fails to answer a question asked under Rule 30 or 31; (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4); (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents or fails to respond that inspection will be permitted -- or fails to permit inspection -- as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B).  The party opposing the discovery bears the burden of resisting disclosure.  Bryant v. Armstrong, 285 F.R.D. 596, 600 (S.D. Cal. 2012).

If the motion is granted or the disclosure or requested discovery is provided after the filing of the motion, the court must order the offending party "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless "(i) the movant filed

1   the motion before attempting in good faith to obtain the disclosure or discovery without court

2   action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified;

3   or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

4          Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that if a party fails to obey

5   an order to provide or permit discovery, the court may issue further just orders, which may

6   include: "(i) directing that the matters embraced in the order or other designated facts be taken as

7   established for purposes of the action, as the prevailing party claims; (ii) prohibiting the

8   disobedient party from supporting or opposing designated claims or defenses, or from

9   introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv)

10  staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in

11  whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating

12  as contempt of court the failure to obey any order except an order to submit to a physical or

13  mental examination." Fed. R. Civ. P. 37(b)(2)(A). "Instead of or in addition to the [other

14  sanctions outlined in the Rule,] the court must order the disobedient party, the attorney advising

15  that party, or both to pay the reasonable expenses, including attorney's fees, caused by the

16  failure, unless the failure was substantially justified or other circumstances make an award of

17  expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

18                                          **IV.**

19                                      **DISCUSSION**

20         Plaintiffs submit that despite the Court's July 30, 2021 order requiring Defendants to

21  produce documents responsive to request for production ("RFP") No. 20 and RFP No. 21 on or

22  before August 13, 2021, Defendants failed to complete production by the deadline. (Mot. 4.)

23         **A.      Plaintiffs' Moving Papers**

24         Plaintiffs proffer that as of the date of the filing of the motion, August 18, 2021,

25  Defendants had produced four batches of documents, each represented to be part of a "rolling

26  production." (Mot. 4.) When counsel conferred on August 12, 2021, Defendants had produced

27  three batches of discovery, and Defendants advised that at least two, and possibly three

28  additional batches would be forthcoming. (Id.) Defendants further advised that the three batches

                                            5

1   of ESI already produced were related to RFP No. 20, and none of the ESI related to RFP No. 21.

2   Following correspondence by Plaintiffs' counsel on August 17, 2021, Defendants advised

3   they would produce the final batch of documents on the morning of August 18, 2021.  (Decl.

4   Christopher Lisieski Supp. Mot. Sanctions ("Lisieski Decl.") ¶ 6, Ex. A, ECF Nos. 45-1, 45-2 at

5   1-5.)  While a production was received on August 18, 2021, the correspondence associated with

6   that production again identified it as a "rolling production."  (Lisieski Decl. ¶ 7, Ex. B, ECF No.

7   45-2 at 6-8.)  Plaintiffs state that Defendants' lack of communication left it unclear whether or

8   how much production remained outstanding.  (Mot. 4; Lisieski Decl. ¶ 7.)  Plaintiffs proffer

9   Defendants failed to advise Plaintiffs they would not meet the deadline for production; did not

10  receive an extension of the deadline from the Court; and it appears Defendants simply ignored

11  the Court's order.  (Mot. 4.)

12  Plaintiffs submit that given the Defendants are large corporations represented by

13  sophisticated counsel, the standard evidentiary sanctions such as a stay of proceedings or an

14  order excluding evidence will only reward Defendants.  Plaintiffs do not seek terminating

15  sanctions due to the preference of decisions on the merits, nor do they seek instruction sanctions,

16  as those would essentially equate to terminating sanctions.  (Mot. 4-5.)

17  In addition to failing to produce, Plaintiffs argue it seems Defendants are now trying to

18  bury and overwhelm Plaintiffs with an excessively large document production.  Prior to the

19  motion to compel, Defendants certified there were 23 documents responsive to RFP No. 20, and

20  2 documents responsive to RFP No. 21.  Now, Defendants have produced approximately 60,000

21  documents, totaling 118,000 pages, it is unclear to Plaintiffs how many more documents are

22  coming, and Plaintiffs are left to assume the documents are responsive only to RFP No. 20, as

23  Plaintiffs have received no confirmation any document production has begun for RFP No. 21.

24  Plaintiffs argue the production demonstrates either: (1) Defendants were intentionally and

25  knowingly dishonest previously; or (2) Defendants are now producing exceedingly large

26  quantities of unresponsive documents.  (Mot. 5.)  Plaintiffs believe the truth lies in the middle,

27  and that the Defendants are trying to bury relevant documents in a mass of irrelevant documents.

28  Plaintiffs also complain the documents are unsorted, unlabeled, and not Bates-stamped, thus

violating Federal Rule of Civil Procedure 34[4].  (Mot. 5-6.)  Plaintiffs proffer they will meet and confer with Defendants on these additional issues, but "none of this indicates Defendants are proceeding in good faith."  (Mot. 6.)

Plaintiffs proffer the only appropriate remedy is additional monetary sanctions.  (Mot. 5.) Plaintiffs initially sought the imposition of contempt sanctions in the amount of $10,000 per day, increasing by such amount each day, and imposed retroactively beginning on the first date of non-compliance unless Defendants demonstrated substantial justification.  However, Plaintiffs have subsequently withdrawn the request in their reply brief.  (Pls.' Reply Supp. Mot. Sanctions ("Reply"), ECF No. 49.)   Plaintiffs move for: (1) attorneys' fees related with the costs of bringing the instant motion; and (2) sanctions for the time they will spend reviewing Defendants' production to ensure it complies with the Court's order and Rule 34.  (Mot. 12.)

