1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.M., et al., | Case No. 1:20-cv-00409-JLT-SAB |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF |
| v. | DOCUMENTS |
| COUNTY OF MERCED, et al., | (ECF Nos. 60, 62,63, 64, 65, 66, 67) |
| Defendants. | |

## I.

## INTRODUCTION

Currently before the Court is Plaintiffs' motion to compel responses to requests for production pursuant to Federal Rules of Civil Procedure 34 and 37. (ECF No. 60.)[1] Having considered the joint statement regarding the discovery dispute, the separately filed declarations and the exhibits attached thereto, as well as the Court's file, the Court issues the following order granting the motion to compel production of documents. The Court also grants Plaintiffs' request for sanctions in the form of reasonable attorneys' fees subject to the filing of a noticed motion, and denies Plaintiffs' request for evidentiary sanctions at this time.

///

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

**II.**

**BACKGROUND**

**A.      Factual Background and Pleading Allegations**

This lawsuit arises from the death by suicide of Rene Snider ("Ms. Snider") in the Merced County Jail on March 23, 2019.  (Joint Statement ("JS") at 7, ECF No. 62.)  Ms. Snider entered the Merced County Jail after being found incompetent to stand trial and remanded for restoration of competency.  (Id.)  Plaintiffs allege that Ms. Snider was at a significantly increased risk of suicide, due to her mental illness, prior history of suicide attempts, the abrupt cessation of her mental health medications, and the fact that the court itself found her to be a danger to herself and others in its decision to remand her into custody.  (Id.)  Defendants in this matter include Wellpath and California Forensic Medical Group, the third-party service providers who provide mental and medical health care services at the Merced County Jail; the County of Merced; and various employees and agents of each.  (Id.)

Plaintiffs allege that Defendants knew, or recklessly disregarded, the fact that Ms. Snider was at an increased risk of suicide and that Defendants did not adequately screen Ms. Snider for being a suicide risk, even though she advised them of prior suicide attempts during an initial screening.  (Id.)  Plaintiffs allege Defendants knew, or recklessly disregarded, the fact that Ms. Snider had been found incompetent and ordered into custody specifically because of the risks her mental health concerns posed; that Defendants knew Ms. Snider was taking mental health medications, but withdrew those medications upon her admission to the facility; and additionally, the Defendants failed to adequately monitor Ms. Snider once she was housed in the jail, thereby violating their own policies on the frequency of cell checks.  (Id. at 7-8.)  Ms. Snider died on March 23, 2019, her suicide having been discovered at approximately 6:00 p.m., after she had hanged herself from a bed sheet tied to a bunk bed ladder.  (JS at 6.)

**B.      Procedural Background and Prior Orders Relating to Discovery Dispute**

Plaintiffs D.M., L.M., Denise Sawyer, and Doug Snider ("Plaintiffs"), filed this action on March 19, 2020.  A first amended complaint was filed on April 13, 2020.  (ECF No. 11.)  The action proceeds against Defendants the County of Merced, Wellpath, LLC ("Wellpath"),

California Forensic Medical Group Inc. ("CFMG"), Amanpreet Atwal, Alicia Dunwoody, Gianfranco Burdi, Keriann Quinn-Fitzpatrick, Dylan Fulcher, Shawn Autrey, and Adriana Kifan.

The scheduling order issued on September 29, 2020, setting among other deadlines, a nonexpert discovery deadline of September 21, 2020.  (ECF No. 35.)  On July 30, 2021, the Court granted Plaintiffs' motion to compel and ordered Defendants to provide further responses and responsive documents to Plaintiffs' Requests for Production numbers 20 and 21, within fourteen (14) days of entry of the order.  (ECF No. 44.)  The Court also granted Plaintiffs' request for sanctions in the form of attorneys' fees, in part.  (Id.)

On August 18, 2021, Plaintiffs filed a motion for sanctions in relation to the Court's previous order compelling production.  (ECF No. 45.)  On August 30, 2021, the Court granted the parties' stipulated request to extend the discovery deadlines and trial date, and extended the nonexpert discovery deadline until April 28, 2022.  (ECF No. 47.)  On September 16, 2021, the Court denied Plaintiffs' motion for sanctions, in part because of a lack of insufficient meeting and conferring in relation to the dispute and filing of the motion, which did not justify the imposition of sanctions.  (ECF No. 51.)

Plaintiffs filed the instant motion to compel on February 10, 2021.  (ECF No. 60.)  The motion relates to the same requests for production that were the subject of the July 30, 2021 order granting Plaintiffs' first motion to compel.  On February 11, 2022, the Court reset the hearing on the motion for March 9, 2022.  (ECF No. 61.)  On March 2, 2022, the parties filed what is entitled a joint statement regarding the discovery dispute.  (ECF No. 62.)  However, as indicated in the filing, Defendants did not provide a typical draft section to include within the joint statement.  Rather, Defendants directed Plaintiffs to use a letter sent to Plaintiffs on the evening of March 1, 2022, that concerned the status of the document production, as their statement for the joint statement.  (JS at 15.)  The copy of the March 1, 2022 letter is attached as an exhibit to the separately filed declaration of Christopher Lisieski.  (Decl. Christopher A. Lisieski Supp. JS Disc. Dispute ("Lisieski Decl."), ECF No. 63; Id., Ex. V, ECF No. 63-1 at 119-121.)  On March 2, 2022, Plaintiffs also filed three other declarations in support of the motion to compel.  (Decl. Renee Straughter-Allen Supp. JS Disc. Dispute ("Allen Decl."), ECF No. 64;

1   Decl. Nathan Martin Supp. JS Disc. Dispute ("Martin Decl."), ECF No. 65; Decl. Jay

2   Christofferson Supp. JS Disc. Dispute ("Christofferson Decl."), ECF No. 66.)   On March 8,

3   2022, the Court issued an order finding the matter suitable for decision pursuant to Local Rule

4   230(g), and vacated the March 9, 2022 hearing on the motion to compel.  (ECF No. 68.)

