1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.M., et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>COUNTY OF MERCED, et al.,<br><br>            Defendants. | Case No.  1:20-cv-00409-JLT-SAB<br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES<br><br>(ECF Nos. 99, 105, 106) |

**I.**

**INTRODUCTION**

Currently before the Court is Plaintiffs' motion for attorneys' fees pertaining to their previously-adjudicated motions to compel Requests for Production (RFP) Nos. 10, 11, 20, and 21. (ECF No. 99)  The parties appeared for the hearing on the motion on September 21, 2022.  (ECF No. 109.)  Counsel Christopher A Lisieski  appeared in person on behalf of Plaintiffs.  (Id.) Counsel Peter Bertling appeared via videoconference on behalf of Defendants.  (Id.)  Having considered the moving papers, declarations and exhibits attached thereto, the parties' oral arguments, as well as the Court's file, the Court issues the following order granting in part the motion for attorneys' fees.

1

## II.

## BACKGROUND

### A.      Factual Background and Pleading Allegations

This lawsuit arises from the death by suicide of Rene Snider ("Ms. Snider") in the Merced County Jail on March 23, 2019.  (See ECF No. 107 at 6–7.)  Ms. Snider entered the Merced County Jail after being found incompetent to stand trial and remanded for restoration of competency.  Plaintiffs allege that Ms. Snider was at a significantly increased risk of suicide, due to her mental illness, prior history of suicide attempts, the abrupt cessation of her mental health medications, and the fact that the court itself found her to be a danger to herself and others in its decision to remand her into custody.  Defendants in this matter include Wellpath and California Forensic Medical Group, the third-party service providers who provide mental and medical health care services at the Merced County Jail; the County of Merced; and various employees and agents of each.

Plaintiffs allege that Defendants knew, or recklessly disregarded, the fact that Ms. Snider was at an increased risk of suicide and that Defendants did not adequately screen Ms. Snider for being a suicide risk, even though she advised them of prior suicide attempts during an initial screening.  Plaintiffs allege Defendants knew, or recklessly disregarded, the fact that Ms. Snider had been found incompetent and ordered into custody specifically because of the risks her mental health concerns posed; that Defendants knew Ms. Snider was taking mental health medications, but withdrew those medications upon her admission to the facility; and additionally, the Defendants failed to adequately monitor Ms. Snider once she was housed in the jail, thereby violating their own policies on the frequency of cell checks.  Ms. Snider died on March 23, 2019, her suicide having been discovered at approximately 6:00 p.m., after she had hanged herself from a bed sheet tied to a bunk bed ladder.

### B.      Relevant Procedural Background

Plaintiffs D.M., L.M., Denise Sawyer, and Doug Snider[1] (collectively, "Plaintiffs") filed this action on March 19, 2020.  A first amended complaint was filed on April 13, 2020.  (ECF

---

[1] The Court notes Plaintiffs filed a notice of death as to Doug Snider on March 21, 2022.  (ECF No. 70.)

No. 11.)  The action proceeds against Defendants County of Merced ("County"), Wellpath, LLC ("Wellpath"), California Forensic Medical Group Inc. ("CFMG"), Amanpreet Atwal, Alicia Dunwoody, Gianfranco Burdi, Keriann Quinn-Fitzpatrick, Dylan Fulcher, Shawn Autrey, and Adriana Kifan.[2]

A scheduling order issued on September 29, 2020, and was thereafter modified to extend the discovery deadlines and trial dates on August 30, 2021, March 31, 2022, and July 19, 2022. (ECF Nos. 35, 47, 74, 98.)

On June 23, 2021, Plaintiffs filed a motion to compel production of documents as to RFP Nos. 20 and 21 and request for sanctions, which the Court partially granted.  (ECF Nos. 39, 44.) On August 18, 2021, Plaintiffs filed a renewed motion for sanctions regarding the Court's prior order compelling production.  (ECF No. 45.)  This was denied, in part, due to insufficient meeting and conferring on the dispute and motion.  (ECF No. 51.)

On February 10, 2021, Plaintiffs filed a second motion to compel with respect to RFP Nos. 20 and 21.  (ECF No. 60.)  The Court granted this motion, as well as Plaintiff's request for sanctions, subject to a properly-noticed motion for fees.  (ECF No. 69.)

On March 28, 2022 and April 8, 2022, Plaintiffs filed additional motions to compel documents responsive to RFP Nos. 10 and 11 (ECF Nos. 71, 80, 81, 82) and RFP Nos. 20 and 21 (again) (ECF Nos. 77, 78, 79).  The Court ultimately granted Plaintiffs' motion at ECF No. 71, denied as moot the motion at ECF No. 77, ordered Defendants to produce documents responsive to Plaintiffs' RFP Nos. 10, 11, 20, and 21, and re-opened certain depositions.  (ECF Nos. 84, 95.) Plaintiffs were further directed to seek fees and costs associated with meeting and conferring and bringing the motion to compel; the Court additionally granted leave to file a further supplemental fees motion, as warranted, to seek any duplicative costs associated with re-opening the subject depositions.  (ECF No. 95.)

On August 1, 2022, Plaintiffs filed the instant motion for attorneys' fees.  (ECF No. 99.)

---

[2] Defendants Wellpath and CFMG are the third-party service providers who provide mental and medical health care services at the Merced County Jail, the County of Merced, and various employees and agents of each.  As such, Plaintiffs' motions to compel discovery, as discussed herein, are directed specifically at these Defendants, who shall be collectively referred to as "Defendants" for purposes of the instant order, unless otherwise specified.

Defendants failed to timely oppose the motion, and were ordered by the Court to do so.  (ECF No. 103.)  On August 23, 2022, Defendants opposed the motion; on August 31, Plaintiffs filed a reply brief.  (ECF Nos. 105, 106.)  The matter came before the Court for hearing on September 21, 2022, as detailed *supra*, and was taken under submission.

### III.

### DISCUSSION

Plaintiffs' motion for attorneys' fees pertains to fees incurred in seeking productions responsive to RFP Nos. 10, 11, 20, and 21.  As noted, the Court previously granted Plaintiffs' motions to compel production of these RFPs and granted Plaintiffs' request for fees.  (See ECF Nos. 69, 95.)  Therefore, the only issue presently before the Court is the amount of fees that are warranted.  Plaintiffs seek a total of $48,937.75 for fees incurred in connection with time spent meeting and conferring and bringing motions to compel production of documents associated with RFP Nos. 10, 11, 20, and 21, as well as the re-opening of depositions and costs of bringing the instant fees motion.  The parties attempted to meet and confer to reach a stipulated amount, but these discussions were unproductive, ultimately resulting in the instant fees motion.

### A.    Legal Standard

"[U]nder federal fee shifting statutes the lodestar approach is the guiding light in determining a reasonable fee."  Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010) (internal punctuation and citations omitted).  The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts.  First a court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed.  A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary.  Second, a court may adjust the lodestar upward or downward using a multiplier based on factors not subsumed in the initial calculation of the lodestar.  The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably

4

1    high.

2    Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations

3    and punctuation omitted).

