1
2
3
4
5
6
7
8                        **UNITED STATES DISTRICT COURT**

9                        **EASTERN DISTRICT OF CALIFORNIA**

10

11   D.M. and L.M., minors, by and through          Case No.: 1:23-cv-00828 JLT SKO
     their Guardian ad litem Jose Martinez, *et*
12   *al*.,                                          ORDER GRANTING IN PART, DENYING IN
                                                     PART, AND DEFERRING IN PART
                        Plaintiffs,                  PLAINTIFFS' MOTION IN LIMINE
13
14          v.                                       (Doc. 155)

15   COUNTY OF MERCED, WELLPATH,
     LLC, CALIFORNIA FORENSIC
16   MEDICAL GROUP, INC., *et al*.

17                      Defendants.

18                                  **I.    INTRODUCTION**

19          On March 23, 2019, Rene Snider died by suicide while she was in pretrial custody at the

20   Merced County Jail after having been found incompetent to stand trial. (*See* Doc. 11 (First

21   Amended Complaint).) Plaintiffs in this case, the mother and minor children of Ms. Snider, allege

22   that Defendants inadequately screened Ms. Snider for the risk of suicide, improperly withheld her

23   mental health medications, failed to place her in an appropriate custody environment given her

24   risk of suicide, failed to properly monitor her, and failed to notice physical evidence that she had

25   attempted suicide earlier on the day of her death. (*Id*. ¶ 1.) The operative complaint names as

26   defendants the County of Merced; Wellpath, LLC and California Forensic Medical Group, LLC[1];

27   _____

28   [1] According to the FAC, California Forensic Medical Group is the former name of Correctional Medical Group
     Companies and Wellpath is an entity formed from the merger of Correct Care Solutions and Correctional Medical
     Group Companies. (FAC, ¶¶ 13–14.) The Court will therefore assume Wellpath stands in the shoes of California

ten employees of Wellpath (Amanpreet Atwal, Alicia Dunwoody, Gianfranco Burdi, Keriann Quinn-Fitzpatrick, Dylan Fulcher, Shawn Autrey, Pao Chang, Jessica Ramirez-Aguilar, Jamie Burns, and Thanya Ryland); and one Merced County Corrections Officer, Adriana Kifan (formerly Castaneda)[2].

Trial in this matter is set for October 22, 2024. The case proceeds on Plaintiffs' Fourteenth Amendment deliberate indifference to medical needs and substantive due process (loss of companionship) claims, as well as California Bane Act and wrongful death claims.

Pending is a single motion *in limine* filed by Plaintiff in which Plaintiffs seek a pretrial determination that the Medical Injury Compensation Reform Act (MICRA) cap on damages set forth in California Civil Code § 3333.2 does not cap Plaintiff's demand for non-economic damages. (Doc. 155.)[3] The Wellpath Defendants (Doc. 157), who raised the MICRA cap as an affirmative defense (Doc. 25 at 20), responded to the motion, conceding that MICRA does not apply to Plaintiffs' federal constitutional claims nor to the Bane Act claim. (Doc. 157.) However, the Wellpath Defendants contend that MICRA applies Plaintiffs' wrongful death and survival claim advanced under California Civil Code § 377.60 against the Wellpath Defendants. (*Id*. at 2.)

Having examined the papers, no hearing is necessary. For the reasons set forth below, the motion is **GRANTED IN PART AND DENIED IN PART**.

## II.   LEGAL STANDARD

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (citation omitted). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course

Medical Group Companies and will refer to these defendants as "Wellpath" and collectively to Wellpath and its individual employee defendants as "Wellpath Defendants."

[2] Collectively, the County of Merced and CO Kifan are referenced as the "County Defendants"

[3] The pretrial order required the parties to meet and confer before filing any motions in limine. (Doc. 148 at 9.) In a declaration submitted with their motion, Plaintiffs' counsel indicates that he contacted opposing counsel by email the day before the motion in limine filing deadline. It is debatable whether the timing of this meet and confer effort constitutes a good faith effort given that the motion in limine deadline was set more than a month in advance and the MICRA issue is not a surprise to counsel. This is one of the busiest federal courts in the Nation. Counsel must take the meet and confer process more seriously going forward or risk summary denial of non-compliant motions.

of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citations omitted). "[A] ruling on a

motion *in limine* is essentially a preliminary opinion that falls entirely within the discretion of the

district court." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017)

(internal quotation marks and citation omitted). Importantly, "[t]he movant has the burden of

establishing that the evidence is not admissible for any purpose." *United States v. Wager*, 651 F.

Supp. 3d 594, 598 (N.D.N.Y. 2023) (citation omitted).

 The Court notes that this "motion in limine" is, in fact, **not** a motion in limine. It fails to

raise any question that implicates an issue that will be placed before the jury. It wastes the Court's

time because these issues could have been raised in a trial brief or in posttrial briefing, as needed.

In fact, at this time, there is no way to know whether the MICRA will be implicated. Thus, the

motion should be denied. However, because the issue has been raised and the Court has spent

time on it, the Court will consider it.