Plaintiffs argue the previous potential intentional withholding, or current potential data dump, are both unacceptable, citing Lexington Luminance LLC v. Feit Elec. Co., Inc., No. 18-10513-PSG (KSx), 2020 WL 10052403, at *8 (C.D. Cal. July 8, 2020); Maki v. Bremerton Sch. Dist., No. 19-cv-5901-RJB, 2020 WL 2494676, at *3 (W.D. Wash. May 14, 2020); Wilcox v. Changala, No. CV-10-3048-RHW, 2012 WL 12844083, at *3 (E.D. Wash. Jan. 18, 2012).  (Mot. 9.)  Plaintiffs further argue data dumping and manner of production is not acceptable under Rule 34, citing Clientron Corp. v. Devon IT, Inc., 310 F.R.D. 262, 266 (E.D. Pa. 2015); Pass & Seymour, Inc. v. Hubbell Inc., 255 F.R.D. 331, 334 (N.D.N.Y. 2008); Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc., 246 F.R.D. 522, 528 (S.D. W.Va. 2007).  (Mot. 10.) Plaintiffs submit that where a party has failed to adequately and timely respond to a document production request, it is appropriate for a court to award monetary sanctions for time spent reviewing documents to ensure they are in compliance with the Court's order.  See, e.g., DCD Partners, LLC v. Transamerica Life Ins. Co., No. 2:15-cv-03238-CAS (GJSx), 2018 WL 6252450, at *2–3 (C.D. Cal. June 13, 2018); Green v. Baca, 225 F.R.D. 612, 615 (C.D. Cal. 2005) (deducting time spent reviewing discovery responses that had to be reviewed regardless as

---

[4]  The Rule provides that a "party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  Fed. R. Civ. P. 34 (b)(2)(E)(i).

part of the discovery in the case).  (Mot. 13.)

Plaintiffs submit that monetary sanctions are necessary given the extreme shift in scale of document production, from Defendants representing there were only 25 responsive documents to now representing that there are 60,000.

### B.   Defendants' Declaration in Opposition

Counsel for Defendants ("Defense Counsel") submitted a declaration in response to the Plaintiffs' motion, but no brief or memorandum of legal arguments and authorities.  Defense Counsel proffers that to comply with Plaintiffs' time demands, the production was already underway by the time the motion to compel was heard on July 28, 2021, and continued following the Court's July 30, 2021 order that allowed for 14 days to comply with the email document production as to RFP Nos. 20 and 21.  (Decl. Peter G. Bertling ("Bertling Decl.") ¶ 2, ECF No. 48.)  Defense Counsel states Plaintiffs and his office agreed to produce this documentation on a rolling basis given the volume of production and the time constraints, which resulted in four separate batches of production over the course of the two weeks allotted by the Court.[5]  (Id. at ¶ 3. )  The first three productions were made on August 4, 2021, August 5, 2021, and August 10, 2021.  (Id.)

As to the volume and manner of production, Defense Counsel proffers the approximately 60,000 emails and attachments were produced as they were maintained in the Defendants' email system and were grouped by mailbox owners and custodians.  (Id. at ¶ 4.)  The documents were not individually Bates-stamped given the desire to produce native documents as quickly as possible, and Plaintiffs and Defendants have subsequently agreed to a method for reorganizing the documents to be individually Bates-stamped on or before September 28, 2021.  (Id.)

Defendants emphasize to the Court that the motion for sanctions is in reality only being brought because the fourth batch was served two business days late, and while Defendants admit this was outside the timeframe for production, the fourth production only consisted of thirteen (13) documents out of the 60,000 total.  (Id. at ¶ 5.)  As to Plaintiffs' claim that the production is

---

[5]  While phrased here as produced over the two weeks allotted, as stated immediately after in the declaration, the fourth batch was not produced in the two week time period.

too large and a data dump, Defense Counsel argues that Plaintiffs fail to take responsibility for the overbreadth of the requests in the first instance, and had they issued more specifically tailored requests, the production would not have been as large.  (Id. at ¶ 6.)  Defense Counsel also submits that under no circumstances were the documents "dumped" to hide or otherwise subterfuge the responding party's production but were rather produced in the manner retained, and if there are documents Plaintiffs deem more germane to their case than others, the responding party did not attempt to sort them in that manner.  (Id. at ¶ 7.)

Defense Counsel verified the production was complete on August 18, 2021, and in conjunction with the re-labeling and reorganization scheduled for September 28, 2021, Plaintiffs "would have been alerted to the documentation responsive to Request 20 and Request 21 separately[,] [h]owever, the Request 21 documents were produced in a consolidated manner as originating from the mailbox of" one individual.  (Id. at ¶ 8.)  Defense Counsel argues that Plaintiffs, at no time prior to the filing of their motion, met and conferred with Defense Counsel regarding the production status, an additional request for sanctions, or anything related to the production.  (Id. at ¶ 9.)  What Plaintiffs were advised of was, in the context of a discovery and scheduling conference call, that one (or possibly two), more batches of documents would be forthcoming.  (Id.)  At that time, Plaintiffs did not advise of this motion.  (Id.)  Finally, Defense Counsel emphasizes that his office does not intentionally violate Court orders, "[s]imply put, we did the best we could under extraordinary circumstances," and since all discovery deadlines have now been continued pursuant to the parties' stipulation, there is no legitimate prejudice to any party in the delay in producing the 13 emails.  (Id. at ¶ 10.)

**C.     Plaintiffs' Reply Briefing**

Plaintiffs emphasize that Defendants do not dispute a failure to comply with the Court's order of production by a date certain, and do not dispute what was produced did not comply with Rule 34.  Plaintiffs argue Defendants did not even provide the most basic level of organization to the produced files as they were not Bates-stamped, were not provided as kept in the normal course of business, and were not labelled or organized in any way.  Plaintiffs are unable to tell which documents are responsive to which RFPs, which Defendants "suggest Plaintiffs should

1  wait until the end of September to discover."  (Reply 2.)

2        Plaintiffs argue that their admitted violation should not be taken lightly given the

3  sophistication of Defendants and their counsel, as they knew or should have known that if more

4  time was needed to comply, the proper procedure was to request an extension from the Court.