5                                                **III.**

6                                        **LEGAL STANDARD**

7        Rule 26 the Federal Rules of Civil Procedure provides that a party "may obtain discovery

8   regarding any nonprivileged matter that is relevant to any party's claim or defense and

9   proportional to the needs of the case, considering the importance of the issues at stake in the

10  action, the amount in controversy, the parties' relative access to relevant information, the parties'

11  resources, the importance of the discovery in resolving the issues, and whether the burden or

12  expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

13  Information need not be admissible in evidence to be discoverable.  Id.  "Evidence is relevant if:

14  (a) it has any tendency to make a fact more or less probable than it would be without the

15  evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

16       Rule 34 of the Federal Rules of Civil Procedure provides that a party may serve upon any

17  other party a request for production of any tangible thing within the party's possession, custody,

18  and control that is within the scope of Rule 26.  Fed. R. Civ. P. 34(a)(1)(B).  The party receiving

19  the request has thirty days in which to respond.  Fed. R. Civ. P. 34(b)(2).

20       Motions to compel are governed by Federal Rule of Civil Procedure 37.  A party may

21  move for an order compelling production where the opposing party fails to produce documents

22  as requested under Rule 34.  Fed. R. Civ. P. 37(a)(3(B)(iv).  Rule 37 provides in pertinent part:

23           **(a) Motion for an Order Compelling Disclosure or Discovery.**

24           **(1) *In General.*** On notice to other parties and all affected persons,
             a party may move for an order compelling disclosure or discovery.
25           The motion must include a certification that the movant has in
             good faith conferred or attempted to confer with the person or
26           party failing to make disclosure or discovery in an effort to obtain
             it without court action.
27

28  Fed. R. Civ. P. 37.  Rule 37 states that "an evasive or incomplete disclosure, answer, or response

                                               4

must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

If a motion to compel discovery is granted, the Court must order the "party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). If the motion is denied, the court must "require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," however the court "must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). Where the motion is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

Furter, if a party fails to obey an order to provide or permit discovery, the court may issue further just orders, which may include: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A). "Instead of or in addition to the [other sanctions outlined in the Rule,] the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

A party "who has responded to an interrogatory, request for production, or request for

admission—must supplement or correct its disclosure or response: . . . as ordered by the court." Fed. R. Civ. P. 26(e)(1)(B).  If a party fails to do so, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."  Fed. R. Civ. P. 37(c)(1)(A)-(C).

**IV.**

**DISCUSSION**

**A.      Overview of the Plaintiffs' Position on the Motion to Compel**

The motion to compel pertains to discovery sought from Defendants Wellpath and CFMG (hereinafter "Defendants" for purposes of this motion).  (JS at 2.)  This is the second motion to compel requesting the Court to order Defendants to produce documents responsive to Requests for Production of Documents ("RFP(s)") Nos. 20 and 21, which the Court ordered production of on July 30, 2021.  (ECF No. 44.)

Mindful of the Court's previous admonition concerning insufficient meet and confer, Plaintiffs proffer they have spent months seeking to have Defendants complete a production that includes all responsive documents, basic metadata and unique numerical identification (such as a Bates number), as well as that identifies which documents are being produced in response to which RFP, as required by Rule 34, and as Defendants have agreed.  (JS at 2.)  Approximately seven months after the initial order granting the motion to compel, Defendants still have not provided Plaintiffs with a compliant production, and recent communications from Defendants suggest that all prior document productions should now be disregarded, though Plaintiffs state that Defendants have not clarified what this means or the basis for their decision that the prior productions should be disregarded.  (JS at 2.)

Apparently as Plaintiffs proffer, and given the lack of a statement from Defendants defending their position, there is no dispute as to the merits of the motion to compel: Defendants

1    must produce the documents, and have not done so in a manner that complies with Rule 34, and

2    further, according to their recent communications, Defendants have not submitted a valid

3    production at all.   (Id.)   Thus, Plaintiffs submit that the Court need not weigh the factual

4    circumstances argued by each party, but rather all that remains for the Court is to decide what

5    should be done: (1) compulsion with monetary sanctions; or (2) evidentiary sanctions in the form

6    of adverse inference instructions.

7    **B.    The Course of Meet and Confer and Discovery Responses**

8    Plaintiffs served the RFPs in question on October 21, 2020.  (ECF No. 40 at 2–5.)  RFP

9    No. 20 to Defendant Wellpath states as follows:

> Please produce all DOCUMENTS REGARDING, REFERRING
> OR RELATING TO or showing reports, data, schedules, or
> analyses of in-custody deaths in facilities for which YOU, CFMG,
> or any related or predecessor entity was contracted to provide
> medical and mental healthcare.

13   (JS at 8.)  RFP No. 21 to Defendant Wellpath states as follows:

> Please produce all DOCUMENTS REGARDING, REFERRING
> OR RELATING TO or showing any budgets, financial analyses,
> projections of revenue, costs, or profits, audits, or other financial
> documents related to the provision of medical and mental
> healthcare by YOU, CFMG, or any related or predecessor entity at
> the MERCED COUNTY JAIL.

18   (JS at 8.) [2]  Initial responses were served on December 7, 2020.  (JS at 3.)  The parties met and

19   conferred during January 2021, and reached an agreement to produce documents on February 9,

20   2021, following the entry of a stipulated protective order, which occurred on February 25, 2021.