4            Under the lodestar method, the Court will first determine the appropriate hourly rate for

5    the work performed, and that amount is then multiplied by the number of hours properly

6    expended in performing the work.   Antoninetti, 643 F.3d at 1176.   The district court has the

7    discretion to adjust the number of hours claimed or the lodestar, but is required to provide a clear

8    but concise reason for the fee award.   Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992).

9    The lodestar amount is to be determined based upon the prevailing market rate in the relevant

10    community.   Blum v. Stenson, 465 U.S. 886, 896 (1984).

11        **B.    Reasonable Hourly Rates**

12            The lodestar amount is to be determined based upon the prevailing market rate in the

13    relevant community, Blum, 465 U.S. at 896 (1984), which in this matter is the Fresno Division of

14    the Eastern District of California.   "To inform and assist the court in the exercise of its discretion,

15    the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's

16    own affidavits—that the requested rates are in line with those prevailing in the community for

17    similar services by lawyers of reasonably comparable skill, experience and reputation."   Blum,

18    465 U.S. at 895 n.11.   "Though affidavits provide satisfactory evidence of the prevailing market

19    rate, they are not conclusive … [and] Courts should rely on their own familiarity with the market

20    … bas[ing] their rates on the standards of the legal community in which the court sits."   Cal.

21    Ass'n of Rural Health Clinics v. Douglas, No. 2:10-cv-00759-TLN-EFB, 2014 WL 5797154, at

22    *3 n.7 (E.D. Cal. Nov. 6, 2014).

23            This Court also relies on its own knowledge of customary legal local rates and experience

24    with the legal market in setting a reasonable hourly rate.   Ingram v. Oroudjian, 647 F.3d 925, 926

25    (9th Cir. 2011).   In the Fresno Division of the Eastern District of California, across a variety of

26    types of litigation, generally, attorneys with experience of twenty or more years of experience are

27    awarded $325.00 to $400.00 per hour; attorneys with ten to twenty years of experience are

28    awarded $250.00 to $350.00 per hour; attorneys with five to ten years of experience are awarded

$225.00 to $300.00 per hour; and less than $200.00 per hour for attorneys with less than five years of experience.  See Freshko Produce Servs., Inc. v. Write On Mktg., Inc., 2019 WL 3798491, at *2–3 (E.D. Cal. Aug. 13, 2019), report and recommendation adopted, 2019 WL 5390563 (E.D. Cal. Oct. 22, 2019) (finding that "[i]n the Fresno Division of the Eastern District of California, attorneys with twenty or more years of experience are awarded $350.00 to $400.00 per hour," that "$300 is the upper range for competent attorneys with approximately a decade of experience," and that the accepted range for attorneys with less than ten years of experience "is between $175 and $300 per hour"; and awarding $350 per hour to attorney with approximately 27 years of experience, and $175 per hour to attorney with "approximately four years of experience) (citations omitted); see also Garcia v. FCA US LLC, No. 1:16-cv-0730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per hour to attorney with nearly thirty years of experience; $300.00 per hour to attorney with nearly fifteen years of experience; $250.00 per hour to attorney with ten years of experience; $225.00 per hour to attorneys attorney with five years of experience; and $175.00 per hour to attorney with less than five years of experience); Est. of Casillas v. City of Fresno, No. 1:16-cv-01042-AWI-SAB, 2020 WL 869117, at *4–5, *11 (E.D. Cal. Feb. 21, 2020), appeal dismissed in part, No. 19-16436, 2020 WL 3470092 (9th Cir. June 5, 2020), and appeal dismissed, No. 19-16436, 2021 WL 3758352 (9th Cir. Aug. 18, 2021) (reducing requested rate of $1,200.00 to $400.00 per hour for attorney with thirty-five years of experience, who was considered "accomplished and reputable … with many [] years of experience in civil rights cases and other types of litigation requiring competent trial work"); Mike Murphy's Enters., Inc. v. Fineline Indus., Inc., No. 1:18-cv-0488-AWI-EPG, 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (awarding $325.00 per hour as requested by attorney with over twenty years of experience; $300.00 per hour as requested by attorney with nearly twenty years of experience; and $250.00 per hour as requested by attorney with seven years of experience); TBK Bank, SSB v. Singh, No. 1:17-cv-00868-LJO-BAM, 2018 WL 1064357, at *8 (E.D. Cal. Feb. 23, 2018), report and recommendation adopted, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding $400.00 per hour to attorneys with over thirty-five years of experience; $350.00 per hour to attorney with twenty years of experience; and $300.00 per hour to attorney

with ten years of experience); <u>Phillips 66 Co. v. Cal. Pride, Inc.</u>, No. 1:16-cv-01102-LJO-SKO, 2017 WL 2875736, at *16 (E.D. Cal. Jul. 6, 2017), <u>report and recommendation adopted</u>, 2017 WL 3382974 (E.D. Cal. Aug. 7, 2017) (awarding $400.00 per hour to attorney with twenty years of experience); <u>Roach v. Tate Publ'g & Enters.</u>, No. 1:15-cv-00917-SAB, 2017 WL 5070264, at *10 (E.D. Cal. Nov. 3, 2017) (awarding $325.00 per hour to attorney with sixteen years of experience in copyright action); <u>Sanchez v. Frito-Lay, Inc.</u>, No. 1:14-cv-00797-AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015) (awarding $350.00 per hour to attorneys with more than twenty years of experience in wage and hour class action; and $275.00 per hour to attorney with fourteen years of experience); <u>Englert v. City of Merced</u>, No. 1:18-cv-01239-NONE-SAB, 2020 WL 2215749, at *13 (E.D. Cal. May 7, 2020) (awarding $450.00 per hour to partner with nineteen years of experience; $400.00 per hour to senior associate attorney with an unspecified number of years of experience; and $325.00 per hour to associate with eight years of experience).

      1.    <u>Attorney Rates</u>

This Court previously concluded that a reasonable rate for Christofferson was $375.00 per hour, and a reasonable rate for Lisieski was $200.00 per hour.[3]  (ECF No. 44 at 25.)  However, the determination of these rates was based on the Court's own familiarity with the relevant legal market, and the scant information provided by Plaintiffs.  Notably, Plaintiffs did not present any caselaw or other support for their requested hourly rates, such as arguments concerning the reasonableness of their requested rates, or affidavits regarding the skill, experience or reputation of their attorneys.  (<u>See id.</u> at 22–23.)  Accordingly, the Court conducted an independent review of the California Bar Association database to determine for its analysis that Christofferson had over twenty years of experience and Lisieski had less than five years.  (<u>See id.</u> at 22–25.)

In the instant motion, by contrast, Plaintiffs provide caselaw and attorney declarations in support of their proffers that each attorney's fee rate is commensurate with his experience and is reasonable:

Counsel Jay A. Christofferson graduated from the University of the Pacific McGeorge

---

[3] This prior determination is in reference to the Court's July 30, 2021 order granting Plaintiffs' first motion to compel, in which it also awarded Plaintiffs attorneys fees with respect to that motion in the amount of $3,607.50. (<u>See generally</u> ECF No. 44.)