### III. ANALYSIS

 MICRA caps non-economic damages at $250,000 for claims based on the "professional

negligence" of a "health care provider." In relevant part, MICRA reads:

> (a) In any action for injury against a health care provider based on professional negligence, the injured Plaintiff shall be entitled to recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage . . .

> (c) For the purposes of this section:… (2) "Professional negligence" means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital.

California Civil Code § 3333.2(a), (c)(2).

### A. MICRA Does Not Apply to Federal Constitutional or Bane Act Claims

 There is uniform agreement among the parties that MICRA does not apply to and

therefore cannot cap any form of damages awarded in relation to the federal constitutional claims

or the Bane Act claim. The motion is **GRANTED** as to those claims.

*///*

**B.      Wrongful Death and Survival Claim**

> **a.   County Defendants**

Turning to the wrongful death and survival claim against the County of Merced, Plaintiff argues that the County Defendants are not "healthcare provider[s]" as defined in Section 333.2 so that the claim against the County Defendants is not subject to MICRA. (Doc. 155 at 3–4.)[4]

"Professional negligence" is defined as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." Cal. Civ. Code § 3333.2(j)(4). *Gutzalenko v. City of Richmond*, No. 22-CV-02130-EMC, 2024 WL 1141689, at *6 (N.D. Cal. Mar. 15, 2024) (applying MICRA to actions of emergency paramedics who provided emergency services to the decedent even though there might have been a law enforcement purpose to their actions). The undisputed facts set forth in the pretrial order indicate that CO Kifan was on duty the day Ms. Snider died by suicide. (Doc. 148 at 4.) CO Kifan found Ms. Snider hanging in her cell and called for medical assistance and was later disciplined for failing to timely monitor Ms. Snider. (*Id.* at 5.) However, nothing in the record suggests that CO Kifan provided any medical care to Ms. Snider. Relatedly, it does not appear that Plaintiffs seek to hold the County liable for wrongful death based on the negligent provision of medical care. Accordingly, the motion is **GRANTED** as to the wrongful death/survival claim against the County.

> **b.  Wellpath Defendants**

Plaintiffs do not appear to contest (*see* Doc. 155 at 4) that to the extent wrongful death liability is premised upon "professional negligence" of a "health care provider," such liability is subject to the MICRA cap. Cal. Civil Code § 3333.2(a), (c)(2).

"It is settled that additional causes of action may arise out of the same facts as a medical malpractice action that do not trigger MICRA." *Unruh–Haxton v. Regents of Univ. of Cal.*, 162

---

[4] Plaintiffs correctly point out that the County Defendants did not advance MICRA as an affirmative defense. (Doc. 29.) But MICRA "is a limitation of damages rather than an affirmative defense." *Taylor v. United States*, 821 F.2d 1428, 1433 (9th Cir. 1987) (allowing defendant to assert MICRA as a defense at a "pragmatically sufficient time").

1  Cal. App. 4th 343, 352 (2008); *see Smith v. Ben Bennett, Inc.*, 133 Cal. App. 4th 1507, 1514

2  (2005). For example, in addition to medical malpractice, causes of action against a health care

3  provider for "battery, products liability, premises liability, fraud, breach of contract, and

4  intentional or negligent infliction of emotional distress" may arise from out of the same set of

5  facts. *Smith*, 133 Cal. App. 4th at 1515. If a plaintiff "chooses to proceed on both non-MICRA

6  and MICRA causes of action, and obtains a recovery that may be based on a non-MICRA theory,

7  the limitations of [MICRA] should not apply." *Waters v. Bourhis*, 40 Cal. 3d 424, 437–38 (1985).

8  "[W]hen a cause of action is asserted against a health care provider on a legal theory other than

9  medical malpractice, the courts must determine whether it is nevertheless based on the

10  'professional negligence' of the health care provider so as to trigger MICRA." *Smith*, 133 Cal.

11  App. 4th at 1514.

12       Plaintiffs argue generally that "non-healthcare-related" claims brought against Wellpath

13  and Wellpath employees are not subject to MICRA. But they do not identify with any specificity

14  what "non-healthcare-related" theories of negligence on the part of any Wellpath Defendant they

15  plan to present at trial, let alone any such theories that could plausibly be supported by evidence

16  demonstrating a breach of duty. Accordingly, this aspect of their motion is premature and will be

17  deferred to trial or post-trial as appropriate.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

### IV.    CONCLUSION AND ORDER

For the reasons set forth above, Plaintiffs' motion is **GRANTED IN PART AND DENIED IN PART**. As to the federal constitutional and Bane Act claims, MICRA does not cap damages. As to the wrongful death and survival claims against the County Defendants, MICRA does not apply because those claims are not premised on the professional negligence of a health care provider. As to the wrongful death and survival claims against the Wellpath Defendants, MICRA applies to any healthcare-related theories of liability. The Court defers ruling as to whether any other forms of wrongful death liability against Wellpath might not be subject to MICRA.

IT IS SO ORDERED.

Dated:   **October 9, 2024**

UNITED STATES DISTRICT JUDGE

6