5  Plaintiffs state Defendants are not acting in good faith, should not be rewarded for slow-playing

6  production, and Defendants have now switch tactics producing 118,000 pages – thus either

7  Defendants' certifications in June were not truthful, or they are simply trying a different tactic –

8  and the burden will ultimately fall on Plaintiffs to sort out the mess created by Defendants.

9  Plaintiffs implead the Court at least make Defendants bear the cost of Plaintiffs' enforcement.

10  (Reply 2.)   Specifically as to Defense Counsel's declaration, Plaintiffs proffer this "sole

11  response" to the motion is from an attorney who has had no active role in this case to date and

12  has never communicated with Plaintiffs' counsel about this case, seems to imply that because the

13  admitted failure was only a matter of days, it is excusable.  (Suppl. Decl. Christopher A. Lisieski

14  Supp. Reply ("Lisieski Reply Decl.") ¶ 2, ECF No. 49-1.)

15        Plaintiffs direct the Court to consider that in relation to the original motion to compel,

16  Defendants represented that the production in fact was going to be completed by July 30, 2021,[6]

17  and this previous representation was apparently also untrue, and nonetheless, the Court gave

18  Defendants an additional two weeks following the July 30, 2021 order to produce responsive

19  documents.

20        As for Defendants attempt to blame Plaintiffs for failing to advise them that the motion

21  for sanctions would be filed, Plaintiffs did not assume that Defendants would fail to comply with

22  the Court's deadline; Defendants never advised Plaintiffs they were unable to comply;

23  Defendants never inquired whether Plaintiffs would oppose a request from Defendants to extend

24  the deadline; and had Defendants asked, Plaintiffs state they would not have opposed the request,

25  as Plaintiffs have yet to refuse *any* reasonable request for extension in this case.  (Lisieski Reply

26  [6]  In the July 21, 2021 filing, Defendants had proffered that the only remaining search to be completed was that of
27  custodial emails with agreed upon search terms that were received in final form on July 1, 2021.  (ECF No. 40 at
   16.)  Defendants stated that they were diligently conducting such search among all possible custodians, and that the
28  production would be given to Defendants' counsel by July 28, 2021, and counsel would review and complete the
   production by July 30, 2021.  (Id.)

1   Decl. ¶ 3.)   As for Defendants' argument that Plaintiffs will suffer no prejudice because the

2   discovery deadlines have been extended by stipulation, Plaintiffs argue they did not stipulate to

3   modify the scheduling order because they wanted to delay this matter; they were forced to extend

4   the deadlines because of Defendants' failure to comply with production request until a motion to

5   compel was granted.   Further, Plaintiffs again emphasize that Defendants have still not complied

6   with the letter or spirit of Rule 34, and the data dump forced Plaintiffs to again meet and confer

7   and yet again give Defendants additional time to comply with their Rule 34 obligations.   (Reply

8   4.)

9        Plaintiffs contend Defendants misstate Plaintiffs' concern by asserting that Plaintiffs are

10  simply complaining the production is "too large."   Plaintiffs clarify they have no inherent

11  objection to the size of production, but are actually concerned about the *change* in size and scale

12  of the production, given the exponential growth between late June and early August.   Plaintiffs

13  submit that either the previous certification was dishonest, or Defendants are now attempting to

14  bury relevant documents.   (Reply 4-5.)   Plaintiffs state Defendants attempt to blame Plaintiffs for

15  crafting the search terms, but Plaintiffs only crafted proposed search terms after Defendants told

16  Plaintiffs they could not craft them themselves.   (Lisieski Reply Decl., Exs. A, B.)   Plaintiffs

17  submit they tried discussing electronic search terms with Defendants numerous times over the

18  past several months and were met with silence – specifically, Plaintiffs asked numerous times to

19  identify what technology they use, how searches can be run on that technology, and how files are

20  stored, but Plaintiffs received no meaningful response.   (Lisieski Reply Decl. ¶¶ 9, Ex. A-E.)

21  Plaintiffs proffer that Defendants even requested Plaintiffs provide a list of specific questions for

22  Defendants'' IT department, which Plaintiffs did, which again went unanswered, and Plaintiffs

23  contend Defendants have not sought to facilitate e-discovery at any point.   (Reply 5.)

24        Plaintiffs have withdrawn their request for contempt sanctions proffering that because

25  Defendants have complied, albeit tardily, the civil contempt sanction is meant be more

26  compliance-driven whereas now it would be more punitive, and would now sound more in

27  criminal contempt.   (Reply 5-6.)   While Plaintiffs withdraw their request for contempt sanctions,

28  Plaintiffs do request the Court issue a specific warning to Defendants that further gamesmanship

with document production may result in evidentiary sanctions, up to and including judgment being entered against them.  (Reply 6.)  Further, Plaintiffs still maintain their request for monetary sanctions to compensate for the additional efforts Plaintiffs have expended and will expend ensuring Defendants'' compliance with the discovery rules – including costs of this motion – and future costs ensuring compliance, including: (1) the time spent meeting-and-conferring on Defendants' failure to Bates-stamp or organize the production; (2) the time spent reviewing the actual production to determine whether the documents produced are responsive to the Requests; and (3) the time spent preparing for and deposing witnesses about Defendants' document productions on RFP Nos. 20 and 21.  Plaintiffs additionally request that the depositions related to Defendants' document productions not be counted toward the total number of depositions Plaintiffs are permitted in this case.  If granted, Plaintiffs will submit time records via noticed motion, and clarify that this will not include time that Plaintiffs would have spent on the case regardless of the Defendants' actions, and will segregate their billing when submitted.