21   Thereafter, Plaintiffs followed up with Defendants multiple times—on April 1, 2021, April 8,

22   2021, and April 23, 2021—at which point Defendants advised they had no documents responsive

23   to RFP No. 21.  (JS at 4.)  Following additional repeated contacts throughout May 2021,

---

[2]  In the Court's order granting Plaintiff's first motion to compel, the Court noted that while the RFPs are identical except for specifying between CFMG and Wellpath after the word "YOU," as served, these were distinct RFPs to each entity, however, only the precise text of RFP Nos. 20 and 21 as served on Wellpath were provided in the Joint Statement.  This is the same in the current Joint Statement.  Plaintiffs do advise the Court in the Joint Statement that "[b]ecause Defendants have advised that, for all intents and purposes, Wellpath and CFMG are the same entity in terms of record-keeping, employees, and other functions, and that any responses to discovery will be exactly the same for the two entities, they will not be further distinguished in this motion and will be referred to collectively as 'Wellpath.' " (JS at 8 n.1.)

1    Plaintiffs received supplemented responses to RFP Nos. 20 and 21 in June 2021.  The June 2021
2    production consisted of only 25 total pages, containing no e-mail, direct messaging, notes, text
3    messages, correspondence, letters, or memoranda.

4         Plaintiffs filed their first motion to compel in relation to RFP Nos. 20 and 21 on June 23,
5    2021; continued to meet-and-confer with Defendants, who protested that they could not
6    formulate search terms; and while Plaintiffs sought to assist Defendants with formulating search
7    terms, Plaintiffs state no meaningful interactions were received from Defendants to allow
8    Plaintiffs to participate in this process.  (JS at 4, citing ECF No. 40 at 2-5.)  The Court granted
9    Plaintiffs' motion to compel on July 30, 2021, and thereafter, what Defendants represented to be
10   the full production of documents was made slightly after the date ordered by the Court, on
11   August 18, 2021.  (JS at 4; Lisieski Decl. ¶ 5, Ex. B.)  However, that production remained
12   deficient as Plaintiff submits that: (1) it lacked even the most basic organization required by Rule
13   34; (2) it contained no unique numerical identifiers (*e.g.*, Bates numbers); and (3) it did not even
14   attempt to identify which of the 700,000 plus pages of documents pertained to RFP No. 20, and
15   which pertained to RFP No. 21.  (Lisieski Decl. ¶¶ 6–7, Ex. C.)  Plaintiffs outlined these
16   deficiencies in a letter dated August 24, 2021, and provided Defendants four weeks to re-produce
17   the documents in a compliant fashion.  Defendants responded by letter on August 31, 2021, and
18   indicated they would provide a compliant production by September 28, 2021.  (Lisieski Decl. ¶
19   8, Ex. D.)

20        Defendants failed to re-produce documents by September 28, 2021.  Plaintiffs contacted
21   Defendants on September 29, 2021, and were advised that the document production was not yet
22   complete.  (Lisieski Decl. ¶ 9, Ex. E.)  Plaintiffs received a communication from Defendants on
23   September 30, 2021, that advised that Defendants were still in the process of completing the
24   production.  (Lisieski Decl. ¶ 10, Ex. F.)  Plaintiffs responded the following day, October 1,
25   2021, seeking clarification of what was being produced and when the production would occur.
26   (JS at 4-5; Lisieski Decl. ¶ 11, Ex. G.)  Plaintiffs and Defendants spoke by phone on October 1,
27   2021, and agreed to pursue certain depositions which were unlikely to be impacted by the
28   outstanding production of documents.  (JS at 5; Lisieski Decl. ¶ 12, Ex. H.)  Plaintiffs received e-

mails through October 12, 2021, advising the production was still in process but not yet complete.  (Lisieski Decl. ¶ 13, Exs. I, J, K.)  The re-production was completed on October 15, 2021.  (Lisieski Dec., ¶ 14, Ex. L.)

Upon review of the re-production, however, Plaintiffs realized what was produced was still deficient.  In a letter dated October 27, 2021, Plaintiffs notified Defendants that they believed the re-produced documents did nothing to clarify the organizational issues, and in fact, made them substantially worse.  (Lisieski Decl. ¶ 15, Ex. M.)  Plaintiffs requested: Defendants: "(1) Produce the ESI in a manner that preserves metadata, so that the files can be preserved, searched, and accessed in their original formats; (2) a unique numerical identifier for each document, so that when a witness or party is referencing a document, it is clear to everyone which document is being referenced and that it is the same document that produced in discovery; and (3) an understanding of which documents are responsive to which RFP."  (Id.)  Plaintiffs also offered in the letter to make their IT administrator available to answer any technical questions Defendants had about how to complete an ESI production.  (Id.)

In subsequent communications, Defendants again indicated they would fix these problems and would have their technical consultant contact Plaintiffs' IT administrator to confer on certain technical issues to resolve the issues with Defendants' production.  (Lisieski Decl. ¶ 16, Ex. N.)  However, no such contact was received, and Plaintiffs followed up again on November 24, 2021, and December 7, 2021.  (Lisieski Decl. ¶¶ 16-17, Exs. N, O.)  Defendants' technical consultant contacted Plaintiffs' IT administrator on December 7, 2021, at which point Plaintiffs provided specific instructions on how to produce load files, as well as reiterated the request that the documents be produced natively.  (Allen Decl. ¶ 5.)  Defendants indicated they understood this request.  (Id.)  Plaintiffs followed up again on December 16, 2021, and this time were advised Defendants' computer had "crashed" and so the data had to be transferred, that the technical consultant would be "starting over," and "should be able [to] have at least one completed for Monday."  (Allen Decl. ¶ 7, Ex. A, ECF No. 64-1 at 2.)