School of Law in 1999, has approximately twenty-three years of experience, and has been recognized as a "Super Lawyer" by Super Lawyers Magazine in the 2014—2022 editions of Northern California Super Lawyers.  Mr. Christofferson is also currently a shareholder at Wanger Jones Helsley.  (ECF No. 99-1 at 9; Christofferson Decl. ¶¶ 1, 6–7, ECF No. 99-4.)  Mr. Christofferson's normal billing rate was $375.00 per hour, pre-January 16, and $415.00 per hour, post-January 16.[4]  (ECF No. 99-1 at 8, 12.)  The work Christofferson performed on this case includes conducting the depositions of Amanpreet Atwal and Keriann Quinn-Fitzpatrick. (Christofferson Decl. ¶ 3.)

Counsel Christopher A. Lisieski graduated from the University of Virginia School of Law in 2014 and became a member of the Virginia bar in October 2014; he later became a member of the California bar in September 2018.  Mr. Lisieski therefore has a cumulative total of seven and a half years of litigation experience between his practice as a California attorney and his experience as an attorney in Virginia.  Mr. Lisieski has been an associate attorney at Wanger Jones Helsley since October 1, 2018; prior to joining Wanger Jones Helsley, Mr. Lisieski clerked for Judge Dale A. Drozd, U.S. District Judge for the Eastern District of California, and worked as a staff attorney at the Virginia Capital Representation Resource Center.  Mr. Lisieski was recognized as a "Super Lawyer" and a "Rising Star" by Super Lawyers Magazine in 2022.  (ECF No. 99-1 at 10; Lisieski Decl. ¶¶ 1, 4–6, ECF No. 99-3.)  Mr. Lisieski's normal billing rate was $265.00 per hour, pre-January 16, and $325.00 per hour, post-January 16.  (ECF No. 99-1 at 8.) The work Lisieski performed on this case includes conducting the deposition of Jessica Ramirez-Aguilar, meeting and conferring with Defendants regarding RFP Nos. 10, 11, 20, and 21 as well as the subsequent fees award, and the instant fees motion.  (Lisieski Decl. ¶¶ 3, 7, 8.)

Counsel Nathan J. Martin graduated from the San Joaquin College of Law in 2021.  He became a member of the California Bar in November 2021, and has been practicing with Wanger

---

[4] The billing rates for Plaintiffs' counsel increased, effective January 16, 2022.  (ECF No. 99-1 at 8 n.1.)  Plaintiffs proffer that the rate increase occurred "across-the-board" for all attorneys at Wanger Jones Helsley; further, the standard rate increase was meant to reflect rising costs due to inflation, the experience gained by the attorneys since the last rate increase, and the increased rates charged by Fresno-area civil litigation firms, in general.  (Christofferson Decl. ¶ 12.)  Thus, with respect to work performed relating to RFP Nos. 20 and 21, counsel's billing records reflect two different fee rates.  With respect to work performed relating to RFP Nos. 10 and 11 and the preparation of the instant fees motion, only the most recent rates was applied to Plaintiffs' billings.

1    Jones Helsley since September 2021.  (ECF No. 99-1 at 10; Martin Decl. ¶¶ 3–5, ECF No. 99-2.)

2    Mr. Martin's normal billing rate was $190.00 per hour, pre-January 16, and $235.00 per hour,

3    post-January 16.  (ECF No. 99-1 at 8.)

4         Notably, Defendants made no specific arguments concerning the reasonableness of the

5    rates requested.  See Ingram, 647 F.3d at 926 ("As Defendants fail to submit any evidence

6    challenging the accuracy and reasonableness of Plaintiffs' attorneys' fees, Defendants waive their

7    objections to the motion.  See Local Rule 230(c).") (citations omitted).

8         Based on the foregoing caselaw and proffers of experience, the Court finds that the

9    requested rates for attorneys Christofferson and Lisieski fall within the range of rates determined

10   by courts in this District to be reasonable and are therefore reasonable.  See, e.g., Freshko, 2019

11   WL 3798491, at *2–3; Phillips 66 Co., 2017 WL 2875736, at *16; Casillas, 2020 WL 869117, at

12   *4–5, *11; Englert, 2020 WL 2215749, at *13.

13        With respect to the requested rate for attorney Martin, however, the Court finds the

14   reduced rate of $175.00 per hour is reasonable.  This finding is based on the facts that Mr. Martin

15   has been a practicing attorney for less than a year, and his work for Wanger Jones Helsley from

16   September to November 2021 was conducted before he became a member of the Bar.  See

17   Garcia, 2018 WL 1184949, at *6.  Additionally, because the "across the board" rate increases at

18   Wanger Jones Helsley increased Mr. Martin's hourly rate a mere two months after he became a

19   practicing attorney, the Court cannot conclude the rate increase in Mr. Martin's case reflects "the

20   experience gained by the attorneys since the last rate increase," and instead finds application of a

21   single rate of $175.00 for all of Mr. Martin's work is appropriate here.

22        Furthermore, the Court notes Nathan proffers some of his time was spent "assist[ing] in

23   the preparation and review of documents in connection with the aforementioned RFPs and [the

24   instant] motion for attorneys' fees," (Martin Decl. ¶ 3), which is not described in any further

25   detail in Martin's declaration attached to the instant fees motion, but appears to have been

26   described in more detail in a prior declaration as a simple review of documents to determine

27   whether files were missing from the ESI production, without any substantive review of the

28   production.  (See ECF No. 65 (prior Martin Decl.) (describing his document review in this case as

9

"manually reviewing the Natives and Images folders of this production to determine whether all documents have been produced.  I have reviewed approximately 2,000 pages of the documents provided to date and have located more than 50 documents that are apparently missing from the production.  By 'missing,' there is a Bates Number that exists for a document, but there is no corresponding file in either the Natives or Images folders.")).  The Court finds such "document review" is commensurate to work that may typically be performed by a paralegal.  See Trs. of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co., 460 F.3d 1253, 1256–57 (9th Cir. 2006) (on ERISA case, noting work performed by non-attorneys such as paralegals may be billed separately, and "even purely clerical or secretarial work is compensable if it is customary to bill such work separately, … *though such tasks 'should not be billed at the paralegal rate, regardless of who performs them.'* ") (internal citations omitted) (emphasis added); see also Yeager v. Bowlin, No. CIV 2:08-102 WBS JFM, 2010 WL 2303273, at *7 (E.D. Cal. Jun. 7, 2010), aff'd, 495 Fed. App'x 780 (9th Cir. 2012) ("[P]aralegal work should  be billed at  an appropriate rate, regardless of the status of the person actually undertaking the work."; and finding tasks undertaken by attorney that should be billed at paralegal rate include, for example: preparing a discovery timetable, document organization, correspondence over deposition dates, preparing cover sheets, e-filing documents, scheduling matters, preparing boilerplate documents, and organizing case files) (citations omitted).  As such, the Court shall apply the reasonable rate (as discussed below) of $100.00 per hour for billing entries related to such document review.[5]

2.     Paralegal Rates

Plaintiffs proffer that paralegal Karen P. Manriquez's normal billing rate is $185.00 per hour.  (ECF No. 99-1 at 8; Christofferson Decl. ¶ 8.)  However, other than identifying Ms. Manriquez as a paralegal, Plaintiffs fail to identify her education and experience so as to justify

---

[5] To the extent the billing records reflect entries by the other attorneys, Christofferson and Lisieski, that similarly describe such document review or case management/calendaring-related communications that would otherwise be characterized as "paralegal work," Yeager, 2010 WL 2303273, at *6–7, the Court shall similarly apply the paralegal rate of $100.00 per hour to such entries.  For example, an attorney billing entry for 0.10 hours on 8/09/21, to "Follow-up on status of e-discovery from WellPath" (ECF No. 99-4 at 7), may reflect the attorney's internal communications with staff as to whether a production was received or being reviewed, or a brief communication to opposing counsel asking for an expected date to receive production; in any event, the entry sounds in the type of paralegal work (such as "case management, scheduling matters, correspondence over deposition dates …") for which the paralegal hourly rate should be applied.