### D.      Plaintiffs' Motion for Sanctions Shall be Denied

The Court finds the totality of the facts and records before it make the imposition of further sanctions on Defendants to be unwarranted at this time and Plaintiffs' motion shall be denied.  The Court further finds that the compensation of expenses, even limited to those for bringing the instant motion, would be inappropriate as the Court finds any "failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

The facts and findings that warrant this finding, as discussed in greater detail below, include: that Defendants' "rolling production" consisted of three separate batches provided prior to the August 13, 2021 deadline, consisting of tens of thousands of pages of documents; that the final fourth batch was provided on August 18, 2021, consisting of thirteen (13) total documents; the course and tenor of the meet and confer that did occur consisted of adequate notice of the status of the production from Defendants; there was a lack of sufficient directed meet and confer regarding the final batch in relation to Plaintiffs' intention to file a motion for sanctions, and a failure to directly respond to Defendants' notifying them that the rolling production was

1    unacceptable in that Plaintiffs would be filing prior to the filing of the motion; and a failure to

2    meet and confer to attempt to resolve the issues underlying the motion prior to filing.  Further,

3    Plaintiffs have insufficiently demonstrated at this juncture and on this record, that an award of

4    *future* expenses for determining whether the electronic production complies with the substance

5    of the requests for production, particularly given the only clear failure of Defendants

6    demonstrated thus far is the late production of thirteen (13) documents, following a somewhat

7    vague notice from Defendants that such rolling production was forthcoming sometime after

8    conferring on August 12, 2021.

9         1.    Insufficient Meet and Confer on the Subject of Motion for Sanctions

10        Although not dispositive to Plaintiffs' issues raised in the motion, the Court finds

11   Plaintiffs did not adequately meet and confer prior to the filing of the instant motion and instead

12   attempted to utilize the Local Rule's exception to a joint statement to propel into a motion for

13   sanctions when the production was in fact apparently completed by the time the motion for

14   sanctions was filed.  While withdrawn in reply briefing, Plaintiffs' request for contempt

15   sanctions appeared excessive in relation to the issues of compliance raised, and specifically the

16   fact that the August 18, 2021 production was in fact the final production, and only consisted of

17   the final thirteen (13) documents, produced two business days late.  While Plaintiffs proffered

18   they were not completely aware of whether the final production was in fact final at the time of

19   filing due to Defendants' continued reference to the term "rolling production," such facts could

20   have been resolved through meeting and conferring on the issues that were raised in the motion

21   for sanctions, prior to filing.

22        Plaintiffs argue in reply briefing that as for the failure of Plaintiffs to advise Defendants

23   that the motion for sanctions would be filed, Plaintiffs argue they did not assume that Defendants

24   would fail to comply with the Court's deadline; that Defendants never advised Plaintiffs they

25   were unable to comply; that Defendants never inquired whether Plaintiffs would oppose a

26   request from Defendants to extend the deadline; and that had Defendants asked, Plaintiffs would

27   not have opposed the request.  (Lisieski Reply Decl. ¶ 3.)  While Defendants did not specifically

28   cite to Local Rule 251, Defendants do contend in opposition that "[a]t no time prior to the filing

of this motion did plaintiffs meet and confer with my office regarding the production status, an additional request for sanctions or anything related to this production," that "Plaintiffs were advised in the context of a discovery and scheduling conference call that one (possibly two) more batches of documents would be forthcoming," and that "Plaintiffs did not advise of this motion at that time." (Bertling Decl. ¶ 9.)

### a.   Meet and Confer Requirements under the Local Rules

Plaintiffs initially filed this motion, proffering in a footnote that under Local Rule 251(e), that because the only relief sought by the motion was sanctions, no Joint Statement was required. (ECF No. 45 at 3 n.1.)  Plaintiffs are correct that no Joint Statement is required – however, the Court's view of the Local Rules indicates that while the requirement for a Joint Statement may be excused, the requirement to meet and confer specifically on the subject of the motion, may not.

Plaintiffs' motion was brought pursuant to Federal Rule of Civil Procedure 37.  (ECF No. 45 at 3.)  Local Rule 251(b) is entitled: "**Requirement of Conferring.**"  L.R. 251(b) (emphasis in original).  The rule dictates that except as provided by the Local Rule's express exceptions, any motion brought pursuant to Fed. R. Civ. P. 26 through 37, and 45, "shall not be heard unless (1) the parties have conferred and attempted to resolve their differences, **and** (2) the parties have set forth their differences and the bases therefor in a Joint Statement re Discovery Disagreement. Counsel for all interested parties shall confer in advance of the filing of the motion or in advance of the hearing of the motion in a good faith effort to resolve the differences that are the subject of the motion." L.R. 251(b) (emphasis added).  The Local Rule then requires, if the moving party is still dissatisfied after the conference, to draft a Joint Statement.  L.R. 251(c).  The exception for a motion only seeking sanctions falls under the heading: "**Exceptions from Required Joint Statement re Discovery Disagreement.**"  L.R. 251(e) (emphasis in original).  The section contains no mention of the requirement to meet and confer.  It states "[t]he foregoing requirement for a Joint Statement re Discovery Disagreement shall not apply . . . when the only relief sought by the motion is the imposition of sanctions," and allows for the filing of the motion on fourteen (14) days' notice.  L.R. 251(e).