On January 4, 2022, Plaintiffs were contacted and advised that Defendants' technical consultant had been in a car accident and suffered a concussion, and that "[s]creen time is

1  consequently limited." (Lisieski Decl. ¶ 18, Ex. P.)  Plaintiffs indicated they would agree to
2  another, further extension, but asked that all documents be produced in a usable format by
3  January 14, 2022. (Id.)

4          Plaintiffs began receiving piecemeal productions on January 5, 2022; however, these
5  productions again continued to suffer from significant technical issues, including missing native
6  files, and missing load files that permit the native files to be accessed. (JS at 6; Allen Decl. ¶ 8,
7  Ex. B.)  Defendants continued to aver that they understood the problems and would fix these
8  issues.  (Id.)  Defendants advised they had made a full production, fixing all prior technical
9  issues, on January 13, 2022. (Lisieski Decl. ¶ 19, Ex. Q.)  Specifically, the January 13, 2022
10 email from defense counsel stated that the Defendants' technical advisor had "advised [defense
11 counsel] that all files have been successfully uploaded to the Dropbox folder.  Will you please
12 review and advise"  (Ex. Q, ECF No. 63-1 at 81.)  However, Plaintiffs' review revealed the
13 production was not complete, and on January 18, 2022, Plaintiffs contacted Defendants noting
14 issues with this production, including missing files and password protected files that could not be
15 accessed.  (Allen Decl. ¶¶ 9–10, Exs. C, D.)  While Defendants again represented they were
16 working to fix these issues, Plaintiffs state that subsequent efforts to meet-and-confer yielded no
17 results.  (Allen Decl. ¶¶ 11–12, Exs. E, F; Lisieski Decl. ¶ 20, Ex. R.)  Plaintiffs proffer that
18 Defendants acknowledged they had not yet successfully produced these documents in February
19 4, 2022, and February 7, 2022 e-mails.  (Lisieski Decl. ¶ 20, Ex. R; Allen Dec., ¶ 12, Ex. F.)[3]

20         Plaintiffs sent a final letter attempting to meet-and-confer on February 10, 2022, noting
21 that, despite the fact that adequate load files had not been produced, Plaintiffs had nevertheless
22 begun going through the extensive document production manually, and had located dozens of
23 files that were missing or password protected.  (Christofferson Decl. ¶ 3, Ex. A.)  In the February
24 10, 2022 communication, Plaintiffs asked for: (1) all responsive documents to be produced,
25 including the missing files; (2) all passwords to be produced, or all documents to be produced in

26 [3]  On February 4, 2022, counsel Peter Bertling replied that "As you are aware we have hired an outside vendor to
27 assist with production of this documentation.  We will be having a meeting with him today to discuss your email and
   concerns.  He may need to consult with Renee to find a satisfactory resolution to this issue."  (ECF No. 63-1 at 93.)
   The email provided as Exhibit F to the Allen declaration is illegible and the Court cannot read the text of the email.
28 (See ECF No. 64-1 at 63.)

unprotected form; (3) a sufficient load file containing the relevant metadata that would allow the files to be loaded into an e-discovery platform; and (4) that Defendants identify which documents are responsive to which RFP.  (Id.) As of the date of the filing of the joint statement, the document production remains incomplete.  (JS at 6; Lisieski Decl. ¶ 26.)

Finally, Plaintiffs proffer that recent communications from Defendants suggest that Plaintiffs may not be able to rely at all on the productions that have occurred to date.   On February 21, 2022, Defendants sent Plaintiffs' IT administrator—omitting counsel for Plaintiffs—an e-mail stating, in part: "Please disregard any and all previous document productions as they were produced incorrectly and possibly contain privileged material."  (JS at 7; Allen Decl. ¶¶ 13-14, Ex. G.)[4]  Plaintiffs responded on February 22, 2022, noting Defendants had done nothing to establish a "clawback" of previously produced documents, and that "disregard[ing] any and all previous document productions" was likely not possible, since documents had already been shown to witnesses.  (Lisieski Decl. ¶ 21, Ex. S.)  Defendants responded on the same date, and seemed to retract their prior statement in part, advising that the prior communication was "applicable to Wellpath's e-mail productions only."  (Lisieski Decl. ¶ 22, Ex. T (emphasis in original).)   The Court shall reproduce the communication in full for further context of this issue:

> Dear Mr. Lisieski:
>
> It was an error for Chris Soriano not to include you on the email to IT Director, Renee Allen.  However, we are troubled by your response.
>
> First, it is not Chris Soriano's job to make federal civil procedure arguments to your office.  He communicated a problem, which, with professionalism should not have elicited your response, and you could have simply requested that we issue a statement regarding the legal bases for our error.  We are not attempting to "claw back."  We are humans, operating to the best of our capacities, which the law recognizes are fallible.  An IT error was

---

[4]  The Court notes the email did omit Plaintiffs' counsel.  The email was sent for the outside technical consultant to the Plaintiffs' IT administrator, and cc'd Defendants' counsel.  (ECF No. 64-1 at 78.)  In full, the email states: "We (Bertling Law Group) just finished reviewing all the PST files again and I am now starting the exporting then ingesting of the .PST files.  I will keep you updated on the status of completion and when they are uploaded for you to download.  Please disregard any and all previous document productions as they were produced incorrectly and possibly contain privileged material."  (Id.)

made, and then identified by our IT to your IT. Presumably it was forwarded to you which is the basis for your email. I agree you should have been on the email initially.

What Chris Soriano communicated was that he unintentionally uploaded documents which were not intended nor required to be produced, applicable to Wellpath's email productions only. This has nothing to do whatsoever with the documents which you have shown witnesses during deposition or otherwise.

That said, this weekend I have already approved the corrected production and it will be sent to you as soon as possible. We will advise the Court of our error. Under the protective order, we will seek all remedies should you maintain your position and continue with your motion to compel which seems designed not to obtain relevant documentation but is rather punitive in nature.