10

the requested rate of $185.00.  See Freshko, 2019 WL 3798491, at *3 (reducing hourly rate to $100.00, where counsel provided no supporting information about paralegal's experience to justify requested "upper rate of $150") (citation omitted); see also Yeager, 2010 WL 2303273, at *6 (noting the paralegal rate "favored" in the Eastern District of California is $75.00 per hour). Accordingly, the Court finds the hourly paralegal rate of $100.00 is reasonable here.  Id.

### C.   Reasonable Attorney and Paralegal Time Expended

As noted, Plaintiffs seek a total fees amount of $48,937.75.  More specifically, Plaintiffs seek $23,587.00 for fees incurred in seeking productions related to RFP Nos. 20 and 21 (ECF No. 99-1 at 8); $12,144.50 for fees incurred related to RPF Nos 10 and 11 (Id. at 12); and $9,040.00 for fees incurred in their meet and confer efforts to secure a stipulation for reasonable fees and bringing the instant fees motion (Id. at 13).  The Court shall address each request in turn.

### 1.   Request for Fees Incurred Relating to RFP Nos. 20 and 21

As noted, Plaintiffs seek $23,587.00 for fees incurred in seeking productions related to RFP Nos. 20 and 21.  (Id. at 8.)  This is based on Plaintiffs' calculations using their proffered hourly rates and declarations indicating that Christofferson incurred 5.7 hours (id.; Christofferson Decl. ¶ 5, Ex. A, ECF No. 99-4), Lisieski incurred a total of 48.0 hours (ECF No. 99-1 at 8; Christofferson Decl. ¶ 5, Ex. A), Martin worked a total of 27.0 hours (id.), and paralegal Manriquez worked a total of 0.1 hours.  (ECF No. 99-1 at 8; Christofferson Decl. ¶¶ 5, 8, Ex. A.)

### a.   The Disputed Discovery Requests

Plaintiffs initially served RFP Nos. 20 and 21 on October 21, 2020.[6]  (ECF No. 99-1 at 3.) RFP No. 20 requested the following:

> Please produce all DOCUMENTS REGARDING, REFERRING OR RELATING TO or showing reports, data, schedules, or analyses of in-custody deaths in facilities for which YOU, CFMG, or any related or predecessor entity was contracted to provide medical and mental healthcare.

(ECF No. 107 at 8.)

---

[6] While the RFP Nos. 20 and 21 reproduced herein specifically reference CFMG, the Court notes Plaintiffs also sent requests to Defendant Wellpath which are identical to the RFP Nos. 20 and 21 sent to CFMG, but for referencing Wellpath instead of CFMG.  As such, the parties and Court address these RFPs as they pertain to both responding defendants.

RFP No. 21 requested the following:

> Please produce all DOCUMENTS REGARDING, REFERRING OR RELATING TO or showing any budgets, financial analyses, projections of revenue, costs, or profits, audits, or other financial documents related to the provision of medical and mental healthcare by YOU, CFMG, or any related or predecessor entity at the MERCED COUNTY JAIL.

(See ECF No. 44 at 11.)

**b.**  **Summary of Meet and Confer Efforts, and Relevant Orders Granting Fees**

  i.   First Motion to Compel

Defendants served initial responses on December 7, 2020.  (ECF No. 99-1 at 3.)  Plaintiffs objected to these responses as deficient and consisting largely of objections.  In fact, prior to June 2021, Defendants had only produced one page in response to RFP No. 20 and two pages of financial records in response to RFP No. 21; no emails or other electronic documents were produced.  (See ECF No. 44 at 5, 18.)  Defendants' initial production in response to RFP No. 21 consisted of objections that the request was burdensome and oppressive, and that financial documents were "protected by the State and Federal Constitutions"; fifty-six pages of documents were also produced at that time, which reflected the contract for services between Defendants and Merced County.  (Id. at 11.)

The parties met and conferred in January 2021, and reached an agreement to produce documents on February 9, 2021, following entry of a stipulated protective order, which occurred on February 25, 2021.  (ECF No. 107 at 3; ECF No. 69 at 7.)  As to RFP No. 20, they agreed for Defendants to produce "only macro-level analysis and data: summary reports or after action reports of deaths (particularly suicides), compilations of data showing in-custody deaths (particularly in-custody suicides), and memoranda, notes, e-mails, and other documents which discuss or analyze that generalized data and information" for the time period of the last ten years prior to Ms. Snider's death (i.e., from March 23, 2009—March 23, 2019).  (ECF No. 107 at 3; ECF 40-4 at 47, 58, 61.)  As to RFP No. 21, the only basis for nonproduction was the absence of a protective order; a protective order was entered on February 25, 2021.  (See ECF No. 44 at 11.)  Plaintiffs received supplemental responses in June 2021.  (ECF No. 99-1 at 3; ECF No. 69 at 7–

8.)

Defendants' June 2021 supplemental production to RFP No. 20 consisted of 23 pages of documents, with no emails, direct messaging, notes, text messages, correspondence, letters, or memoranda.  (See ECF No. 44 at 7; ECF No. 99-1 at 3.)  As to RFP No. 21, Defendants indicated the 2 pages of financial records previously produced was all that was responsive to Plaintiffs' request.  (ECF No. 44 at 12; ECF No. 99-1 at 3.)   During meet and confer discussions, Defendants advised (for the first time) that they had conducted no email or other electronic document searches and were having difficulty formulating searches to gather responsive documents, and requested Plaintiffs provide search terms.  Plaintiffs replied that they could not formulate precise search terms that would work for Defendants' computer information systems without further knowledge about those systems, but Defendants provided no further response to Plaintiffs' request for information on the search terms to be used, general feedback about Defendants' electronic records systems, management, or search capabilities, or the identification of the relevant custodians for these searches.  (See ECF No. 44 at 8, 12; ECF No. 107 at 3; see also ECF No. 40-4 at 110, 116–19, 121, 127; ECF No. 40-3 ¶ 21.)  Plaintiffs filed their first motion to compel on the basis that Defendants' productions were deficient.  (ECF Nos. 39, 44.)  At the hearing on the motion to compel, Defendants asserted that, with respect to RFP No. 20, searches for electronically stored information ("ESI") had been conducted, except as to a search of custodial emails; regarding RFP No. 21, Defendants reiterated that, based on their recent search, they concluded they had produced all relevant documents.  (ECF No. 44 at 13.)