Based on the text of the Local Rule, even though the motion only sought sanctions, the parties were still required to meet and confer to resolve the differences that are the subject of this motion. Acosta v. Gill, No. 117CV00262LJOSKO, 2018 WL 1806623, at *2 (E.D. Cal. Apr. 17, 2018) ("Plaintiff is not, however, absolved from Local Rule 251's meet-and-confer requirement. When there has been a complete and total failure to respond to a discovery request, as Plaintiff indicates is the case here, Local Rule 251 excuses the aggrieved party only from submitting a joint statement regarding the discovery disagreement; *it does not excuse the aggrieved party from meeting and conferring about the disagreement*.") (emphasis in original); Causey v. Portfolio Acquisitions, LLC, No. 2:10-CV-2781-KJM-EFB, 2013 WL 5348101, at *3 (E.D. Cal. Sept. 23, 2013) (stating Local Rule 251 exempts parties from filing a joint statement when the only relief sought by the motion is the imposition of sanctions, but does not exempt the parties from meeting and conferring); Elhouty v. Lincoln Benefit Life Co., No. 114CV00676LJOJLT, 2015 WL 13659308, at *2 n.2 (E.D. Cal. May 7, 2015) ("[T]he only relief Defendant sought was the evidentiary sanction . . . [t]hus, the Court does not find that a joint statement was required . . . [however] [t]he Court *does* find Defendant should have met and conferred with Plaintiff *before* filing the motion . . . [h]owever, given Plaintiff failed to oppose the motion—which would have been the proper vehicle for raising this objection—the Court finds Plaintiff has waived this point."), aff'd, 886 F.3d 752 (9th Cir. 2018); Martin v. Sysco Corp., No. 116CV00990DADSAB, 2017 WL 11493633, at *1 (E.D. Cal. Nov. 3, 2017) (The Court recognizes that Local Rule 251(e) provides for an exception to the required joint statement for motions to compel where there has been a complete and total failure to respond to a discovery request or order. However, here, the parties shall file a joint statement for both motions to compel . . . Pursuant to Rule 251 . . . prior to having a discovery motion heard, the parties are required to meet and confer in an attempt to resolve their differences."); but see Nordyke v. Summit Receivables, No. 2:17-CV-01705-WBS-AC, 2018 WL 558797, at *2 (E.D. Cal. Jan. 25, 2018) ("In light of this failure, plaintiff is excused from the meet-and-confer **and** Joint Statement requirements that otherwise apply to a motion to compel.") (emphasis added); Brownfield v. Flowers Baking Co. of California, LLC, No. 2:15-CV-2034 JAM AC, 2016 WL 6988679, at *1 (E.D. Cal. Nov. 28,

2016) ("The court agrees with defendant that this matter is exempt from the Meet and Confer **and** Joint Statement requirements of Local Rule 251.") (emphasis added).[7]

**b.    Course and Tenor of Meet and Confer does not Justify Sanctions**

It is likely that if Plaintiffs had expressly discussed the intention to file a motion to compel at the August 12, 2021 discovery meeting when Defendants informed Plaintiffs that other batches would be forthcoming, or if Plaintiffs expressed their position that a rolling production as voluminous as this one at 60,000 documents was unacceptable even if largely began prior to the August 13, 2021 deadline, and to be finished following the August 13, 2021 deadline with the filing of 13 additional documents, Defendants *would* have obtained an express agreement from Plaintiffs to extend the deadline, and/or filed a request or stipulated request with the Court to extend the deadline along with the stipulation to continue the discovery deadlines.  Plaintiffs concede that a reasonable request would not have been opposed.  While the Court does not deny solely for a lack of meet and confer, the lack of notice during the discovery conferences that were held, the lack of discussion of potential sanctions when Defendants did inform Plaintiffs that further productions were forthcoming with no date certain discussed, and lack of specific discussion of the forthcoming motion before or after the final production on August 18, 2021, the date of the filing of the motion and final production, weighs in favor of the Court's determination that the requested sanctions and monetary reimbursement are not warranted.

While the communications prior to August 13, 2021 were concededly vague, the course and tenor of the rolling production and communications reflect nearly an implied agreement, through acquiescence or failure to discuss a potential motion for sanctions, to allow for the last rolling production or productions to likely occur after the deadline.  This is particularly true given Plaintiffs' contention that more than one batch was expected to be produced after the August 12, 2021 communications.

One day prior to the deadline for production on August 12, 2021, the parties met and conferred and Plaintiffs inquired about the status of the production and how many batches could

---

[7]  Plaintiffs are, at least in reply briefing, seeking that depositions relating to determining compliance with the discovery requests to not count toward the number of maximum depositions allowed.  (Reply 6-7.)  The Court notes that Local Rule 251(b) expressly requires conferring for any motion to exceed discovery limitations.

1   be expected.  According to Plaintiffs, Defendants informed Plaintiffs that at least two, and

2   possibly three more batches would be forthcoming.  Thus given Plaintiffs' understanding of the

3   "rolling production" as described in the moving papers, it appears Plaintiffs understood that to

4   mean at least one of these batches would be provided after the deadline – but did not inform

5   Defendants at that time that if any of these rolling productions were in fact not produced until

6   after August 13, 2021, such rolling production would be unacceptable and that Plaintiffs would

7   then be filing a motion for sanctions, including contempt sanctions.  (Mot. 4.)  Plaintiffs' counsel

8   did advise Defendants on August 17, 2021, that they would be filing a motion for sanctions

9   following the parties' discussion on Thursday August 12, 2021, and following the expiration of

10  the deadline on August 13, 2021, and no further batches were received.  (ECF No. 45-2 at 4.)

11  However, Plaintiffs did in fact then receive the final batch on August 18, 2021, prior to the filing

12  of the motion for sanctions.  (Mot. 4.)  Plaintiffs represented that as of the filing of the motion on

13  August 18, 2021, they were unaware whether the rolling production was still ongoing and

14  whether more batches were coming because of the identification of the final production as

15  "rolling," however, Plaintiffs were advised on August 17, 2021, that the batch to be provided on

16  August 18, 2021, was the final batch.  (Mot. 4.)

17      Specifically, in the email sent on the evening of August 17, 2021, Defendants' counsel

18  expressly stated "[t]he last production batch is going out tomorrow."  (ECF No. 45-2 at 3.)