(ECF No. 63-1 at 114-115.)

Plaintiffs replied on February 23, 2022, noting that it was now unclear whether Defendants were asking for Plaintiffs to delete prior productions or not. (Lisieski Decl. ¶ 23, Ex. U.) Regardless, Plaintiffs maintain Defendants' productions remain insufficient for all the reasons stated above. (Id.)

1. Defendants' March 1, 2022 Letter

As noted above, Defendants did not provide a draft section to include the joint statement but rather directed Plaintiffs to use a letter sent to Plaintiffs on the evening of March 1, 2022, that concerned the status of the document production, as their statement for the joint statement. (JS at 15.) Given the lack of participation in the drafting of the joint statement, the Court shall reproduce the text of that letter here:

Dear Mr. Lisieski:

This is an update regarding the status of the ESI re-production. As you know, it was recently discovered the documents uploaded and produced previously were found to have been unintentionally collected from the wrong files and were therefore produced in error. Our office and Mr. Soriano have been working diligently to correct this error since its discovery.

There are 3259 documents to produce, consisting of a total of 411,707 bates stamped pages. Currently, 2439 documents have been completed. While we endeavored to have this completed and sent, or at least partially sent, this was not possible due to technical constraints. Mr. Soriano has advised that he cannot stop the process to make a partial production. However, as you can tell

there are approximately 800 documents left so we do not anticipate the remainder to be much longer, and Mr. Soriano has stated that a reasonable estimate at this time is completion on Friday, March 4 and production on Monday, March 7.  The bates numbers are being generated concurrently, so that will not be an additional step.

We note that initially, Mr. Soriano was requested to generate and produce four fields:

> PROD_BEGDOC,           PROD_ENDOC,           PROD-
> BEGATTACH, and
> PROD_ENDATTACH.

Based on his multiple conferences with Ms. Allen, at her request the number of fields have significantly expanded by an additional ten, resulting in 14 total fields.  These ten additional fields are:

> FILE_EXT, NATIVE, DOCUMENT TYPE, SUBJECT, TITLE, MAIL TO,
> MAIL FROM, MAIL CC, MAIL BCC, and MAIL SEND DATE.

Mr. Soriano approximates that this production would have been completed sooner had these additional fields not been belatedly added.

We will continue to keep you updated.  As stated above, we anticipate the production to occur on or before Monday, March 7.

Please do not hesitate to reply with any questions.

(Lisieski Decl. ¶ 24, Ex. V.)

## C.   Plaintiffs' Arguments in Favor of Compelling Production and Imposing Sanctions

Plaintiffs emphasize the Court's prior order to compel production of documents responsive to the same RFP Nos. 20 and 21, by August 13, 2021, and the fact that it is clear that all responsive documents have still not been produced, and what has been produced is functionally inaccessible.  (JS at 9; Lisieski Decl. ¶ 26; Allen Decl. ¶¶ 15–18.)

Plaintiffs focus the Court on Rule 34's requirement that a responding party produce documents "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request," and that if a request does not specifically request a specific form, the producing party must "produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."  Fed. R. Civ. P. 34(b)(2)(E)(i)-(ii).  Here,

1  the original RFPs requested that documents be produced in the same form they were kept in the

2  usual course of business.  (Lisieski Decl. ¶ 4, Ex. A.)

3        The documents received from Defendants in the ESI productions were separated into four

4  productions, each bearing a different person's name.  (Lisieski Decl. ¶ 6.)  Plaintiffs assume

5  these productions generally correspond to search results from four different Wellpath employees'

6  e-mails and/or electronic files, although Plaintiffs do not know who these individuals are or why

7  their e-mails were selected for search and production.  (Id.)  Further, Plaintiffs maintain that the

8  scope of each production remains unclear, as there appear to be numerous non-email documents,

9  including Word, Excel, and PDF files, included in what has been produced, and there is no

10  apparent organization beyond these four categories, and nothing indicates which documents are

11  responsive to which RFPs.  (JS at 9-10.)

12        Additionally, Plaintiffs submit that no sufficient load file[5] was produced for these

13  productions.  (Allen Decl. ¶ 16.)  Plaintiffs argue these additional fields are what enable search

14  functionality in e-discovery software platforms, which is critically important here with a

15  document production of over 700,000 pages, and submit that Defendants acknowledged their

16  failure to comply, but still have not actually produced a file that contains this basic information.

17  (JS at 10; Allen Decl. ¶ 12, 17, Ex. F.)  Further, Plaintiffs emphasize it is clear that not all

18  documents have been produced, as despite not having load files that would permit these

19

20  [5]  "A load file is a 'file that relates to a set of scanned images or electronically processed files, and indicates where individual pages or files belong together as documents, to include attachments, and where each document begins and

21  ends,' and may also include 'data relevant to the individual documents, such as metadata, coded data, text, and the like.' "  Aguilar v. Immigr. & Customs Enf't Div. of U.S. Dep't of Homeland Sec., 255 F.R.D. 350, 353 (S.D.N.Y.