The Court granted Plaintiffs' first motion to compel on July 30, 2021.  (ECF No. 44.)  Specifically, the Court found the extreme sparseness of Defendants' productions indicated a lack of diligence and that the responses were incomplete.  (See id. at 18–19.)  Furthermore, the extreme delay in production was not reasonable.  For example, while Defendants initially refused to produce documents responsive to RFP No. 21 due to the absence of a protective order, even after the stipulated protective order was entered in this case, they delayed another four months before producing supplemental documents.  Similarly, the Court determined the failure to conduct any ESI searches for documents responsive to Plaintiffs' requests (served in October 2020) until

after the motion to compel was filed (in June 2021)—even though the discovery requests expressly included production of ESI—not only demonstrated the necessity of Plaintiffs' motion, but also amounted to an unreasonable delay.  (See id. at 17.)  Further, the Court found the onus on providing the ESI search terms fell on Defendants.  The Court therefore ordered Defendants to produce responses and documents responsive to Plaintiffs' RFP Nos. 20 and 21, and recommended Defendants conduct a further search for ESI.  Plaintiffs' request for attorneys' fees was also granted with respect to this motion, in part, and Plaintiffs were awarded fees in the amount of $3,607.50.  (See id. at 20–25.)

ii.      Second Motion to Compel

In response to the Court's July 2021 order, Defendants produced supplemental responses and documents on August 18, 2021.  (ECF No. 69 at 8.)  However, Defendants' supplemental productions were also deficient because they were "riddled with errors, contained password protected documents, were unorganized, and did not include a standard load file[7] allowing access to the documents in a useable way."  (ECF No. 107 at 3–4; see also ECF No. 69 at 8.)  Plaintiffs also complained the productions lacked "basic metadata and unique numerical identification (such as a Bates number), as well as [identification of] which [of the 700,000] documents are being produced in response to which RFP."  (ECF No. 69 at 6, 8.)  The parties met and conferred on these matters in August 2021, and Defendants agreed to produce compliant responses by September 28, 2021; however, no documents were produced on that date.  (Id. at 8–9.)  Further meet and confer attempts continued through September and October, during which time Defendants conveyed to Plaintiffs that the re-production was still in process but would be completed soon; meanwhile, the parties agreed to proceed with certain depositions which were unlikely to be impacted by the outstanding production of documents.  (Id. at 8.)

---

[7] As the Court has noted in its prior orders, "[a] load file is a 'file that relates to a set of scanned images or electronically processed files, and indicates where individual pages or files belong together as documents, to include attachments, and where each document begins and ends,' and may also include 'data relevant to the individual documents, such as metadata, coded data, text, and the like.' "  Aguilar v. Immigr. & Customs Enf't Div. of U.S. Dep't of Homeland Sec., 255 F.R.D. 350, 353 (S.D.N.Y. 2008) (quotation omitted).  Plaintiffs have emphasized that load files are commonplace in discovery, as they are essentially the means of transferring metadata in a useable format; are easily and automatically compiled by e-discovery programs in the course of rendering an ESI production. See also CBT Flint Partners, LLC v. Return Path, Inc., 737 F.3d 1320, 1332 (Fed. Cir. 2013); McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co., 322 F.R.D. 235, 250 (N.D. Tex. 2016).

14

The re-production was completed on October 15, 2021; however, Plaintiffs discovered this production was also deficient in that it was still disorganized, lacked metadata and identifying pagination or reference to which RFP they were responsive to, and were not accessible in their original formats.  (Id. at 8–9.)  The parties continued to meet and confer, including communications between their respective technical consultant/IT administrator to confer on certain technical issues, in November and December 2021.  (Id. at 9.)

Production was delayed in December 2021, due to a computer crash requiring Defendants' technical consultant to "start over"; it was delayed again in January 2022, because Defendants' technical consultant had been in a car accident.  (ECF No. 69 at 9–10.)  Plaintiffs began receiving productions on a rolling basis on January 5, 2022; however, these productions were also deficient in that they were missing native files and load files.  (Id. at 10.)  A January 18, 2022 production was similarly flawed, in that Plaintiffs had located dozens of files that were missing or password protected.  (Id.)  Plaintiffs continued to meet and confer with Defendants on these issues through February 2022.  (Id. at 10–11.)  On February 21, 2022, Defendants told Plaintiffs to "disregard any and all previously document productions as they were produced incorrectly and possibly contain privileged material," but later communicated this was "applicable to Wellpath's e-mail productions only."  (Id. at 6–7, 11.)

On February 10, 2022, Plaintiffs filed their second motion to compel responses to RFP Nos. 20 and 21, due to the aforementioned delays, incomplete productions, and lack of clarity as to which documents had been "produced" based on Defendants' communications; the Court granted the motion in March 2022.  (See ECF Nos. 60, 69.)  More specifically, the Court ordered Defendants to produce all documents responsive to Plaintiffs' RFP Nos. 20 and 21, "with a standard load file, any necessary passwords, and organized in a matter compliant with Federal Rules of Civil Procedure 34 including identification of which documents are responsive to which Request for Production."  (ECF No. 69 at 22.)  Further, the Court granted Plaintiffs' request for sanctions in the form of fees but denied Plaintiffs' request for sanctions in the form of adverse inference instructions.  (Id.)  As to the fees, however, the Court awarded Plaintiffs "fees incurred throughout this discovery dispute," in an amount to be determined through a fully-briefed motion

at a later date, and indicated it was "nearly fully inclined" to award Plaintiffs "retrospective fees" with respect to fees incurred in the following categories:

> [(]1) the time Plaintiffs have spent reviewing the deficient document productions; (2) the time Plaintiffs have spent meeting-and-conferring with Defendants about these deficient document productions; (3) the time Plaintiffs have spent briefing this second motion to compel; and (4) compensation for the time and resources spent by Plaintiffs' IT administrator attempting to assist Defendants and performing quality control reviews of Defendants' productions. The Court encourages Defendants to consider stipulating to a reasonable amount of attorneys' fees as to these categories of expenses, or limiting their objections to those fees that Plaintiffs would have incurred in a normal discovery process without the repeated failures and issues presented by the Defendants' untimely and technologically deficient electronic productions.

(Id. at 16–17.) The Court noted it was "somewhat less inclined," however, to award future fees incurred in reviewing Defendants' supplemental documents produced in response to its order, unless the additional expenses in reviewing the new documents were incurred "in relation to or as caused by the Defendants' erroneous productions, and Plaintiffs would not have incurred such future discovery costs in the normal discovery process." (Id. at 17.)

Plaintiffs note that, subsequent to the Court's order, Defendants have produced several thousand additional pages of documents responsive to this initial discovery request. (ECF No. 99-1 at 2.)

### 2. Request for Fees Incurred Relating to RFP Nos. 10 and 11

As noted, Plaintiffs seek $12,144.50 for fees incurred in seeking productions related to RFP Nos. 10 and 11. (Id. at 12.) This is based on Plaintiffs' calculations using their proffered hourly rates and declarations indicating that Christofferson worked a total of 5.3 hours, and Lisieski worked a total of 30.6 hours. (Id.; Christofferson Decl. ¶ 11, Ex. B, ECF No. 99-4 at 30–41.)

#### a.    The Disputed Discovery Requests

Plaintiffs initially served RFP Nos. 10 and 11 on October 21, 2020. (ECF No. 99-1 at 4.) RFP Nos. 10 and 11 sought "all documents regarding, referring, or relating to policies, procedures, protocols or practices" concerning suicide prevention and mental health treatment applicable to Defendants' services in the Merced County Jail from January 1, 2015 onward. (Id.)