19  Defendants' counsel's email further stated "It is regrettable that you did not raise the issue of

20  moving for further judicial assistance when we spoke last Thursday.  I plainly advised what the

21  situation was, and have been candid with you throughout this process and it is unfortunate you

22  have not done the same."  (Id.)  Plaintiffs' counsel responded that "[y]ou did not advise us on

23  Thursday that you would miss the Court's deadline; you did not tell us when we would have the

24  productions; and you did not ask us if we would oppose you seeking an extension from the

25  Court.  All you told us was that there would be two to three more batches coming.  I assumed

26  you would comply with the Court's order.  We have been exceedingly patient with out – with

27  both sets of Defendants – throughout the course of this case out of professional courtesy, and

28  have yet to refuse any reasonable requests for more time.  But it is incumbent on you to tell us if

1  you need more time, and not wait until the deadline has passed."  (ECF No. 45-2 at 2-3.)

2  Defendants' counsel responded that she disagreed with these representations and duty of

3  production as outlined by Plaintiffs' counsel.  (ECF No. 45-2 at 2.)

4         As for the organization or manner of production under Rule 34, Plaintiffs argue they bear

5  the costs of meeting and conferring regarding the organization, and again have to grant an

6  extension of time to comply with their Rule 34 obligations.  (Reply 4.)  It does not appear

7  Plaintiffs informed Defendants of their issues with the manner of production and compliance

8  with Rule 34, until after the motion was filed and final batch was received, as the moving papers

9  indicate that Plaintiffs *would be* meeting and conferring with the Defendants on such issues.

10 (Mot. 6.)  Through meet and confer following the filing of the motion, Defendants agreed to

11 Bates-stamp the documents by September 28, 2021.  Thus, it is not clear whether these issues

12 additionally could have been resolved or clarified without then need for including in the motion

13 if the Plaintiffs had sufficiently and specifically met and conferred on the subjects of the motion

14 prior to filing.

15        The Court does find it concerning that the Defendants previously represented to the Court

16 prior to adjudication of the motion to compel that the production of emails would be completed

17 by July 30, 2021.  (ECF No. 40 at 16.)  Defendants declare that "the production was already

18 underway by the time the motion to compel was heard on July 28, 2021, and that the parties

19 agreed to a rolling production given the volume and time constraints (Bertling Decl. ¶¶ 2-3).

20 Significantly, the rolling production of approximately 60,000 documents was began only three

21 business days after the Court's order compelling production, with the first rolling production

22 occurring on August 4, 2021.  (Bertling Decl. ¶ 4.)

23        Thus, for the reasons discussed above concerning the course of communication regarding

24 the rolling production, the lack of meet and confer on the subject of the motion for sanctions, and

25 substantial compliance shown on the current record, all weigh toward denying the motion for

26 sanctions, and denying an award of the payment of expenses for bring the motion, as any failure

27 was substantially justified or other circumstances make an award unjust.  Fed. R. Civ. P.

28 37(b)(2)(C).

2.    Insufficient Record of Deficiencies in Electronic Production to Justify Sanctions at this Time

The Court now turns to a more specific discussion of the insufficient record concerning the manner of electronic production here, as well as a review of the caselaw cited by Plaintiffs in support of their motion.  The cases cited by Plaintiffs in support of their arguments that there was a data dump or violation of Fed. R. Civ. P. 34, or both, involved more extreme circumstances, and comparably much greater fault by the responding party than demonstrated here.

Plaintiff cites Lexington for support that Defendants have either intentionally withheld documents previously or are now performing a document dump.  Therein, it was specifically alleged that the responding party had "produced thousands of pages of non-responsive documents, numerous documents that [were] unreadable, and [alleged] that the documents [had] not been produced as kept in the ordinary course of business because the documents [were] shuffled into no discernible order."  Lexington Luminance, 2020 WL 10052403, at *7 ("As examples of the disorganized nature of the production, Lexington notes that '[m]arketing materials are intermixed with emails, which are intermixed with unrelated spreadsheets, which are, in turn mixed with unreadable junk files in .tmp formats.' ").  The court ruled that "[o]n the record presented here, there appears to be no organization of the Feit documents sufficient to indicate how those documents were maintained in the ordinary course of business," that "[o]n that basis, Feit's production [did] not comply with the requirements of Rule 34(b)(2)(E)(i)," and ordered Feit to label its previous document production and any future productions to correspond with the specific request to which the documents are responsive.  Id. at *8.  The Court further ruled that "[t]o the extent Feit contends that the unreadable ".dat" and ".tmp" files are indeed responsive to Lexington's requests, Feit must re-produce those documents in a readable format and identify to which document requests the documents are responsive."  Id. at *8.  The Court also awarded attorneys' fees for the costs of bringing the motion, however, the responding party was also compelled to complete its incomplete production, including to serve supplemental responses to "all fifty" of the RFPs with clarified objections and statements of whether documents were in fact withheld due to such objections, as well as to supplement requests for

1   interrogatories that were deficient.  Id. at *12.

2       Plaintiffs cite Maki for support that Rule 34 was violated and that there was a document

3   dump.  (Mot. 9.)   In Maki, plaintiff demonstrated in moving to compel production in the first

4   instance, that at the time of filing the motion, following three extensions, the responses were 10

5   days overdue past the extended deadline; that when the responding party filed its opposition, the

6   responding party had still not completed its response though had partially produced various

7   emails; and the Court was "troubled by the apparently missing materials in BSD's partial

8   production of email documents" as "Plaintiff indicate[d] that BSD's allegedly partial production

9   of thousands of unorganized emails [was] non-responsive and [did] not even include emails from

10  April 2017 . . . [and Plaintiff alleged the production of] 10,000 pages of emails on the eve of this

11  motion is either not responsive at all or a blatant attempt to bury relevant evidence.' "  Maki.,

12  2020 WL 2494676, at *3.  The court ultimately found that "[t]o the extent the[] thousands of

13  emails have no connection to GC and have not been organized or kept as they are in the usual

14  course of business, BSD's response [was] inadequate," and that the production should be tailored

15  to the requests, given this was not how they were kept in the normal course of business.  Id.  The

16  court granted the motion to compel, and granted leave to submit billing records for reasonable

17  attorneys' fees, only for the costs of the motion to compel further and appropriate production.