22  2008) (quoting The Sedona Conference Glossary 31 (2d ed.2007), http://www.TheSedona Conference.org/content/miscFiles/TSCGlossary_12_07.pdf.).  Plaintiffs emphasize that load files are commonplace

23  in discovery.  See CBT Flint Partners, LLC v. Return Path, Inc., 737 F.3d 1320, 1332 (Fed. Cir. 2013) ("Some of the basic information in load files is comparable to the slip sheets (blue sheets of paper, say) used to separate distinct

24  documents in a paper production."); McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co., 322 F.R.D. 235, 250 (N.D. Tex. 2016) ("Defendants also submitted sworn testimony that they each produced ESI in a searchable and

25  sortable form, paired with relevant metadata, and including load files, which satisfies Rule 34(b)(2)(E)(ii)'s requirement to—where (as here) no form for producing ESI is specified—produce ESI in a form or forms in which it

26  is ordinarily maintained or in a reasonably usable form or forms.").  Plaintiffs proffer that load files are essentially the means of transferring metadata in a useable format; are easily and automatically compiled by e-discovery

27  programs in the course of rendering an ESI production; and the load files produced here included only Bates Numbers—referred to in the load files as "PROD_BEGDOC" and "PROD_ENDDOC"—and no additional metadata

28  fields, which would include information relevant to e-mail communications such as "Subject," "Title," "Mail To," etc.  (Allen Decl. ¶ 16.)

1   productions to be reviewed in a meaningful way, Plaintiffs began reviewing the productions on a

2   page-by-page basis, to determine what had been produced and whether it could be reviewed.

3   (Martin Decl. ¶ 3.)   The limited review so far has revealed that there are numerous missing and

4   password-protected documents, including more than 50 documents to date that are simply

5   missing (meaning a Bates number exists for these documents, but there is no corresponding file

6   in either the "Natives" or "Images" folders).   This limited review also showed that some of the

7   documents in the production are password-protected, and therefore inaccessible.   (Allen Decl. ¶¶

8   9-10, 18, Exs. C, D.)

9          **D.     The Court shall Grant Plaintiffs' Motion to Compel, and Grant Plaintiffs'
               Request for Fees Subject to the Filing of a Noticed Motion**
10

11          Plaintiffs submit that at this juncture, they see two options for how the Court can proceed.

12   The first would involve the Court again ordering responsive documents to be produced, perhaps

13   with greater specificity than in the July 30, 2021 order, although Plaintiffs state it is unclear

14   whether greater specificity is necessary, as Defendants have generally indicated they understand

15   the need to resolve all of the issues Plaintiffs have identified.   Nonetheless, Plaintiffs request that

16   if the Court re-orders production, it should specify that Defendants must: (1) produce all missing

17   documents; (2) produce passwords for any password-protected documents; (3) organize the

18   documents in some logical fashion, including specifying which documents are responsive to

19   which RFPs; and (4) produce a sufficient load file, as they have agreed to do.   (JS at 11-12.)

20          Plaintiffs note that this option would necessarily require the extension of the discovery

21   deadlines in this action again, as even if Defendants promptly complete their document

22   production, Plaintiffs still need time to review the final production anticipated to be over 700,000

23   pages—once it is actually fully produced, before proceeding to the remaining depositions.   The

24   Court need not detail Plaintiffs' arguments here, as the Court agrees there is good cause to

25   extend the discovery deadlines in light of the massive forthcoming production of documents.[6]

26   _____

27   [6]  The Court will not extend the discovery deadlines and other dates, including trial and dispositive motion filing
     deadlines, in this order.  Rather, given the various moving parts, the Court only informs the parties that it will grant a
28   stipulated or later *ex parte* request from the Plaintiffs outlining a proposed modification to all the dates and
     deadlines currently set.  This will allow the parties sufficient time to receive the production, and discuss further

1    Plaintiffs highlight that further delay rewards Defendants' bad behavior as it continues to
2  delay a case that has already been pending for two years, to the prejudice of Plaintiffs, all so
3  Defendants can complete the basic discovery steps they should have finished well over a year
4  ago.  Plaintiffs proffer continued delay may well be Defendants' goal.

5    Given the totality of the circumstances, Plaintiffs argue there is no justification, let alone
6  substantial justification, for the continued failure to produce documents, and thus an award of
7  attorneys' fees is warranted under Rule 37.  (JS at 12.)  Under this remedy, Plaintiffs request
8  monetary sanctions both for the motion itself and otherwise to compensate for the extensive
9  delay caused by Defendants' refusal to produce the documents they were ordered to produce in
10 July of 2021.  Plaintiffs request retrospective monetary sanctions, and additionally argue
11 Defendants should be ordered to pay for all damages and costs associated with the delay and
12 reviewing whatever forthcoming documents are produced in response to the Court's order for
13 compliance.  Plaintiffs state that after an extension of the discovery deadlines to provide time for
14 Plaintiffs to review the document productions, Plaintiffs thereafter intend to file a motion for
15 attorneys' fees under Local Rule 230.

16   The Court shall grant the Plaintiffs' motion to compel.  Fed. R. Civ. P. 37(a)(4) ("[A]n
17 evasive or **incomplete disclosure**, answer, or response must be treated as a failure to disclose,
18 answer, or respond.") (emphasis added).

19   The Court shall also award attorneys' fees to Plaintiffs as an appropriate sanction and to
20 compensate Plaintiffs for the fees incurred throughout this discovery dispute.  Fed. R. Civ. P.
21 37(a)(5)(A).  However, the Court declines to make a definitive ruling as to the extent of
22 attorneys' fees that the Court will award as to each of the above requested categories, until
23 Plaintiff brings the forthcoming motion for attorneys' fees and it is fully briefed and before the
24 Court.  The Court does inform Plaintiffs and the Defendants that it is nearly fully inclined to
25 award the requests as to the four categories outlined by Plaintiffs as to the retrospective fees,
26 namely: 1) the time Plaintiffs have spent reviewing the deficient document productions; (2) the

27
28   scheduling in light of the document production, future depositions, expert discovery, dispositive motions, and setting a new trial date.