16

### b.     Summary of Meet and Confer Efforts

Defendants served responses on December 7, 2020.   (Id.; ECF No. 82-1, Ex. B.) Defendants did not object to the requests but instead indicated that "[a]ny and all documents responsive to this request would be found at bates numbers CFMG-RS 000325—CFMG-RS 000504 produce with responding party's initial disclosures."  (ECF No. 99-1 at 4.)  In reliance on this response, Plaintiffs proceeded with the depositions of Amanpreet Atwal, Jessica Ramirez-Aguilar, and Keriann Quinn-Fitzpatrick.  (See ECF No. 99-1 at 5; Christofferson Decl. ¶ 3; Lisieski Decl. ¶ 3.)

Thereafter, Plaintiffs deposed Terrie Vince, the mental health therapist for Wellpath who works at the Merced County Jail that saw Ms. Snider during her incarceration prior to her death. (ECF No. 99-1 at 5.)  At her deposition, however, Ms. Vince indicated that there were additional documents showing Wellpath's policies, procedures, protocols, or practices in relation to suicide prevention and mental health treatment other than what was contained in the sole document previously produced by Defendants; she also mentioned various "mental health evaluation forms" and a "suicide assessment form" that were routinely used in working for Defendants, which Plaintiffs had not previously received in response to RFP Nos. 10 or 11.  (Id.)

Plaintiffs immediately paused the deposition and began meeting and conferring with Defendants regarding the failure to produce such documents prior to the deposition.   (Id.) Plaintiffs maintain they would not have taken the depositions of Amanpreet Atwal, Keriann Quinn-Fitzpatrick, or Jessica Ramirez-Aguiar prior to production of such documents, had they known such documents existed.   (See id.; Christofferson Decl. ¶ 3; Lisieski Decl. ¶ 3.) Defendants, in response, maintained that the documents referenced by Ms. Vince were not responsive to RFP Nos. 10 or 11.  (ECF No. 99-1 at 5.)  Plaintiffs then suspended the remainder of Ms. Vince's deposition and Defendants, at that time, advised they would not make Ms. Vince for a further deposition.  (Id.)

Thereafter, Plaintiffs' meet and confer efforts continued over the course of multiple letters.  (Id.)  On April 6, 2022, Defendants provided a supplemental production of documents

1  responsive to RFP Nos. 10 and 11, totaling approximately 1,300 pages.[8]  (Id.; ECF No. 84 at 5.)

2  On March 28, 2022, Plaintiffs filed a motion to compel documents responsive to RFP Nos. 10

3  and 11 and sought sanctions.  (ECF Nos. 71, 80, 81, 82.)

4       On May 4, 2022, the Court granted Plaintiffs' motion as to RFP Nos. 10 and 11, but

5  continued the matter of sanctions to June 15, in order to permit the parties to further meet and

6  confer and to attend an in-person informal discovery conference to settle any remaining disputes.

7  (ECF No. 84 at 5–7.)  An informal discovery conference took place on May 24, 2022, alongside

8  telephonic and email communications; thereafter, the parties notified the Court that the issues had

9  been resolved and vacated the conference with the Court.  (See ECF No. 87; ECF No. 95 at 4.)

10      On June 8, 2022, however, Plaintiffs notified the Court in a unilateral supplemental

11  statement of discovery dispute that the ongoing dispute regarding RFP Nos. 10 and 11 remained

12  unresolved.  (See ECF No. 90 at 2–3.)  Plaintiffs sought a further order compelling production of

13  outstanding documents response to RFP Nos. 10 and 11, monetary sanctions, and re-opening the

14  previously completed depositions so that Plaintiffs could question the deponents about the after-

15  produced policy documents.  (See ECF No. 95 at 4.)  Defendants' response indicated they were

16  still trying to determine whether there was any ESI documentation responsive to Plaintiffs' RFP

17  Nos. 10 and 11, but had previously produced all site-specific documents for Merced County in

18  substantial compliance with the requests.  (Id. at 5.)

19      On June 24, 2022, following a hearing on the matter, the Court ordered Defendants to

20  produce responsive documents to Plaintiffs' RFP Nos. 10, 11, 20, and 21 and re-opened the

21  depositions of Amanpreet Atwal, Keriann Quinn-Fitzpatrick, and Jessica Ramirez-Aguiar for the

22  limited purpose of questioning the witnesses about the policy documents produced in response to

23  RFP Nos. 10 and 11 after their original depositions were conducted.  (Id. at 8–9.)  Plaintiffs were

24  further directed to seek fees, as warranted, for this additional discovery.  More specifically, the

25  Court granted Plaintiffs' request for attorneys' fees incurred in meeting and conferring and

26  bringing the March 28, 2022 motion to compel and ordered Plaintiffs to file a fees motion.  (Id.)

27  _____

[8] A subsequent discovery dispute statement from Plaintiffs indicates the number of documents produced in
28  supplemental productions from Defendants regarding RFP Nos. 10 and 11 later increased to 4,300 documents.  (See
ECF No. 95 at 1–2.)

The Court also indicated, however, that it would consider a subsequent request for fees associated with re-opening the depositions, to the extent Plaintiffs incurred duplicative costs resulting from Defendants' untimely production.  (See id. at 9.)

### 3. Time Expended in Preparing the Instant Fees Motion

As noted, Plaintiffs seek $9,040.00 for fees incurred in meet and confer discussions with respect to seeking a stipulation for reasonable fees and preparing the instant motion.  (ECF No. 99-1 at 13.)  This is based on Plaintiffs' calculations using their proffered hourly rates and declarations indicating that Christofferson worked a total of 2.8 hours, Lisieski worked a total of 9.2 hours, and Martin worked a total of 20.8 hours.  (Id.; Christofferson Decl. ¶ 13, Ex. C, ECF No. 99-4 at 42–45.)  Lisieski further anticipated it would take him 3.0 hours to review Defendants' opposition to the instant fees motion and draft a reply, and 2.0 hours to prepare for, travel to, and attend the hearing on the motion for attorneys' fees in this matter.  (Lisieski Decl. ¶ 8.)

### 4. Parties' Arguments

Plaintiffs argue the amount of time incurred with respect to RFP Nos. 20 and 21 "was directly caused by Defendants' insufficient responses, which necessitated significant amounts of time to review the documents produced, identify the issues therein, and request changes from the Defendants."  (ECF No. 99-1 at 11; Christofferson Decl. ¶ 10.)  With respect to RFP Nos. 10 and 11, Plaintiffs argue the amount of time they expended meeting and conferring with Defendants and preparing their second motion to compel was necessitated by Defendants' refusal to re-produce witnesses for depositions after Plaintiffs discovered that not all relevant policy documents had been produced—a position that Defendants maintained until the hearing on the motion.  (ECF No. 99-1 at 12–13.)