18  2020 WL 2494676, at *5.

19      Plaintiffs cite Wilcox for the statement that "[r]esponding parties are not permitted to

20  mingle responsive documents with large numbers of unresponsive documents for the purpose of

21  overwhelming the opposing party."  Wilcox, 2012 WL 12844083, at *3.  However, the Wilcox

22  court continued in the same paragraph stating "[w]hen, however, broad discovery requests lead

23  to relevant documents being mixed in with seemingly irrelevant documents, the fault lies just as

24  much with the party who made the request as with the party who produced documents in

25  response," that the "requests for production simply mirror interrogatories that are exceedingly

26  broad," and that there was "no quantitative evidence before the Court that the Plaintiffs [were]

27  obfuscating relevant discovery."  Wilcox, 2012 WL 12844083, at *3.  Further, the Wilcox court

28  then stated, "the responses, which indicate by Bates number the specific documents answering

1   each request, are sufficient." Id.

2       Plaintiffs cite Clientron for the proposition that a data dump is "not accepted in normal

3   discovery practice." Clientron, 310 F.R.D. at 266.  There, the responding party "admit[ted] that

4   it basically conducted a 'data dump' by making available to Clientron 93 boxes of irrelevant

5   documents, and did not at all detail the documents it produced into topics, categories, or other

6   subjects, which is not accepted in normal discovery practice by a party producing documents in

7   commercial litigation."   Id.   The court further found that the responding party did "not

8   adequately detail, in its responses to [the] motion, any appropriate explanation for Clientron's

9   demonstration that Devon IT's discovery conduct, particularly of the chairman of its board of

10  directors, Dr. Bennett, was deficient." Id.

11      Plaintiffs cite Pass & Seymour for the proposition that "[t]he provision authorizing

12  production in accordance with th[e] second option [ to produce as kept in normal course of

13  business] was born out of the disfavor shown by courts to the dumping of massive quantities of

14  documents, with no indexing or readily apparent organization, in response to a document request

15  from an adversary."   Pass & Seymour, 255 F.R.D. at 334 ("the underlying assumption [in

16  permitting the alternative of producing documents as they are maintained] was that production of

17  records as kept in the usual course of business ordinarily will make their significance pellucid.

18  That is the overarching purpose of the rule.").  The court also stated the "responding party clearly

19  controls the manner in which production will occur, and specifically which of the two prescribed

20  methods of production will be employed," but the "party selecting the alternative method of

21  production bears the burden of demonstrating that the documents made available were in fact

22  produced consistent with that mandate . . . [and] must do more than merely represent to the court

23  and the requesting party that the documents have been produced as they are maintained." Id.

24  (citations omitted).  The court stated the responding party did not meet the burden because they

25  "only an attorney's statement to the effect that the documents produced have been assembled as

26  they have been maintained in the usual course of the company's business, without further

27  elaboration," and "[b]efore [the] motion was filed . . . provided literally no additional

28  information regarding its search for the documents, including where the documents produced

were maintained, whether they came from a single source or file or from multiple points of origin, the identity of the record custodians, and the manner in which they were organized.  Id. The court went on to conclude that while "[t]o its credit, since the filing of the motion P & S has now identified, by Bates number ranges, the custodians of the respective records produced," :"n]o further information is provided, however, and many of the individuals identified are not known to Hubbell [and] even with the addition of this information P & S has fallen far short of satisfying its burden of demonstrating that the requirements of Rule 34(b)(2) have been met."  Id.

Here, the Defendants maintain that the documents *were* produced as kept in the normal course of business, as separated by the email custodians, and most significant, whether or not there was an actual violation of Rule 34, Defendants have already agreed to reorganize the documents in some fashion and add Bates Stamps – something that Defendants may have agreed to without the need for motion work if there had been sufficient meet and confer between the parties.

The following excerpt from Pass and Seymour demonstrates the more extreme circumstances of the responding party's failure therein:

> P & S protests that acceptance of Hubbell's argument in essence effectively eliminates the option of producing documents as they are ordinarily maintained despite the fact that this method is explicitly permitted by Rule 34(b).  This not the case.  I fundamentally agree that a party responding to a document discovery request may, at its option, make production of the documents as they are ordinarily maintained.  The present controversy, while recognizing this alternative method, centers upon what is meant by the portion of the rule permitting production of documents "as they are ordinarily maintained."  As its plain language reflects, the rule contemplates that a party selecting this option disclose information to the requesting party regarding how the documents are organized in the party's ordinary course of business.
>
> The facts of this case provide ample illustration of why plaintiff's production does not comply with the requirement.  As has previously been noted, the more than 400,000 documents produced by P & S were placed in 220 unlabel[]ed files and produced in that format, initially without explanation.  If P & S could sustain its burden of showing that in fact the documents produced are maintained in that same fashion—that is, contained within the same 220 unlabel[]ed folders—either digitally or in hard copy, then it clearly would have met the requirement of production of the documents as they are ordinarily maintained in the course of its

> business.  The court doubts, however, that this is the case, and P &
> S has not argued otherwise.  P & S has therefore failed to fulfill its
> obligation to produce the documents as they are maintained in the
> ordinary course of its business.

255 F.R.D. at 335 ("The production by P & S of 405,367 pages of documents devoid of any index or table to help illuminate the organizational regime utilized by P & S falls short of meeting the obligations imposed under Rule 34(b)(2).").

Plaintiffs cite <u>Frontier-Kemper</u>, however, therein, the responding party "merely produced a stack of documents to Elk Run." <u>Frontier-Kemper</u>, 246 F.R.D. at 527.

In support of the argument that they should be compensated for time ensuring the document production is in fact responsive to the Court's order and Rule 34, Plaintiffs cite <u>DCD Partners</u>.  Therein, the court found the responding party had "discarded custodian files despite the imposition of a litigation hold," and the "production was still not compete for a variety of reasons, principally including defendant's delay, obstruction, and mistakes."  <u>DCD Partners</u>, 2018 WL 6252450, at *1–2 (internal quotation marks omitted).