1    time Plaintiffs have spent meeting-and-conferring with Defendants about these deficient

2    document productions; (3) the time Plaintiffs have spent briefing this second motion to compel;

3    and (4) compensation for the time and resources spent by Plaintiffs' IT administrator attempting

4    to assist Defendants and performing quality control reviews of Defendants' productions.  The

5    Court encourages Defendants to consider stipulating to a reasonable amount of attorneys' fees as

6    to these categories of expenses, or limiting their objections to those fees that Plaintiffs would

7    have incurred in a normal discovery process without the repeated failures and issues presented by

8    the Defendants' untimely and technologically deficient electronic productions.  The Court is

9    somewhat less inclined to grant Plaintiffs' request to order the Defendants to pay for the future

10   costs of reviewing documents that are produced in response to this order, unless for additional

11   expenses Plaintiffs incur in reviewing the new document productions in relation to or as caused

12   by the Defendants' erroneous productions, and Plaintiffs would not have incurred such future

13   discovery costs in the normal discovery process.  The Court is cognizant that such future time

14   may be enhanced due to the previous noncompliant discovery responses, and may make

15   compliance checks more time-intensive than under normal circumstances.

16          **E.      The Court Denies Plaintiffs' Request for an Adverse Inference Instruction**

17          Plaintiffs submit that the second option for the Court are evidentiary sanctions,

18   specifically, adverse inference instructions.  Plaintiffs emphasize that RFP No. 20 requested

19   documents relating to in-custody deaths in the facilities for which Wellpath was the medical and

20   mental healthcare provider, and was sought to help develop evidence concerning Wellpath's

21   awareness of rates of suicide and failure to remedy those risks in the facilities for which it

22   provides healthcare and mental health coverage.   As to RFP No. 20, Plaintiffs request the

23   following instruction be given to the jury:

> Defendants Wellpath and CFMG failed to produce all documents
> related to in-custody deaths, including suicides, at the facilities for
> which they were the medical and/or mental healthcare provider.
> You may infer that Defendants did not produce this information to
> Plaintiffs because Defendants believe this information would help
> Plaintiffs and harm Defendants.

28   (JS at 14.)  Plaintiffs emphasize that RFP No. 21 requested documents relating to budgets,

1  financial analyses, projections of revenue, costs, or profits, audits, and other financial documents.

2  As to RFP No. 21, Plaintiffs request the following instruction be given to the jury:

> Defendants Wellpath and CFMG failed to produce all documents related to budgets, financial analyses, revenue, and costs for the facilities at which they were medical and/or mental healthcare provider. Plaintiffs sought this information to determine whether Defendants maintained sufficient resources at their facilities to provide adequate medical and mental health care. You may infer that Defendants did not produce this information to Plaintiffs because Defendants believe this information would help Plaintiffs and harm Defendants.

8  (JS at 14.)   Additionally, Plaintiffs argue that a separate reason for RFP No. 21 was to seek

9  financial information which might help a jury determine a reasonable amount of punitive

10 damages, and because Defendants have prevented Plaintiffs from learning this information by

11 failing to respond to RFP No. 21, they should also be prevented from submitting evidence to the

12 jury that contradicts any evidence Plaintiffs are otherwise able to develop concerning the

13 financial health of Defendants.  (JS at 15.)

14      Plaintiffs submit that while they do not request such lightly, these discovery requests

15 were served over 16 months ago; the parties finished meeting-and-conferring on any substantive

16 issues related to the productions an entire year ago; and Defendants' failure to produce

17 documents has resulted in at least one delay in trial date for this case already.  Plaintiffs state that

18 while a harsher sanction, they have the benefit of not further delaying this case, and

19 appropriately assign fault to the party responsible.

20      Despite Defendants' lack of a substantive statement incorporated into the joint statement,

21 leaving the Court to only gleam from the March 1, 2022 letter and other communications why

22 Defendants appear to be still failing to produce documents in compliance with the discovery

23 requests and the Court's order, the Court finds adverse inference instructions to be an

24 unwarranted sanction at this juncture and based on this record.  While admittedly making

25 mistakes regarding the technical aspects of the production and causing immense delay, there

26 does not appear to be indications of intentionally withholding or destroying relevant evidence.

27 That analysis may change based on what Defendants now produce, and what transpires during

28 further discovery and depositions.  However, based on the totality of the circumstances and

1    record before the Court, Plaintiffs' request for an adverse inference instruction shall be denied.

2          Courts recognize that adverse inference instructions are a harsh sanction.  <u>Apple Inc. v.</u>

3    <u>Samsung Elecs. Co.</u>, 888 F. Supp. 2d 976, 993–94 (N.D. Cal. 2012) (collecting cases and stating

4    "the Court does not find that such a strong adverse inference instruction is justified by this record

5    [as] courts must choose 'the least onerous sanction corresponding to the willfulness of the

6    destructive act and the prejudice suffered by the victim[,]' . . .any exercise of a court's inherent

7    powers must be exercised with great restraint and discretion [and while] an adverse inference

8    instruction is a 'lesser' sanction than dismissal or default . . . does not mean it should be imposed

9    casually."); <u>Nutrition Distribution LLC v. PEP Rsch., LLC</u>, No. 16CV2328-WQH-BLM, 2018

10   WL 6323082, at *5 (S.D. Cal. Dec. 4, 2018) ("An adverse inference instruction is a harsh

11   sanction . . . Courts vary the language of an adverse inference instruction according to the degree

12   of fault of the spoliating party.").

13         Adverse inference instructions are generally utilized where there is a showing of

14   spoliation of evidence, or a complete and demonstrated failure to provide particular documents,

15   or types of documents.  <u>See</u> <u>Nutrition Distribution LLC v. PEP Rsch., LLC</u>, No. 16CV2328-

16   WQH-BLM, 2018 WL 6323082, at *4 (S.D. Cal. Dec. 4, 2018) ("Courts in the Ninth Circuit

17   apply a three-element test when a party seeks an adverse inference instruction on grounds of

18   spoliation: (1) the person in control of the evidence had the obligation to preserve relevant

19   evidence at the time of destruction, (2) the evidence was destroyed with a culpable state of mind,

20   and (3) the evidence was relevant."); <u>Aidini v. Costco Wholesale Corp.</u>, No.