In opposition, Defendants argue sanctions are altogether unwarranted or, in the alternative, Plaintiffs' fees request is excessive.[9]  (ECF No. 105.)  Defendants indicate much of

---

[9] To the extent Defendants argue *no* sanctions are warranted, the Court notes it has substantially considered and rejected such arguments when it awarded Plaintiffs monetary sanctions in its prior orders granting Plaintiffs' motions to compel.  (See ECF No. 69 at 15–17, 22 (granting motion and only "declin[ing] to make a definitive ruling as to the extent of attorneys' fees that the Court will award"); see also ECF No. 44 at 17–21 (considering and rejecting Defendants' arguments that sanctions were unwarranted because search terms were not provided until July 1, 2021,

the necessity for meeting and conferring on RFP Nos. 20 and 21 was due to the vagueness, overbreadth, and volume of Plaintiffs' requests; moreover, Defendants maintain Plaintiffs' "fail[ure] to personally contact Defendants regarding what documents they were requesting," and instead sending extensive and unclear letters that "buried [their requests] in pages of repetitive law," and their general attitude of mistrust resulted in unproductive meet and confer communications.  (See id. at 2, 5–7.)[10]  Further, Defendants argue they did not engage in delaying or harassing tactics; rather, their efforts demonstrate only a good faith attempt to produce documents to Plaintiffs.  (See id. at 2–3, 5.)  This is, Defendants maintain, demonstrated by the fact that of the hundreds of discovery requests to which Defendants adequately responded, Plaintiffs have only taken umbrage with this limited number of requests.   (See id. at 2.) Defendants argue Plaintiffs should not be permitted to recover fees relating to discovery review that they would naturally expend in the course of litigation upon receiving documentation produced in response to their requests.  (Id. at 6–7.)  Finally, Defendants argue Plaintiffs should not be awarded fees related to the privilege log dispute concerning RFP No. 20, as they conceded that matter was resolved after appropriate meeting and conferring.  (See id. at 4–6.)

    5.    Reasonable Number of Hours

    The Court has considered the totality of the circumstances, as previously detailed, and breadth of discovery in this matter, and finds fees incurred for the time Plaintiffs spent reviewing deficient document productions, meeting-and-conferring with Defendants about these deficient document productions and the need to reopen depositions, and briefing and arguing the February 10, 2022 and March 28, 2022 motions to compel (ECF Nos. 60, 71) are recoverable.  Further,

---

or suggestion that the onus was on Plaintiffs to establish Defendants' ESI search terms; that the "admitted delay" in production did not demonstrate bad faith; Defendants' emphasis that they properly responded to over 300+ other discovery requests, without issue; and objections that Plaintiffs' requests were overbroad).)  Therefore, to the extent Defendants' arguments seek to relitigate these issues upon which the Court has already ruled, such arguments are unavailing.

[10] The Court does note Defendants provide a lengthy quote in support of their argument, stating that they "advised the Court, *to which the Court agreed*, 'there has been a profound breakdown in communication by all counsel … largely attributable to the constant threats of sanctions and motion filing by plaintiffs,'" and "culture of 'gotcha' litigation being driven by plaintiffs' counsel …" (ECF No. 105 at 7 (citing ECF No. 80 at 19:9–15) (emphasis added)), which appears to slightly misinterpret the record, as Defendants are quoting their own argument from the April 20, 2022 joint statement of discovery dispute, but the Court can find no particular reference in the record in which it expressly agreed with this passage of Defendants' characterization of the meet and confer process.

1   while Defendants argue Plaintiffs' motions to compel were largely premature, the Court finds

2   such arguments unpersuasive in light of the oppositional language in Defendants' joint statement

3   letters and the fact that Defendants did not agree to re-open the subject depositions or make

4   certain supplemental productions until at the hearings on the motions to compel.

5        However, the Court declines to award fees related to the meeting and conferring leading to

6   the April 8, 2022 motion and related statements (ECF Nos. 77, 78, 79), as related to RFP Nos. 20

7   and 21, as the Court previously determined further meeting and conferring was required at that

8   time.  (See ECF No. 84 at 6–8; see also ECF No. 87 (setting informal discovery conference); ECF

9   No. 79 (Lisieski declaration detailing meet and confer efforts related to the privilege log issue,

10  some of which appear to overlap in the billing records for the instant fees motion); see also, e.g.,

11  ECF No. 99-4 at 10 (billing entries for drafting meet and confer letters "regarding privilege log

12  for Wellpath's FRPs Round One").)  Indeed, Plaintiffs conceded on June 8, 2022, that the

13  privilege log disputes regarding RFP Nos. 20 and 21, following further meet and confer efforts,

14  had been resolved by that time, and the Court ultimately denied the April 8, 2022 motion to

15  compel as moot.  (See ECF No. 90 at 2; ECF No. 95 at 4, 8.)  Accordingly, to the extent such

16  time has not already been redacted by Plaintiffs, it shall be reduced by the Court.

17       Furthermore, the Court finds a reduction of time is appropriate where the billing entries

18  appear duplicative or excessive.  For example, the Court notes on 8/5/21, Christofferson billed

19  0.10 hours for "[r]eceipt and review the letter from Jemma Saunders [opposing counsel]

20  regarding the production"; then on 8/6/21, he billed 0.20 hours for "receipt and review the letters

21  from counsel regarding the proposed production of documents."  Meanwhile, that same day

22  (8/6/21), Lisieski also billed 0.10 hours to "[r]eview correspondence from opposing counsel

23  regarding document production."  (ECF No. 99-4 at 7.)  Since the billing entries lack further

24  information detailing the correspondence reviewed or the aspect of "the production," it appears to

25  the Court that the nearly identical same-day entries relate to a review of the same communications

26  from opposing counsel by two different attorneys, thus overlapping or duplicating the work

27  performed.  In another example, two different attorneys both billed time on the exact same day

28  for attending a phone call with opposing counsel.  (See id. at 11.)  In yet another example, the

Court notes Exhibit A, which reflects billing entries related to RFP Nos. 20 and 21 (for the time period of August 1, 2021 through July 8, 2022), includes a billing entry for compiling estimates of costs and attorneys' fees to date[11] and meeting and conferring with opposing counsel regarding fees (see id. at 17); whereas Exhibit C is proffered as all of the billing entries for time incurred related to meeting and conferring on fees and preparing the fees motion (for the overlapping time period of June 20, 2022 through August 1, 2022), and includes multiple entries related to compiling billing documents and conferring with opposing counsel (see generally ECF No. 99-4 at 42–45).  In addition, the Court notes Plaintiffs have billed over 28 hours in preparing meet and confer letters; Defendants' assertion that a phone call would have, at times, sufficed, is well-taken.  Regardless, spending two hours or more to draft each meet and confer letter (see, e.g., ECF No. 99-4 at 9 (two hours billed to draft meet-and-confer letter to Defendants regarding "data dump" in response to RFP Nos. 20 and 21, followed by 0.3 hours to "review and finalize" same letter)), appears excessive.  Furthermore, thereafter, Plaintiffs bill over 13 hours for drafting one motion to compel, and 23 hours for drafting the fees motion.  In light of the detailed nature of the meet and confer letters, which set forth the same position Plaintiffs later take in their moving papers, the Court finds these billing amounts also appear somewhat duplicative and excessive.  In another example of billing that the Court deems excessive, the Court notes Martin billed 1.8 hours to draft two stipulations (regarding attorneys' fees and modifying the scheduling order); Lisieski then billed 0.4 hours to review and revise the stipulations; Christofferson thereafter billed 0.3 hours to also revise the stipulations; and then, the same day, Lisieski again billed 0.7 hours to review and revise the draft stipulations.  (ECF No. 99-4 at 44.)  In sum, while Plaintiffs argue the time they expended was reasonable because they "made every effort throughout the case to avoid duplication of tasks performed and assigned work on the case to attorneys or paralegals at the appropriate skill level and hourly rate" (ECF No. 99-1 at 10; Christofferson Decl. ¶ 10), the Court finds this singular statement, without more, is conclusory and appears belied by the various aforementioned billing entries.  The fees shall be reduced accordingly.