Plaintiffs cite <u>Green v Baca</u>, however, therein, the court found "plaintiff's efforts to obtain discovery . . .  were unduly complicated and extraordinarily delayed by the failure of the County and/or its counsel to investigate promptly and effectively the records available, both in hard-copy and computer-based formats, regarding such over-detentions."  <u>Green v. Baca</u>, 225 F.R.D. at 613.  Specifically, the time frame extended "from August 26, 2003, the date of the first hearing on plaintiff's motion to compel . . . through May 19, 2004," during which time "the Court and plaintiff's counsel were never specifically apprised of the availability of computer-based records regarding over-detentions, despite extensive questioning by the Court and Court orders that declarations be provided regarding the availability of such documents and the burden associated with their production."  <u>Id.</u>  Further, "[d]uring this prolonged period, [the] Court held numerous hearings concerning plaintiff's motion, *i.e.,* on August 26, 2003, September 30, 2003, October 2, 2003, October 20, 2003, February 18, 2004, June 30, 2004, and August 3, 2004, and issued several additional minute orders related to this dispute, *i.e.,* minute orders dated August 29, 2003, September 3, 2003, December 29, 2003, May 19, 2004, and May 28, 2004 [and]

1    [a]dditional proceedings regarding [the] discovery dispute were conducted before . . . [the]

2    District Judge." Id.  Despite the extensive amount of proceedings concerning the discovery

3    dispute, the Green court only "first became aware of the availability of highly-relevant,

4    computer-based records regarding over-detentions in reviewing documents produced for *in*

5    *camera* review, because four computer-generated documents were scattered among the 11,704

6    documents delivered to the Court." Id. at 614.  "The Court conclude[d] that the County's failure

7    to provide relevant information and/or documents regarding over-detentions in response to

8    plaintiff's discovery requests, and specifically to ascertain the existence of readily-accessible

9    computer-based information regarding over-detentions, for a period of months was not

10   'substantially justified' and 'necessitated the motion' to compel and follow-up proceedings that

11   ultimately resulted in the identification and production of relevant, responsive documents" and

12   awarded reasonable attorneys' fees for the extensive course of involvement during the prolonged

13   discovery dispute.  Id.

14          At this stage, although there has been a dramatic increase in the amount of production

15   due to the fact that email searches have now been completed utilizing the agreed upon search

16   terms, as compared to the amount of documents that were certified as responsive prior to the

17   Court's granting of the motion to compel, there has been an insufficient demonstration that

18   simply the volume of emails produced necessitates or allows for the Court to make a ruling that

19   time spent in the future to determine the responsiveness or adequacy with RFP Nos. 20 and 21

20   should be compensated by Defendants.  See Wilcox, 2012 WL 12844083, at *3 ("When,

21   however, broad discovery requests lead to relevant documents being mixed in with seemingly

22   irrelevant documents, the fault lies just as much with the party who made the request as with the

23   party who produced documents in response.").  As noted in adjudicating the previous motion to

24   compel, Defendants' counsel, on behalf of these and other Defendants not involved in the current

25   dispute, have apparently responded to *hundreds* of others requests for production without the

26   need for the Court to intervene.  (ECF No. 44 at 14.)

27          As summarized above, the cases cited by Plaintiffs involved far more extreme

28   circumstances, greater fault by the responding party, an underlying motion to compel, or in the

1  very least, a more developed record as to demonstrated deficiencies in the actual production.  See

2  Lexington Luminance, 2020 WL 10052403, at *7; Maki., 2020 WL 2494676, at *3; Clientron,

3  310 F.R.D. at 266; Pass & Seymour, 255 F.R.D. at 334; Frontier-Kemper, 246 F.R.D. at 527;

4  DCD Partners, 2018 WL 6252450, at *1–2; Green v. Baca, 225 F.R.D. at 613.  The Court has

5  already imposed monetary sanctions in the form of attorneys' fees for Defendants' actions

6  resulting in granting the motion to compel; Defendants have substantially complied with the

7  electronic production based on the record currently before the Court; and while voluminous

8  compared to the previous production, the previous production did not include documents

9  obtained through search of emails.  Given the likelihood that email searches utilizing the search

10 terms agreed to by the parties and searched through the databases of these large companies

11 would result in a large production, the Court is unable to determine on the record before it that

12 the production is or may likely be unresponsive to the point that the Court can conclude that any

13 future expenses are warranted to be reimbursed.  If after Plaintiffs complete a review and have a

14 reasonable belief that Defendants abused the discovery process in their production of emails as

15 produced subject to the search terms, the Court may entertain a further request from Plaintiff for

16 reasonable expenses or appropriate sanctions based on a demonstrable showing of discovery

17 violations or abuse.[8]

18     Further, whether or not there was in fact a violation of Rule 34 if the documents were not

19 produced as kept in the normal course of business, which the record on the motion is insufficient

20 to establish, the parties have apparently agreed to resolve such issues by September 28, 2021.

21 Again, the Rule 34 issues were apparently not discussed in meet and confer prior to the filing of

22 the motion.  For now, if Defendants fail to sufficiently organize and Bates-Stamp the documents,

23 the issue may then be ripe for further Court intervention, following proper meet and confer and

24 an impasse between the parties.  See Pass & Seymour, 255 F.R.D. at 334.

25 / / /

26 / / /

---

27 [8]  However, this would likely involve an in-person conference whereby the parties bring in the specific documents or
28 provide the electronic documents and allow the Court to review with the parties to determine whether an abuse of
the discovery process in fact happened.

1

**V.**

2

**ORDER**

3

Based on the foregoing, Plaintiffs' motion for sanctions (ECF No. 45) is DENIED.

4

IT IS SO ORDERED.

5

6

Dated:   **September 16, 2021**   _____

UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28