21   215CV00505APGGWF, 2017 WL 10774823, at *1 (D. Nev. May 4, 2017) ("There is

22   insufficient evidence to justify an adverse inference jury instruction based on spoliation, so

23   I deny Aidini's request.").  Plaintiffs submit there are cases where courts have found adverse

24   inference instructions warranted where sufficient evidence was simply not timely produced,

25   regardless of whether it was destroyed.  The Court finds the circumstances do not rise to the level

26   of violations in those cases, and involved other factors not present or not equivalent to here.  <u>Full</u>

27   <u>Tilt</u> involved "a series of discovery disputes," and the most recent violation related to the court

28   allowing until July 12, 2021, for the party to comply with an order to compel, despite fact

discovery closing 60 days prior.  The Court specifically found the following regarding the lack of documents in light of the party's proffer that the records do not exist and never existed:

> KEP's supplemental responses indicate that no documented communications exist about the operation or management of the fund. This seems highly unlikely, unless Defendants performed all the tasks related to operation or management of the fund themselves and did not communicate amongst themselves about it via email or text. It would also mean that Defendants never communicated with auditors about the fund and never provided disclosures to other franchisees about the fund. The Court doubts the truthfulness of this response. (Dkt. 72 at 22.) Further Response Same response given. (Dkt. 104-5 at 9.)
>
> KEP's further response to RFP 28 is still deficient and is inconsistent with the produced index indicating responsive documents are in shared folder 28. (Dkt. 104-7 at 6.) At the hearing, KEP's counsel unreasonably asserted that any transaction reports involving the Systemwide Marketing Fund were not "communications" and did not involve "management and operation" of the Fund. (See also Dkt. 124 at 14.) Thus, counsel unreasonably determined that financial transaction reports involving the Fund were not responsive. Accordingly, Plaintiff is entitled to an **ADVERSE INFERENCE**, instructing the jury it may infer that KEP did not produce these documents because it believed that this information would help Plaintiff and harm Defendants.

Full Tilt Boogie, LLC v. KEP Fortune, LLC, No. 219CV09090ODWKESX, 2021 WL 5563334, at *1, 10 (C.D. Cal. Oct. 21, 2021), report and recommendation adopted, No. 219CV09090ODWKESX, 2021 WL 5564685 (C.D. Cal. Oct. 26, 2021).  Parrick involved the imposition of an adverse inference instruction in denying a request for terminating sanctions, after numerous discovery disputes, and after the repeated failure to produce documents previously ordered, and included a failure that had an impact on the ability complete a deposition relevant to the missing documents pertaining to company policies:

> Plaintiff's counsel took Mr. Payne's deposition on June 16, 2010. Although Mr. Payne produced a 42–page index identifying the purported policies of FedEx responsive to Plaintiff's request at his deposition, he did not produce any FedEx safety policies as requested. Mr. Payne did not provide any satisfactory explanation as to why he failed to produce the safety policies as required under Rule 30(b)(2) . . .
>
> . . . Based on the forgoing, FedEx completely failed to produce its company policies. FedEx failed to comply with the Court's April 21, 2010 Order, and it failed to comply with the Rule 30(b)(2) and

Rule 34 request for production in the referenced Notice of Deposition.

<u>Parrick v. FedEx Ground Package Sys., Inc.</u>, No. CV 09-95-MDWMJCL, 2010 WL 3724825, at *4 (D. Mont. Sept. 17, 2010).

For these reasons, the Court does not elect to impose the sanction of an adverse inference instruction at this time.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     Plaintiffs' motion to compel (ECF No. 60) is GRANTED;

2.     Defendants Wellpath, LLC, and California Forensic Medical Group, Inc., shall serve all  documents responsive to Plaintiffs' Requests for Production numbers 20 and 21, with a standard load file, any necessary passwords, and organized in a manner compliant with Federal Rule of Civil Procedure 34 including identification of which documents are responsive to which Request for Production, within **seven (7) days** of entry of this order; and

3.     Plaintiffs' request for sanctions in the form of attorneys' fees is GRANTED subject to the filing and consideration of a noticed motion for attorneys' fees, which shall be filed within twenty-one (21) days of this order; and

4.     Plaintiffs' request for evidentiary sanctions in the form of adverse inference instructions is DENIED.[7]

IT IS SO ORDERED.

Dated:   __March 9, 2022__                          _____
                                                                 UNITED STATES MAGISTRATE JUDGE

---

[7]  While the Court generally prefers to allow at least 14 days for compliance, even in cases of lengthy delay as here, Defendants' most recent communication dated March 1, 2022, which was provided as the only statement from Defendants to incorporate into the joint statement, states compliant production is anticipated on or before March 7, 2022. (ECF No. 63-1 at 121.)  Accordingly, the Court shall grant Plaintiffs' request for a seven day deadline, given Defendants have provided the Court with no objection or response to that request.  Additionally, as noted above, the Court does not alter the current scheduling order by this order, but does find good cause to do so, and will accept a stipulated request or *ex parte* request outlining proposed dates and deadlines.  Finally, as to the deadline to file a motion for attorneys' fees, it was somewhat unclear from the filing whether Plaintiffs desired to wait until a time after review of production to compute potential future requests for attorneys' fees incurred within the 90 day proposed extended discovery period, or if they only wanted to file a noticed motion twenty-one (21) days after the entry of this order.  (Compare JS at 12 and 16.)  If Plaintiffs wish to submit such motion after the twenty-one day period, they may submit such within the request for modification of the scheduling order, or in a separate filed stipulation or request.