---

[11] The Court additionally notes that the "compiling" of billing records appears to be, at least in part, "paralegal work" that should not be billed at an attorney rate.

1      Based on the foregoing, the Court finds that Christofferson reasonably expended 0.5 hours

2  pre-January 16, 2022, and 3.1 hours post-January 16, on work relating to RFP Nos. 20 and 21,

3  Lisieski reasonably expended 4.7 hours pre-January 16, 2022, and 20.4 hours post-January 16,

4  Martin reasonably expended 1.5 hours, and paralegal Manriquez reasonably expended 0.1 hours.

5  Further, the Court finds that the attorneys cumulative reasonably expended 14.1 hours while

6  performing "paralegal work," Yeager, 2010 WL 2303273, at *6–7, for which the Court shall

7  apply the paralegal hourly rate.

8      As to work performed relating to RFP Nos. 10 and 11, the Court finds that Christofferson

9  reasonably expended 4.7 hours, and Lisieski reasonably expended 22.6 hours.

10      The Court also finds Plaintiffs' fees incurred preparing the motion for attorneys' fees are

11  recoverable, U.S. ex rel. Doe v. Biotronik, Inc., No. 2:09-cv-3617-KJM-EFB, 2015 WL 6447489,

12  at *13 (E.D. Cal. Oct. 23, 2015), aff'd in part, appeal dismissed in part sub nom. U.S. ex rel. Sant

13  v. Biotronik, Inc., 716 Fed. App'x 590 (9th Cir. 2017) (citation omitted) ("A court may

14  award fees incurred litigating a fee dispute, that is, fees on fees."); however, the Court finds the

15  amount of time expended and the use of three attorneys to brief this motion appears excessive and

16  shall reduce the amount accordingly.  For example, while the Court acknowledges the extensive

17  and sometimes convoluted longitudinal history of the parties' discovery disputes, it nonetheless

18  finds the amount of time billed to draft the memorandum of points and authorities detailing the

19  procedural posture of this litigation is excessive where the same posture has been documented in

20  multiple other filings by Plaintiffs.  In another example, while Lisieski anticipates it would take

21  3.0 hours to review Defendants' opposition and draft a reply, the Court notes the substantive

22  opposition was eight pages, presented arguments substantially similar to the arguments that have

23  been made throughout the course of these multiple discovery issues presented, and Plaintiffs'

24  reply was similarly brief; accordingly, this time shall be reduced to 2.0 hours.  In another example

25  of "excessive" billing, the Court refers to an entry for 2.10 hours to "[r]esearch case law

26  regarding method of determining reasonableness of attorneys' fees," which presumably refers to

27  the well-established lodestar approach.  (See ECF No. 99-4 at 44.)  Further, the Court notes

28  Plaintiffs provide no argument in support of their contention that the amount of time incurred in

preparation of the fees motion was reasonable. The Court shall, however, additionally grant fees incurred to prepare for, travel to, and attend the hearing on the motion for attorneys' fees in this matter and finds Lisieski reasonably expended 2.0 hours for this portion of the motion.

Accordingly, with respect to the fees motion, the Court finds Christofferson reasonably expended 0.3 hours,[12] Lisieski reasonably expended 8.9 hours, Martin reasonably expended 8.3 hours, and 0.8 hours of "paralegal work" was reasonably expended.

### 6.    Reasonable Attorneys' Fees Award

Based on the foregoing, the Court concludes that: (1) counsel Christofferson reasonably expended 0.5 hours at a reasonable rate of $375.00 per hour, for a total of $187.50 and 8.1 hours at a reasonable rate of $415.00 per hour, for a total of $3,361.50; (2) counsel Lisieski reasonably expended 4.7 hours in this action at a reasonable rate of $265.00 per hour for a total of $1,245.50, and 51.9 hours at a reasonable rate of 325.00 per hour, for a total of $16,867.50; (3) counsel Martin expended 9.8 hours at a reasonable rate of $175.00 per hour, for a total of $1,715.00; (4) paralegal Manriquez expended 0.1 hours at a reasonable rate of $100.00 per hour, for a total of $10.00; and (5) the attorneys reasonably expended 14.9 hours performing "paralegal work" at a reasonable rate of $100.00 per hour, for a total of $1,490.00. Accordingly, the Court finds that Plaintiffs are entitled to attorneys' fees in the total amount of $24,877.00.

### D.    Reasonable Litigation Expenses and Costs

Plaintiffs seek as costs the information technology ("IT") fees that were incurred through the services of Wanger Jones Helsley's IT administrator, Renee M. Straughter-Allen, in relation to RFP Nos. 20 and 21. (ECF No. 99-1 at 11; Christofferson Decl. ¶ 9, Ex. A, ECF No. 99-4 at 25–29.) Ms. Straughter-Allen was compensated a total of $2,541.25 for her work assisting Defendants with the discovery in relation to RFP Nos. 20 and 21, and attempting to correct technical issues with their discovery productions. She also performed quality control reviews to ensure that the documents were being produced in a manner in which they were accessible. (Christofferson Decl. ¶ 9, Ex. A, ECF No. 99-4 at 25–29.) Defendants have not disputed Ms.

---

[12] The Court notes that, while the table in Christofferson's declaration regarding fees incurred in connection with the attorneys' fees motion indicates that Christofferson worked 2.8 hours (see ECF No. 99-4 at 5), a review of all time billed by JAC at Exhibit C (id. at 43–45) reflects a sum total of 0.8 hours, which the Court has reduced to 0.3.

1    Straughter-Allen's fees and the Court finds the fees reasonable.   Accordingly, the Court

2    concludes Plaintiffs are entitled to reasonable costs in the amount of $2,541.25.

### IV.

### CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Plaintiffs' motion for attorneys' fees (ECF No. 99) is GRANTED IN PART; and

2.      Defendants Wellpath, LLC, California Forensic Medical Group, Inc., and counsel

Bertling   Law   Group   shall,   jointly   and   severally,[13]   be   obligated   to   PAY

**$27,418.25**—which is comprised of $24,877.00 in attorneys' fees and $2,541.25 in

costs—to Plaintiffs, to be produced to the officers of Wanger Jones Helsley PC, no

later than **fourteen (14) days** from the date of this order.

IT IS SO ORDERED.

Dated:   **October 3, 2022**

UNITED STATES MAGISTRATE JUDGE

---

[13] As this Court has previously advised, if Defendants or counsel disagree with this manner of imposing the award of attorneys' fees, they may file a request for clarification or alteration regarding who is responsible or required to pay the attorneys' fees within **three (3) days** of entry of this order.   However, such request shall not result in any alteration of the amount of fees awarded.